**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SKY FEDERAL CREDIT UNION, on Behalf of Itself and All Others Similarly Situated, | |
| *Plaintiff,* | Case No. 20-cv-02114 |
| v. | Honorable Edmond E. Chang |
| FAIR ISAAC CORPORATION, | |
| *Defendant.* | |
| FIRST CHOICE FEDERAL CREDIT UNION, on Behalf of Itself and All Others Similarly Situated, | |
| *Plaintiff,* | Case No. 20-cv-02516 |
| v. | Honorable Edmond E. Chang |
| FAIR ISAAC CORPORATION, | |
| *Defendant.* | |
| AMALGAMATED BANK, on behalf of itself and all others similarly situated, | |
| *Plaintiff,* | Case No. 20-cv-02533 |
| v. | Honorable Edmond E. Chang |
| FAIR ISAAC CORPORATION, | |
| *Defendant.* | |

[Caption continued on following pages.]

ALCOA COMMUNITY FEDERAL CREDIT UNION, on behalf of itself and all others similarly situated,

     *Plaintiff,*

v.

FAIR ISAAC CORPORATION,

     *Defendant.*

Case No. 20-cv-02559

Honorable Edmond E. Chang

---

GETTEN CREDIT COMPANY, individually and on behalf of all others similarly situated,

     *Plaintiff,*

v.

FAIR ISAAC CORPORATION,

     *Defendant.*

Case No. 20-cv-02651

Honorable Edmond E. Chang

---

KENMORE NY TEACHERS FEDERAL CREDIT UNION, on Behalf of Itself and All Others Similarly Situated,

     *Plaintiff,*

v.

FAIR ISAAC CORPORATION, EQUIFAX, INC., EXPERIAN PLC, and TRANSUNION, LLC,

     *Defendants.*

Case No. 20-cv-02755

Honorable Edmond E. Chang

CITY OF BOSTON CREDIT UNION, on Behalf of Itself and All Others Similarly Situated,

    *Plaintiff*,

v.

FAIR ISAAC CORPORATION,

    *Defendant*.

Case No. 20-cv-03315

Honorable Edmond E. Chang

HOLMES COUNTY BANK AND TRUST COMPANY, on Behalf of Itself and All Others Similarly Situated,

    *Plaintiff*,

v.

FAIR ISAAC CORPORATION,

    *Defendant*.

Case No. 20-cv-03395

Honorable Edmond E. Chang

## THE CONSENSUS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CONSOLIDATION AND APPOINTMENT OF <u>INTERIM LEAD AND LIAISON COUNSEL</u>

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 4

    I.    This Court Should Consolidate the Pending Class Actions into Two Separate Groups: Direct Purchasers and Indirect Purchasers .......................................................... 4

        A.  Separate Tracks Are Necessary To Safeguard Class Members' Best Interests ........... 5

        B.  Consolidating the Direct and Indirect Purchaser Actions Would Prejudice Direct Purchasers by Forcing Them To Abandon Federal Treble Damages Claims ............... 7

    II.   The Consensus Plaintiffs' Proposed Leadership Structure for the Direct Purchaser Actions Should Be Approved ........................................................................... 8

        A.  The Proposed Leadership Structure and Potential Subclass Representatives .............. 9

        B.  The Proposed Leadership Structure Is in Class Members' Best Interests ................... 12

        C.  The Proposed Leadership Structure Ensures Diverse Representation ........................ 14

CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re Aftermarket Filters Antitrust Litig.*,
    No. 08 CV 4883, 2010 WL 3715137 (N.D. Ill. Sept. 14, 2010)................................................6

*Anchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................................13

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019)........................................................................................................6

*Authenticom, Inc. v. CDK Glob., LLC*,
    No. 17-CV-318-JDP, 2018 WL 816543 (W.D. Wis. Jan. 12, 2018) .........................................5

*In re Brand Name Prescription Drugs*,
    Nos. 94 C 897, MDL 997, 1995 WL 399684 (N.D. Ill. July 7, 1995)..................................6, 7

*Champion Labs., Inc. v. Am. Home Assur. Co.*,
    No. 09 CV 7251, 2010 WL 2649848 (N.D. Ill. June 30, 2010)................................................6

*City of Providence v. AbbVie, Inc.*,
    No. 20-cv-5538, 2020 WL 6049139 (S.D.N.Y. Oct. 13, 2020)....................................9, 12, 14

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
    No. 09 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015)................................................6

*Eubank v. Pella Corp.*,
    753 F.3d 718 (7th Cir. 2014) ...............................................................................................13

*In re Fresh Dairy Prods. Antitrust Litig.*,
    190 F. Supp. 3d 1353 (J.P.M.L. 2016)................................................................................6, 7

*Ikerd v. Lapworth*,
    435 F.2d 197 (7th Cir. 1970) ...............................................................................................4

*Ill. Brick Co. v. Illinois*,
    431 U.S. 720 (1977)....................................................................................................5, 6, 13

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011)................................................................................................13

*Marion Healthcare, LLC v. Becton Dickinson & Co.*,
    952 F.3d 832 (7th Cir. 2020) ...............................................................................................5

*Minn-Chem, Inc. v. Agrium, Inc.*,
    683 F.3d 845 (7th Cir. 2012) ................................................................6

*N. Miami Beach Gen. Emps. Ret. Fund v. Parkinson*,
    No. 10 C 6514, 2011 WL 12465137 (N.D. Ill. July 5, 2011) ................11

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999)............................................................................13

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016)................................................................13

*Reiter v. Sonotone Corp.*,
    442 U.S. 330 (1979)..............................................................................7

*Sage Prods., Inc. v. Devon Indus., Inc.*,
    148 F.R.D. 213 (N.D. Ill. 1993)............................................................4

*Smith v. Sprint Commc'ns*,
    387 F.3d 612 (7th Cir. 2004) ..............................................................13

*Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*,
    902 F.3d 735 (7th Cir. 2018) ................................................................5

*Sylverne v. Data Search N.Y., Inc.*,
    No. 08 C 0031, 2008 WL 4686163 (N.D. Ill. May 28, 2008) ................4

*Walker v. Discover Fin. Servs.*,
    No. 10-CV-6994, 2011 WL 2160889 (N.D. Ill. May 26, 2011)............9

### RULES

Fed. R. Civ. P. 8(d)(2)............................................................................9

Fed. R. Civ. P. 23................................................................................4, 13

Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment ................4

Fed. R. Civ. P. 23(g) ............................................................................1, 11

Fed. R. Civ. P. 23(g)(1)(A)................................................................8, 9, 12

Fed. R. Civ. P. 23(g)(1)(B) ....................................................................9

Fed. R. Civ. P. 23(g)(3)............................................................................8

Fed. R. Civ. P. 42 ........................................................................................................1

Fed. R. Civ. P. 42(a) ...................................................................................................4

**OTHER AUTHORITIES**

2A Phillip E. Areeda & Herbert Hovenkamp *et al.*, *Antitrust Law* (4th ed. 2014).........................7

*Manual for Complex Litigation (Fourth)* (2004) .................................................8, 9, 13

Plaintiffs Sky Federal Credit Union (No. 20-cv-02114), First Choice Federal Credit Union (No. 20-cv-02516), Amalgamated Bank (No. 20-cv-02533), Alcoa Community Federal Credit Union (No. 20-cv-02559), Getten Credit Company (No. 20-cv-02651), Kenmore NY Teachers Federal Credit Union (No. 20-cv-02755), City of Boston Credit Union (No. 20-cv-03315), and Holmes County Bank & Trust Co. (No. 20-cv-03395), plaintiffs in eight of the ten related actions before the Court (collectively, the "Consensus Plaintiffs"), respectfully submit this memorandum in support of their motion to: (1) consolidate pursuant to Federal Rule of Civil Procedure 42 actions in which the plaintiffs have or could have brought claims for damages under the federal antitrust laws (collectively, the "Direct Purchaser Actions"), and any such subsequent actions filed in or transferred to this Court; (2) appoint pursuant to Federal Rule of Civil Procedure 23(g) Scott+Scott Attorneys at Law LLP ("Scott+Scott") as the Plaintiffs' Interim Lead Counsel and MoloLamken LLP ("MoloLamken") as Liaison Counsel; and (3) consolidate pursuant to Federal Rule of Civil Procedure 42 into a separate group actions that have been or could have been brought by indirect purchasers (collectively, the "Indirect Purchaser Actions") and any such subsequent actions filed in or transferred to this Court.[1]

## **INTRODUCTION**

***Every one*** of the complaints in the related actions alleges that Fair Isaac and the three major credit bureaus entered into anticompetitive agreements concerning credit-scoring services. The Consensus Plaintiffs seek to consolidate the cases and appoint leadership to pursue recovery for all affected purchasers of such services in the most direct, efficient, and complete manner

---

[1] The plaintiffs in *Alternative Finance, Inc. v. Fair Isaac Corp.*, No. 20-cv-03204, object to the two-track consolidation the Consensus Plaintiffs propose. The plaintiff in the remaining action, *Garner Properties & Management, LLC v. Fair Isaac Corp.*, No. 20-cv-04575, takes no position on consolidation. *See* Dkt. 55, at 2 & n.4.

Unless otherwise specified, citations to "Dkt." are to the docket entries in *Sky Federal Credit Union v. Fair Isaac Corp.*, No. 20-cv-02114.

practicable, while at the same time protecting the rights of any subclasses. That is the crux of zealous representation by class counsel and in the best interests of those they seek to represent. The Consensus Plaintiffs' proposal includes three primary components: (1) consolidation of the Direct Purchaser Actions; (2) appointment of interim lead and liaison counsel for the Direct Purchaser Actions; and (3) separate consolidation of the Indirect Purchaser Actions.

*Consolidation of the Direct Purchaser Actions*. The Consensus Plaintiffs are a group of eight banks and credit unions that allege they purchased credit scores directly from Fair Isaac through contracts between themselves, Fair Isaac, and a credit bureau. They also allege that Fair Isaac and the three major credit bureaus conspired to maintain Fair Isaac's monopoly in the credit-score market. The Consensus Plaintiffs seek treble damages under the federal antitrust laws on behalf of a nationwide class of similarly situated purchasers.[2] As discussed below, courts routinely consolidate such direct purchaser actions.

*Appointment of Interim Lead and Liaison Counsel for the Direct Purchaser Actions*. Scott+Scott and MoloLamken are well positioned to serve as interim lead and liaison counsel, respectively, and have the support of all the Consensus Plaintiffs and their counsel. Scott+Scott was the first firm to file an action, after months of investigation and research. Scott+Scott

---

[2] *See* Dkt. 1 ¶¶ 14, 55-73, 86, 101-147 ("Sky Fed. Compl.") (Ex. A); Dkt. 1 ¶¶ 14, 53-57, 84, 99-145, *First Choice Fed. Credit Union v. Fair Isaac Corp.*, No. 20-cv-02516 (N.D. Ill. filed Apr. 23, 2020) ("First Choice Compl.") (Ex. B); Dkt. 1 ¶¶ 14, 56-59, 86, 97-143, *Amalgamated Bank v. Fair Isaac Corp.*, No. 20-cv-02533 (N.D. Ill. filed Apr. 24, 2020) ("Amalgamated Compl.") (Ex. C); Dkt. 1 ¶¶ 17, 73, 80, 90-148, *Alcoa Cmty. Fed. Credit Union v. Fair Isaac Corp.*, No. 20-cv-02559 (N.D. Ill. filed Apr. 27, 2020) ("Alcoa Compl.") (Ex. D); Dkt. 1 ¶¶ 13, 34-38, 79, 92-122, *Getten Credit Co. v. Fair Isaac Corp.*, No. 20-cv-02651 (N.D. Ill. filed May 1, 2020) ("Getten Compl.") (Ex. E); Dkt. 1 ¶¶ 8, 18, 67, 97, 110-158, *Kenmore NY Teachers Fed. Credit Union v. Fair Isaac Corp.*, No 20-cv-02755 (N.D. Ill. filed May 6, 2020) ("Kenmore Compl.") (Ex. F); Dkt. 1 ¶¶ 19, 92, 102-136, *City of Bos. Credit Union v. Fair Isaac Corp.*, No. 20-cv-03315 (N.D. Ill. filed June 4, 2020) ("City of Bos. Compl.") (Ex. G); Dkt. 1 ¶¶ 19, 92, 102-136, *Holmes Cnty. Bank & Tr. Co. v. Fair Isaac Corp.*, No. 20-cv-03395 (N.D. Ill. filed June 9, 2020) ("Holmes Compl.") (Ex. H).

organized a diverse group of plaintiffs and attorneys from eight of the ten actions. Appointing Scott+Scott as interim lead counsel will ensure that the class pursues a treble damages remedy for all class members nationwide under federal law, as well as state-law remedies. MoloLamken has taken an active role in coordinating the Consensus Plaintiffs and communicating with the defendants. Given its familiarity with this District, and the likely need for further coordination, appointing MoloLamken as liaison counsel will ensure these matters move forward efficiently. As discussed below, a plaintiffs' steering committee will address any potential subclass issues.

***Separate Consolidation of the Indirect Purchaser Actions***. Certain plaintiffs in two actions—*Garner Properties & Management, LLC v. Fair Isaac Corp.* and *Alternative Finance, Inc. v. Fair Isaac Corp.*—allege claims only as indirect purchasers. Those claims should therefore be consolidated separately. In *Garner*, the named plaintiff is an end-user business customer that indirectly purchased FICO scores for use, not resale, and seeks equitable remedies under the Sherman Act and damages under state laws. *See* Dkt. 1 ¶¶6, 14, *Garner Props. & Mgmt. v. Fair Isaac Corp.*, No. 20-cv-04575 (N.D. Ill. filed Aug. 4, 2020) ("Garner Compl.") (Ex. I). In *Alternative Finance*, the plaintiffs and their counsel, Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein"), seek equitable remedies under the Sherman Act and confine their damages claims ***solely*** to the laws of 26 states that would allow them to recover as self-described "indirect purchasers" (along with claims in two additional states under consumer protection laws). *See* Dkt. 1 ¶¶11, 115-142, *Alt. Fin., Inc. v. Fair Isaac Corp.*, No. 20-cv-03204 (N.D. Ill. filed May 29, 2020) ("Alt. Fin. Compl.") (Ex. J). Like the Consensus Plaintiffs, Alternative Finance purchased credit scores from Fair Isaac through contracts with the three major credit bureaus. However, perhaps seeking to combine Alternative Finance's claims with those available to its other client, Brookfield Management Company, which indirectly purchases credit

scores through a third party non-conspirator, Cohen Milstein disavowed federal damages claims. *Id.* ¶¶ 11, 115-142. Cohen Milstein's position demonstrably creates conflicts between direct and indirect purchasers, forfeits viable legal arguments, and leaves thousands of potential class members—in more than 20 states and territories—with no damages remedy. Separate consolidation of direct and indirect purchasers is therefore appropriate.

The Consensus Plaintiffs respectfully request the Court: (1) consolidate the Direct Purchaser Actions; (2) appoint Scott+Scott as interim lead counsel and MoloLamken as liaison counsel for the Direct Purchaser Actions; (3) consolidate Brookfield Management Company's and Garner Properties & Management's indirect purchaser claims into a separate group; and (4) order that all pretrial proceedings, including discovery, in the related actions be coordinated.

## **ARGUMENT**

### I. THIS COURT SHOULD CONSOLIDATE THE PENDING CLASS ACTIONS INTO TWO SEPARATE GROUPS: DIRECT PURCHASERS AND INDIRECT PURCHASERS

A court may consolidate multiple actions if they "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see* Fed. R. Civ. P. 23 & advisory committee's notes to 1966 amendment (consolidation appropriate if "feasible and preferable"). Considerations of "judicial economy strongly favor simultaneous resolution of all claims growing out of one event." *Ikerd v. Lapworth*, 435 F.2d 197, 204 (7th Cir. 1970). Consolidation, however, is improper where the actions involve different legal and factual issues that are not "susceptible of resolution in a joint hearing." *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 215 (N.D. Ill. 1993). Consolidation is also improper where "it would cause prejudice to any party." *Sylverne v. Data Search N.Y., Inc.*, No. 08 C 0031, 2008 WL 4686163, at *1 (N.D. Ill. May 28, 2008).

Here, the vast majority of plaintiffs believe consolidation into two separate groups is necessary to preserve class members' available claims, remedies, and best interests. As

discussed below, such consolidation would enable Plaintiffs in the Direct Purchaser Actions to seek treble damages and equitable remedies under federal law as well as, in the alternative, damages under state law where appropriate, while guarding against potential intra-class conflicts.

### A. Separate Tracks Are Necessary To Safeguard Class Members' Best Interests

Purchasers occupying different places in the stream of commerce—*i.e.*, direct and indirect purchasers—have different causes of action and remedies available to them. *See Ill. Brick Co. v. Illinois*, 431 U.S. 720, 728-29 (1977) (only direct purchasers may recover damages under federal antitrust laws); *Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735, 743 & n.4 (7th Cir. 2018) (recognizing that many, but not all, states' antitrust laws authorize indirect purchasers to bring damages claims). It is thus standard practice to consolidate antitrust actions into separate groups for direct and indirect purchasers.

Here, all Direct Purchaser Plaintiffs, except Alternative Finance, allege that they purchased credit scores directly from Fair Isaac, and that Fair Isaac and the three major credit bureaus conspired to maintain Fair Isaac's monopoly in the credit-score market.[3] Those plaintiffs may thus pursue damages claims under the federal antitrust laws. *See Ill. Brick*, 431 U.S. 720 at 728-29; *Marion Healthcare, LLC v. Becton Dickinson & Co.*, 952 F.3d 832, 839 (7th Cir. 2020) (federal antitrust law "allocates the right to collect 100% of the damages to the first non-conspirator in the supply chain").[4]

---

[3] *See* Sky Fed. Compl. ¶¶14, 34-37, 55-73, 86; First Choice Compl. ¶¶14, 32-35, 56-71, 84; Amalgamated Compl. ¶¶14, 34-38, 56-73, 86; Alcoa Compl. ¶¶3-5, 17-22, 27-30, 48-58, 80; Getten Compl. ¶¶12-13, 20-21, 34-68, 79; Kenmore Compl. ¶¶1-18, 38-40, 67-84, 97; City of Bos. Compl. ¶¶19, 28-33, 56-74, 92; Holmes Compl. ¶¶19, 28-33, 56-74, 92; *see also* Alt. Fin. Compl. ¶¶3, 11, 25-26, 55-77. As explained above, Alternative Finance could have alleged damages claims under federal law and could do so in an amended complaint. *See* pp. 3-4, *supra*.

[4] While the defendants may take a different view of *Illinois Brick*, that issue may be raised properly only on a dispositive motion, not a consolidation motion. *Cf. Authenticom, Inc. v. CDK Glob., LLC*, No. 17-CV-318-JDP, 2018 WL 816543, at *2 (W.D. Wis. Jan. 12, 2018).

By contrast, two plaintiffs, Garner Properties & Management and Brookfield Management Company, allege they purchased FICO scores further down the distribution chain from "a third-party credit reporting company which, in turn, purchases credit screening services from one of the three major [credit bureaus]." Garner Compl. ¶6; *see* Alt. Fin. Compl. ¶¶4, 12 (for Brookfield). As "indirect purchasers who are two or more steps removed from the violator in a distribution chain," Garner and Brookfield may not pursue damages under the federal antitrust laws. *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1520 & n.1 (2019). Their claims, like other claims on behalf of indirect purchasers, "focus[] primarily on state law," which provides the sole basis for damages. *Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845, 848 (7th Cir. 2012).

Given the "significant differences" underlying each's group's factual and legal theories, *In re Brand Name Prescription Drugs*, Nos. 94 C 897, MDL 997, 1995 WL 399684, at *1 (N.D. Ill. July 7, 1995), courts routinely group direct and indirect purchasers separately. In *In re Fresh Dairy Products Antitrust Litigation (No. III)*, for example, the Judicial Panel on Multidistrict Litigation denied consolidation of claims for direct and indirect purchasers into a single district. 190 F. Supp. 3d 1353, 1354 (J.P.M.L. 2016). This District follows the practice of grouping direct and indirect purchasers separately. *See, e.g.*, *Minn-Chem*, 683 F.3d at 848; *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2015 WL 3988488, at *1 (N.D. Ill. June 29, 2015); *In re Aftermarket Filters Antitrust Litig.*, No. 08 CV 4883, 2010 WL 3715137, at *1 (N.D. Ill. Sept. 14, 2010); *Champion Labs., Inc. v. Am. Home Assur. Co.*, No. 09 CV 7251, 2010 WL 2649848, at *1 (N.D. Ill. June 30, 2010). The Court should follow suit here.

The creation of separate groups for direct and indirect purchasers will not sacrifice efficiency. Both groups can proceed on the same schedule for discovery (coordinating to avoid duplicative document productions and depositions), dispositive motions, and other pre-trial

motions.  *See, e.g.*, *In re Fresh Dairy Prods.*, 190 F. Supp. 3d at 1354.  Consolidation into two tracks will thus serve the best interests of the class and maximize efficiency.

> **B.     Consolidating the Direct and Indirect Purchaser Actions Would Prejudice Direct Purchasers by Forcing Them To Abandon Federal Treble Damages Claims**

The consolidation structure proposed by the *Alternative Finance* plaintiffs would prejudice direct purchasers by forcing them to ***abandon their claims for treble damages under federal law***.  *See In re Brand Name Prescription Drugs*, 1995 WL 399684, at *1 (finding consolidation improper where it "would result in substantial prejudice to several named parties").  The *Alternative Finance* plaintiffs propose a single class with a single consolidated class action complaint that alleges damages ***only*** for indirect purchasers in ***only*** 26 "*Illinois Brick* repealer" states.  The two-track consolidation the Consensus Plaintiffs propose, by contrast, preserves the treble damages remedy that is essential to "protect[ ] consumers" and "deter[ ] violations" of the antitrust laws for class members ***nationwide***.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 343-44 (1979); *see* 2A Phillip E. Areeda & Herbert Hovenkamp *et al.*, *Antitrust Law* ¶330b, at 40-41 (4th ed. 2014) (treble damages remedy "generat[es] a powerful financial incentive for injured persons to detect, disclose, attack, and end violations of the antitrust laws").

The *Alternative Finance* complaint characterizes its claims as indirect and abandons federal damages claims for a nationwide class, even though Alternative Finance alleges that it purchases FICO scores through contracts with the credit bureaus.  *See* Alt. Fin. Compl. ¶¶4, 14.  Even Alternative Finance's counsel, Cohen Milstein, has acknowledged in other cases the problems inherent in its proposed approach.  Vying for a lead counsel position in *In re: Disposable Contact Lens Antitrust Litigation*, Cohen Milstein argued that, if a competing firm were appointed to represent all plaintiffs, that firm would fail to "advance a theory that there was an agreement between the retailers and manufacturers to fix the retail price" and that abandoning

that argument would "bar . . . damages under the Sherman Act." Dkt. 89, at 1-2, No. 3:15-md-02626 (M.D. Fla. filed Aug. 4, 2015) (Ex. K). Cohen Milstein warned that the other firm's position "***harms certain legal arguments, erects barriers to potential sources of discovery, and reduces the opportunities for recovery***." *Id.* at 2 (emphasis added). Similarly, in *In re Broiler Chicken Antitrust Litigation*, Cohen Milstein argued that indirect purchasers who were resellers and end-users required separate counsel because it would be a conflict of interest and violation of ethical rules for counsel to attempt to represent clients with conflicting theories of liability and damages. Dkt. 218, at 1, 4-7, No. 16-cv-08637 (N.D. Ill. filed Nov. 30, 2016) (Ex. L). The court agreed. *See* Dkt. 248, at 1-2, *Maplevale Farms, Inc. v. Koch Foods, Inc.*, No. 16-cv-08637 (N.D. Ill. filed Dec. 14, 2016) (Ex. M) ("[I]nterim class counsel for direct and indirect purchasers have a conflict of interest because of the tension that exists as to how much of any alleged price increase was passed on by the direct and indirect purchasers to the end-purchaser consumer plaintiffs."). As there, no justification for consolidation of all cases exists here.

## II. THE CONSENSUS PLAINTIFFS' PROPOSED LEADERSHIP STRUCTURE FOR THE DIRECT PURCHASER ACTIONS SHOULD BE APPROVED

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). The "designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." *Manual for Complex Litigation (Fourth)* § 21.11 (2004). It is common practice for district courts to appoint interim class counsel before ruling on class certification. *Id.*

In selecting interim class counsel, district courts typically look to the mandatory criteria of Rule 23(g)(1)(A) governing the appointment of class counsel, namely "(i) the work counsel

has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A); *see, e.g.*, *Walker v. Discover Fin. Servs.*, No. 10-CV-6994, 2011 WL 2160889, at \*3-5 (N.D. Ill. May 26, 2011). None of those factors is individually determinative; they provide a framework to determine whether counsel seeking appointment can fairly and adequately represent the class. Further, Rule 23(g)(1)(B) provides that a district court may, in its discretion, "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

## A. The Proposed Leadership Structure and Potential Subclass Representatives

The Consensus Plaintiffs propose that Scott+Scott serve as sole lead counsel and that MoloLamken serve as liaison counsel for the Direct Purchaser Actions (*i.e.*, plaintiffs that purchased FICO scores from Fair Isaac and the credit bureaus). *See Manual for Complex Litigation (Fourth)* § 10.221 (recommending appointment of liaison counsel). To be clear, the Consensus Plaintiffs do not seek to represent the plaintiffs in the Indirect Purchaser Actions. The Consensus Plaintiffs allege federal damages claims as direct purchasers and nearly all of their complaints allege state damages claims in the alternative. *See* Fed. R. Civ. P. 8(d)(2).

Led by Christopher Burke, Scott+Scott has been actively developing this litigation since well before it filed the first purchaser complaint in early April and has since led the Consensus Plaintiffs' efforts to organize and manage the pending cases, filing a widely supported leadership application within weeks of filing its complaint. *See* Dkt. 28 & Dkt. 29 (Ex. N & Ex. O); *see also City of Providence v. AbbVie, Inc.*, No. 20-cv-5538, 2020 WL 6049139, at \*5 (S.D.N.Y. Oct. 13, 2020) (early establishment of leadership "speaks well to the respect and authority" lead counsel candidates "have within . . . the plaintiff bar"). Scott+Scott subsequently coordinated the

Consensus Plaintiffs' request to reassign these cases to a single judge in this District. Similarly, MoloLamken, with its co-counsel Carlson Lynch, filed a complaint within weeks of Scott+Scott's filing. Employing the benefit of its presence in and familiarity with the District, MoloLamken has taken a key role in managing the day-to-day aspects of the Consensus Plaintiffs' efforts under Scott+Scott's direction, including efficient triage of factual and legal insights provided by the Consensus Plaintiffs' counsel, as well as liaising with Defendants. Both firms are well positioned to lead the class.

### 1. *Scott+Scott*

Scott+Scott is an international plaintiffs' litigation law firm with offices spanning from Amsterdam to London to New York to San Diego. The firm specializes in complex litigation, with an emphasis on, and numerous successes in, complex antitrust class actions in the financial services arena. Scott+Scott has a demonstrated track record of success in cases of this scale. The firm has recently obtained some of the largest recoveries on behalf of its clients and the classes they represent, including in *In re Foreign Exchange Benchmark Rates Antitrust Litigation* (as co-lead counsel with Hausfeld LLP, one of the Consensus Plaintiffs' counsel), an antitrust action alleging that major banks conspired to fix the price of foreign exchange rates. The firm obtained settlements with 15 of the 16 defendants, totaling over $2.3 billion. Renowned mediator Kenneth R. Feinberg concluded those settlements "'represent[] some of the finest lawyering toward a negotiated resolution that I have witnessed in my . . . career'" and described Scott+Scott as "superlative, sophisticated, and determined." Dkt. 925, at 2 & Dkt. 926 ¶ 29, No. 13-cv-07789 (S.D.N.Y. filed Jan. 12, 2018) (Ex. P & Ex. Q).

Likewise, in *Alaska Electrical Pension Fund v. Bank of America, N.A.*, Scott+Scott, as co-lead counsel, achieved $504.5 million in settlements with 15 defendants. Judge Furman praised Scott+Scott as having done "an extraordinary job" in "probably the most complicated

case" he has had.  Dkt. 743, at 27:14-28:6, No. 14-cv-07126 (S.D.N.Y. filed Nov. 8, 2018) (Ex. R).  He elaborated:  "I cannot really imagine how complicated it would have been if I didn't have counsel who had done as admirable job in briefing it and arguing as you have done.  You have in my view done an extraordinary service to the class."  *Id.*  Scott+Scott also currently serves as co-lead counsel for credit unions and other financial institutions against credit bureau Equifax in *In re Equifax, Inc. Customer Data Security Breach Litigation*, M.D.L. No. 2800 (N.D. Ga.). Scott+Scott will commit the necessary experienced attorneys, staff, and resources to prosecute these actions effectively and efficiently as it has in case after case.

### 2. *MoloLamken*

MoloLamken is an elite litigation boutique focused exclusively on representing clients in disputes and investigations using small teams of smart, experienced lawyers.  The firm has achieved maximum value for plaintiffs and class members in the past, and it will do the same in this case.  *The National Law Journal* has heralded the firm's "fanatical" preparation and named MoloLamken "Law Firm of the Year" in the Elite Trial Lawyers, Business Torts category in 2019 and 2020.  It has also named the firm to its "Litigation Boutiques Hot List" and its "Appellate Hot List."  Benchmark Litigation has consistently named MoloLamken to its list of "Top 10 Litigation Boutiques in America," shortlisting the firm for its "Boutique Firm of the Year" award the last three years.  It has commented that the firm has "brilliant lawyers" with "courtroom savvy" and "the best brief writing teams you can find."  Chambers and Partners has said "it's a uniformly excellent team.  They're very smart people who think strategically and try cases well."  Legal 500 says the firm is "excellent in substance and presentation."

### 3. *The Proposed Leadership Structure Satisfies Rule 23(g)*

All of the Rule 23(g) factors favor the leadership structure the Consensus Plaintiffs propose.  *See N. Miami Beach Gen. Emps. Ret. Fund v. Parkinson*, No. 10 C 6514, 2011 WL

12465137, at *2 (N.D. Ill. July 5, 2011) (Chang, J.) (appointing Scott+Scott as sole lead counsel with separate liaison counsel). Scott+Scott and Korein Tillery developed the direct purchaser case and filed the first direct purchaser complaint against Fair Isaac. The Consensus Plaintiffs' counsel promptly accepted Scott+Scott's leadership and cooperated in organizing and prosecuting these actions. *See* Dkts. 28-29; *see also City of Providence*, 2020 WL 6049139, at *4 (crediting lead counsel candidates for "work they have done in the early stages of the litigation"). MoloLamken has been at the forefront of the cases' day-to-day management, facilitating Scott+Scott's directives. Both Scott+Scott and MoloLamken—as well as the seventeen other firms who support their appointment—have vast experience handling similar cases, extensive knowledge of the relevant law, and ample resources. The near unanimous support the Consensus Plaintiffs' proposed leadership structure has received, moreover, weighs strongly in favor of its approval.

Scott+Scott and MoloLamken's early and successful efforts to pursue these actions stand in stark contrast to Cohen Milstein's late filing and solitary pursuit of a separate agenda.[5] The Consensus Plaintiffs' counsel's "experience," "knowledge of the applicable law," and "resources" are comprised of the collective experience, knowledge, and resources of firms that specialize in class action and antitrust litigation. *See* Fed. R. Civ. P. 23(g)(1)(A). That cumulative experience and knowledge necessarily exceeds that of Cohen Milstein, the sole firm on its own motion.

### B. The Proposed Leadership Structure Is in Class Members' Best Interests

As explained, the Consensus Plaintiffs have adequately alleged claims on behalf of direct purchasers and expect to survive any potential motions to dismiss their federal treble damages

---

[5] Cohen Milstein filed its complaint weeks after most of the Consensus Plaintiffs filed their complaints. *See* Alt. Fin. Compl. (filed May 29, 2020).

claims. If, however, the Court dismisses some or all of the Consensus Plaintiffs' federal damages claims, the Consensus Plaintiffs who reside in states that do not follow *Illinois Brick* (so-called "repealer states") would continue to maintain alternative antitrust damages claims under state law. In that event, the Consensus Plaintiffs' counsel expect they would seek certification of at least three subclasses with separate counsel: one comprised of direct purchasers (presuming the Court holds that certain plaintiffs may still qualify as such), one comprised of indirect purchasers from repealer states, and another comprised of plaintiffs who retain claims under state unfair practices statutes.[6] *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999) (subclasses require "separate representation to eliminate conflicting interests of counsel"); *Smith v. Sprint Commc'ns*, 387 F.3d 612, 615 (7th Cir. 2004) (vacating certification of a single settlement class involving claims of varying strength due to variations in relevant state laws and holding that class counsel's post-settlement appointment of state-law experts to account for those variations at the distribution stage did "not provide the 'structural assurance of fair and adequate representation' prior to the settlement" required by Rule 23).[7]

If, after the Court's ruling on motions to dismiss, the Consensus Plaintiffs conclude it is appropriate to appoint separate fiduciaries, the Consensus Plaintiffs expect to propose a plaintiffs' steering committee ("PSC") that can not only draw upon diverse talents and perspectives but also appoint separate fiduciary firms to represent potential subclasses. That

---

[6] Such subclasses would be distinct from the class proposed in *Garner*, which is comprised of "end-user" businesses that purchase FICO scores from non-conspirator entities. By contrast, plaintiffs in the Direct Purchaser Actions purchased credit scores directly from Fair Isaac and the co-conspirator credit bureaus.

[7] *See also Eubank v. Pella Corp.*, 753 F.3d 718, 728 (7th Cir. 2014); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 233-34 (2d Cir. 2016) ("*Amchem* [*Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997)] tells us that such divergent interests require separate counsel when it impacts the 'essential allocation decisions' of plaintiffs' compensation and defendants' liability."); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 252 (2d Cir. 2011); *Manual for Complex Litigation (Fourth)* § 21.27.

PSC is anticipated to be drawn from among the following attorneys: Jamie Boyer (Korein Tillery, LLC); Karin Garvey (Labaton Sucharow LLP); Barbara Hart (Lowey Dannenberg, P.C.); Linda Nussbaum (Nussbaum Law Group, P.C.); and Hilary Scherrer (Hausfeld LLP).

Cohen Milstein likely will contend that a single-firm structure is destined to be more efficient. Not so with well-coordinated firms—particularly when they are cooperative and recognize one another's specific experiences and strengths, as is the case among the Consensus Plaintiffs' counsel. Moreover, Cohen Milstein's shoehorning two differently situated plaintiffs into a single complaint demonstrates they cannot account for the possibility that subclass fiduciaries will be required, a consideration the firm has recognized as significant in other matters. *See, e.g.*, Dkt. 383, at 17, *In re Foreign Exch. Benchmark Rates Antitrust Litig.*, No. 13-cv-7789 (S.D.N.Y. filed Aug. 6, 2015) (" '***Only*** the creation of subclasses, and the ***advocacy of an attorney representing each subclass***, can ensure that the interests of that particular subgroup are in fact adequately represented.' ") (Ex. S). And the Consensus Plaintiffs' standing to assert either federal or state claims renders Cohen Milstein's proposed structure superfluous. If the Court allows the Consensus Plaintiffs to proceed with their federal claims, the necessary implication will be that most of the plaintiffs Cohen Milstein identifies as "indirect purchasers," like Alternative Finance, are in fact direct purchasers for whom Cohen Milstein has not asserted any claims.

### C.  The Proposed Leadership Structure Ensures Diverse Representation

"For well over a decade now, the courts have emphasized the importance of diversity in their selection of counsel." *City of Providence*, 2020 WL 6049139, at *6 (collecting cases). The Consensus Plaintiffs' counsel stand out in that regard by virtue of the number of diverse attorneys who, if appointed, will serve in substantial roles going forward.

Scott+Scott has a demonstrated commitment to diversity and gender parity. The firm was recently recognized by Law360 as a "Ceiling Smasher," ranking in the top 10 among firms with

the highest representation of women in their equity partnerships. Scott+Scott associate, Michelle Conston, who was actively involved in achieving the successes above, *see* pp. 10-11, *supra*, along with other partners and associates at Scott+Scott, will play a prominent role in directing the litigation, arguing motions, and leading the case.

MoloLamken also prides itself on its diverse team—with more than one-third of its attorneys identifying as from backgrounds historically underrepresented in the legal profession. The firm—which hires associates only from the ranks of former judicial clerks—is a leader in the ABA Judicial Intern Opportunity Program and the Leadership Council on Legal Diversity. Two of the lawyers playing leadership roles in the firm's work on this matter—partner Lauren Weinstein and senior associate Lisa Bohl—are women of color 35 years old or younger.

As discussed above, other firms representing the Consensus Plaintiffs, particularly those likely to take on PSC roles, contribute to the diversity of the proposed leadership structure. *See* pp. 13-14, *supra*. Those firms have also delegated substantial responsibility to younger attorneys.

## **CONCLUSION**

The undersigned plaintiffs thus respectfully request that this Court: (1) consolidate the Direct Purchaser Actions; (2) appoint Scott+Scott as interim lead counsel and MoloLamken as liaison counsel for the Direct Purchaser Actions; (3) consolidate the indirect purchaser claims brought by Brookfield Management Company and Garner Properties & Management into a separate group; and (4) order that all pretrial proceedings, including discovery, in the related actions be coordinated. The Consensus Plaintiffs are prepared to submit a proposed consolidated amended complaint within 30 days of this Court's order resolving this motion.

15

Dated:  October 29, 2020

Respectfully submitted,

*s/ Steven F. Molo*
Steven F. Molo
Lisa W. Bohl
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
Facsimile:  312-450-6701
smolo@mololamken.com
lbohl@mololamken.com

Lauren M. Weinstein
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W., Suite 500
Washington, DC 20037
Telephone: 202-556-2000
Facsimile:  202-556-2001
lweinstein@mololamken.com

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile:  412-231-0246
glynch@carlsonlynch.com

Katrina Carroll
CARLSON LYNCH LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
kcarroll@carlsonlynch.com

*Counsel for Plaintiff First Choice Federal
Credit Union*

*s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (N.D. Ill. 2759819)
Michelle E. Conston (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile:  212-223-6334
jguglielmo@scott-scott.com
mconston@scott-scott.com

Christopher M. Burke (*pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile:  619-233-0508
cburke@scott-scott.com

George A. Zelcs
Randall P. Ewing, Jr.
Ryan Z. Cortazar
John Libra
KOREIN TILLERY, LLC
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile:  312-641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com
jlibra@koreintillery.com

s/ Jennifer W. Sprengel
Jennifer W. Sprengel
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
jsprengel@caffertyclobes.com

Barbara J. Hart (admitted *pro hac vice*)
Christian Levis (admitted *pro hac vice*)
Frank Strangeman (admitted *pro hac vice*)
Andrea Farah (admitted *pro hac vice*)
LOWEY DANNENBERG, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: 914-997-0500
bhart@lowey.com
clevis@lowey.com
fstrangeman@lowey.com
afarah@lowey.com

*Counsel for Plaintiff Amalgamated Bank and the Proposed Class*

s/ Paul E. Slater
Paul E. Slater
Joseph M. Vanek
Michael G. Dickler
Matthew T. Slater
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200
pes@sperling-law.com
jvanek@sperling-law.com
mdickler@sperling-law.com
mslater@sperling-law.com

Steven M. Berezney
Jamie Boyer
Michael E. Klenov
Carol O'Keefe
KOREIN TILLERY, LLC
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Telephone: 314-241-4844
Facsimile: 314-241-3525
sberezney@koreintillery.com
jboyer@koreintillery.com
mklenov@koreintillery.com
cokeefe@koreintillery.com

*Counsel for Plaintiff Sky Federal Credit Union*

s/ Karin E. Garvey
Gregory S. Asciolla (admitted *pro hac vice*)
Karin E. Garvey (admitted *pro hac vice*)
Robin A. van der Meulen (admitted *pro hac vice*)
Matthew J. Perez (admitted *pro hac vice*)
Jonathan S. Crevier (admitted *pro hac vice*)
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: 212-907-0700
gasciolla@labaton.com
kgarvey@labaton.com
rvandermeulen@labaton.com
mperez@labaton.com
jcrevier@labaton.com

*Attorneys for Plaintiffs City of Boston Credit Union, Holmes County Bank and Trust Company, and the Proposed Class*

Linda P. Nussbaum
Bart D. Cohen
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com
bcohen@nussbaumpc.com

Michael L. Roberts
Karen Sharp Halbert
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
Little Rock, AR 72223
Telephone: 501-821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

*Counsel for Plaintiff Alcoa Community
Federal Credit Union and the Proposed Class*

s/ Daniel C. Hedlund
Daniel E. Gustafson (admitted *pro hac vice*)
Daniel C. Hedlund (admitted *pro hac vice*)
Michelle J. Looby (admitted *pro hac vice*)
Joshua J. Rissman
Ling S. Wang
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
lwang@gustafsongluek.com

Dennis Stewart (admitted *pro hac vice*)
GUSTAFSON GLUEK PLLC
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: 619-595-3200
dstewart@gustafsongluek.com

Marvin A. Miller
Lori A. Fanning
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312-332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

*Local Counsel for City of Boston Credit Union,
Holmes County Bank and Trust Company, and
the Proposed Class*

Guillaume Buell (admitted *pro hac vice*)
THORNTON LAW FIRM LLP
1 Lincoln Street, 13th Floor
Boston, MA 02111
Telephone: 617-720-1333
gbuell@tenlaw.com

*Attorneys for Plaintiff City of Boston Credit
Union and the Proposed Class*

Charles F. Barrett (admitted *pro hac vice*)
NEAL & HARWELL, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: 615-244-1713
cbarrett@nealharwell.com

Don Barrett (*pro hac vice* forthcoming)
BARRETT LAW GROUP, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
Telephone: 662-834-2488
dbarrett@barrettlawgroup.com
donbarrettpa@gmail.com

Kenneth A. Wexler
Melinda J. Morales
Michelle Perkovic
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
kaw@wexlerwallace.com
mjm@wexlerwallace.com
mp@wexlerwallace.com

*Counsel for Plaintiff Getten Credit Co.*
*and the Proposed Class*

Richard R. Barrett (*pro hac vice* forthcoming)
BARRETT LAW GROUP, P.A.
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: 662-380-5018
rrb@rrblawfirm.net

*Attorneys for Plaintiff Holmes County Bank and*
*Trust Company and the Proposed Class*

*s/ Hilary K. Scherrer*
Hilary K. Scherrer
Paul Gallagher
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Telephone: 202-540-7200
hscherrer@hausfeld.com
pgallagher@hausfeld.com

Michael P. Lehmann (SBN 77152)
Christopher Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com

Scott A. Martin
Irving Scher
Jeanette Bayoumi
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
smartin@hausfeld.com
ischer@hausfeld.com
jbayoumi@hausfeld.com

Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, Suite 3100
Chicago, IL 60602
Telephone: 312-899-9090
rclifford@cliffordlaw.com
smm@cliffordlaw.com

Arthur Bailey
RUPP BAASE PFALZGRAF
CUNNINGHAM LLC
1600 Liberty Building
424 Main Street
Buffalo, NY 14202
Telephone: 716-664-2967
bailey@ruppbaase.com

*Counsel for Plaintiff Kenmore NY Teachers
Federal Credit Union*

## <u>CERTIFICATE OF SERVICE</u>

I, Joseph P. Guglielmo, an attorney, hereby certify that on October 29, 2020, I caused a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR CONSOLIDATION AND APPOINTMENT OF INTERIM LEAD AND LIAISON COUNSEL** to be filed and served electronically via the Court's CM/ECF system.

In addition, a courtesy copy of this filing has been delivered by electronic mail to counsel of record in all the related actions.

<u>*s/ Joseph P. Guglielmo*</u>
Joseph P. Guglielmo

*Attorney for Plaintiff Sky Federal Credit Union*