## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SKY FEDERAL CREDIT UNION, | |
| *Plaintiff*, | Case No. 20-cv-02114 |
| v. | Honorable Edmond E. Chang |
| FAIR ISAAC CORPORATION, | |
| *Defendant*. | |

**DEFENDANT FAIR ISAAC CORPORATION'S RESPONSE TO PLAINTIFFS'
MOTIONS FOR CONSOLIDATION AND APPOINTMENT OF LEAD COUNSEL**

## INTRODUCTION

Defendant Fair Isaac Corporation ("FICO") respectfully submits this response to the motions for consolidation and appointment of interim lead counsel filed by Alternative Finance, Inc. and Brookfield Management Company (the "Alternative Finance Plaintiffs") and the self-styled "Consensus Plaintiffs." Because "Consensus Plaintiffs" is the term that Plaintiffs in eight of the ten related class actions have assigned to themselves, FICO uses the same term here for ease of reference. However, Plaintiffs' competing submissions demonstrate there is no consensus among all Plaintiffs regarding how they intend to proceed in this litigation.

Both Plaintiff groups ask the Court to consolidate the ten related class actions into separate "direct" and "indirect" purchaser actions. But as their complaints and submissions to the Court make clear, each Plaintiff group seeks to represent the *same* group of businesses that purchase FICO Scores from the three national Credit Bureaus (Experian, Equifax, and TransUnion), which the Consensus Plaintiffs call "direct" purchasers and the Alternative Finance Plaintiffs call "indirect" purchasers. Thus, Plaintiffs' competing consolidation proposals reflect a disagreement between them over the legal theories and labels that each group has adopted for putative class members, rather than a material difference with respect to the makeup of the proposed class that each group claims to represent.

FICO takes no position on either Plaintiff group's leadership proposal, but FICO opposes separate consolidation of these actions according to Plaintiffs' competing "direct" or "indirect" purchaser theories. That would only entrench Plaintiffs' dispute and allow them to continue asserting contradictory allegations on behalf of the same group of FICO Score purchasers. Instead, the Court should appoint one leadership structure for the proposed class, who can then elect to pursue a consistent theory in a single consolidated complaint. This approach will promote

1

efficiency and convenience while eliminating confusion and potential prejudice to the parties, fully consistent with the principles set forth in Rule 42(a). *See Palomares v. Second Fed. Sav. & Loan Ass'n of Chicago*, 2010 WL 4672295, at *2 (N.D. Ill. Nov. 9, 2010) (Rule 42(a) allows broad discretion to consolidate cases "so that the business of the court may be dispatched with expedition and economy while providing justice to the parties").

I. **Plaintiffs' Contradictory "Direct" and "Indirect" Purchaser Allegations Require a Single Consolidated Complaint and Corresponding Leadership Structure.**

    A.    The Consensus Plaintiffs and Alternative Finance Plaintiffs both allege that FICO enters into license agreements with the Credit Bureaus, which establish the "royalty prices" the Credit Bureaus pay FICO to distribute FICO Scores to business end-users in the United States.[1] Both groups challenge certain alleged terms in those license agreements between FICO and the Credit Bureaus as purportedly anticompetitive.[2] And both groups allege that, pursuant to separate contracts such as "Credit Scoring Services Agreements" ("CSSAs"), each Credit Bureau in turn sells FICO Scores to "lenders, financial institutions, and other businesses," which use the scores "to make decisions about whether and on what terms to evaluate and extend credit."[3] Although the Consensus Plaintiffs and Alternative Finance Plaintiffs agree on this much, they disagree about how to characterize the relationship between FICO and end-users. Specifically, the Consensus Plaintiffs allege that under the CSSAs, "both the Credit Bureau *and* Fair Isaac act as the provider of the FICO Scores."[4] The Consensus Plaintiffs take the position that end-users are therefore direct purchasers of FICO Scores for purposes of the *Illinois Brick* doctrine and accordingly seek to

---

[1] SFCU Compl. (Dkt. 1) ¶ 72; AF Compl. (Case No. 20-cv-03204 (N.D. Ill.), Dkt. 1) ¶ 76. For simplicity, FICO cites Sky Federal Credit Union's complaint. The other complaints filed by the Consensus Plaintiffs contain materially similar allegations.
[2] SFCU Compl. ¶¶ 61-73; AF Compl. ¶¶ 65-77.
[3] SFCU Compl. ¶¶ 5, 57; *accord* AF Compl. ¶¶ 3, 57
[4] SFCU Compl. ¶ 57 (emphasis added).

represent a putative class defined as "B2B purchasers residing in the United States that *directly* purchased a FICO Score from Fair Isaac and/or a Credit Bureau . . . ."[5]

By contrast, the Alternative Finance Plaintiffs allege that when end-users purchase credit scores under a CSSA, they "do not purchase FICO Scores directly from Fair Isaac itself."[6] Accordingly, end-users are indirect purchasers of FICO Scores under the Alternative Finance Plaintiffs' theory of the case.[7] The Alternative Finance Plaintiffs also reject the Consensus Plaintiffs' theory that FICO Score end-users are direct purchasers due to the existence of an alleged antitrust conspiracy between FICO and the Credit Bureaus. *See* AFP Mot. (Dkt. 62) at 9-11 (explaining why the Consensus Plaintiffs' conspiracy theory is "at least less plausible" than the Alternative Finance Plaintiffs' theory that no such conspiracy existed).

But notwithstanding the conflicting "direct" and "indirect" purchaser label that each Plaintiff group has adopted, it is clear that both groups seek to represent *the same* proposed class: end-users that purchase FICO Scores through agreements with the Credit Bureaus. *Compare* AFP Mot. at 2 ("plaintiffs who purchase FICO scores from the credit bureaus are indirect, not direct, purchasers and should be included in the Indirect Purchaser Class") *with* CP Mot. at 2 (seeking to represent "a nationwide class" that "purchased credit scores *directly* from Fair Isaac *through contracts between themselves, Fair Isaac, and a credit bureau*") (emphasis added). Indeed, each Plaintiff group's characterization of Alternative Finance's purchaser status makes clear that the "direct" and "indirect" purchaser distinction in this case is illusory. As discussed above, Alternative Finance maintains that it is an "indirect" FICO Score purchaser. In its submission to

---

[5]  SFCU Compl. ¶ 86 (emphasis added).
[6]  AF Compl. ¶¶ 9, 57.
[7]  AF Compl. ¶¶ 3, 11.

the Court, Alternative Finance provided evidence showing that "Alternative Finance's contracts for the purchase of FICO Scores were with the credit bureaus, not FICO," and "Alternative Finance paid the credit bureaus, not FICO." AFP Mot. at 6. The Consensus Plaintiffs submitted no evidence refuting the Alternative Finance Plaintiffs' characterization of how Alternative Finance purchases FICO Scores from the Credit Bureaus, nor do they contend that their own arrangements with the Credit Bureaus are any different. *See* CP Mot. at 3 ("Like the Consensus Plaintiffs, Alternative Finance purchased credit scores from Fair Isaac through contracts with the three major credit bureaus."). Nevertheless, the Consensus Plaintiffs count Alternative Finance as one of the "direct" FICO Score purchasers they seek to represent. *See id.* at 14 (asserting that end-users "like Alternative Finance . . . are in fact direct purchasers"). One thing is certain about Plaintiffs' opposing "direct" and "indirect" purchaser theories: both cannot be correct.[8]

**B.** As the foregoing demonstrates, this is not a case where antitrust claims have been filed on behalf of two entirely distinct proposed classes of purchasers that sit at different levels in the distribution chain. Here, the Consensus Plaintiffs and Alternative Finance Plaintiffs both filed suit on behalf of *the same* FICO Score purchasers but assert conflicting legal theories on their behalf. This is an internal dispute between Plaintiffs' counsel that can only be resolved by appointing lead counsel to choose *one* theory to assert in a consolidated complaint. *See Moehrl v. Nat'l Ass'n of Realtors*, 2020 WL 5260511, at *1 (N.D. Ill. May 30, 2020) (the appointment of lead counsel is appropriate to resolve conflicts created by "overlapping, duplicative, or competing class suits") (quoting *Bartling v. Apple Inc.*, 2018 WL 4804735, at *1 (N.D. Cal. Apr. 27, 2018));

---

[8] FICO is prepared to address the merits of the Consensus Plaintiffs' "direct" purchaser allegations if and when they are properly before the Court. However, it is telling that Alternative Finance, a "direct" purchaser according to the Consensus Plaintiffs' theory, provided a detailed analysis in its submission to the Court demonstrating that the Consensus Plaintiffs' direct-purchaser theory is factually unsupported, implausible, and foreclosed by the "straightforward rule of *Illinois Brick*." AFP Mot. at 2.

*cf. Smith v. State Farm Mut. Auto. Ins. Co.*, 301 F.R.D. 284, 292 (N.D. Ill. 2014) ("speculation regarding the strength of various claims" or a "difference of opinion in litigation strategy" is not grounds for appointment of separate class counsel). FICO can then address the merits of that theory and any other dispositive issues through a single motion to dismiss, the Court can resolve the motion, and the case can proceed (or not) accordingly.

Consolidation of the pleadings is routinely ordered in multi-district litigation "in order to facilitate administration of the cases and to prevent potentially conflicting classes." Fed. Judicial Ctr., Manual for Complex Litigation § 21.24 (4th ed. 2004); *see also Kivenson v. U.S. Tr. Corp., N.A.*, 2002 WL 35651302, at *4 (C.D. Cal. July 22, 2002) (ordering the filing of a consolidated complaint to resolve "varying and conflicting class allegations") (citation omitted). The same approach is warranted for the related cases, which resemble a multi-district litigation in almost all respects but for the fact that each was filed originally in this District. FICO is entitled to a coherent set of allegations that do not contradict each other, as is the Court. Plaintiffs can hardly argue that requiring them to choose a consistent theory to assert on behalf of putative class members will cause them to suffer any prejudice. To the contrary, a consolidated complaint will eliminate the confusion caused by Plaintiffs' inconsistent class allegations at the outset, benefitting both the parties and the Court at all subsequent stages of the case.

II. **Separate Consolidation of the Related Cases According to Plaintiffs' "Direct" and "Indirect" Purchaser Theories is Unwarranted.**

Both Plaintiff groups propose that the Court create separate "direct" and "indirect" purchaser actions, with each group to be put in charge of the case that aligns with its theory. *See* CP Mot. at 2-8; AFP Mot. at 11-12. But allowing Plaintiffs to proceed with separate consolidated actions and complaints would only perpetuate the problems described above. The Consensus Plaintiffs would assert claims on behalf of end-users that purchase FICO Scores from the Credit

Bureaus in the "direct purchaser" consolidated complaint, consistent with their position that such end-users are direct purchasers. The Alternative Finance Plaintiffs would assert claims on behalf of the same end-users in the "indirect purchaser" consolidated complaint, consistent with their opposite position. Thus, the same discord and contradictory class allegations asserted in the original ten complaints would persist in the resulting two complaints.[9]

Separate consolidation would also prejudice FICO in this litigation. At the very least, FICO would have to respond to overlapping and contradictory complaints, but the potential prejudice to FICO likely would go much further. The scope and preclusive effect of any judgment or settlement that FICO obtained in one of the consolidated actions would likely be disputed in the other. For example, if FICO were to obtain dismissal or summary judgment in a separate "direct purchaser" case, the Alternative Finance Plaintiffs could dispute that the judgment applied to proposed class members that purchase FICO Scores through the Credit Bureaus, because the Alternative Finance Plaintiffs have taken the position that such class members are not "direct" purchasers. The Consensus Plaintiffs could raise the same dispute in connection with any judgment that FICO were to obtain in a separate "indirect purchaser" action. The potential for this sort of confusion is "particularly worrisome in the context of a class action where failure to consolidate could also

---

[9] Both Plaintiff groups assert that separate consolidation would avoid "potential intra-class conflicts." CP Mot. at 5; AFP Mot. at 11-12. In fact, the opposite is true. Just as the Alternative Finance Plaintiffs now attack the Consensus Plaintiffs' allegations as contrary to the evidence and implausible, *see id.* at 8-11, they would continue to do so as the litigation proceeds. That would create an obvious intra-class conflict because, as noted above (at 3-4), Alternative Finance is a member of the putative class that the Consensus Plaintiffs purport to represent. Moreover, the Consensus Plaintiffs admit that their proposed "direct purchaser" action may need to be splintered into "at least three subclasses," each of which may require appointment of "separate counsel," at a later date. CP Mot. at 13. In other words, the Consensus Plaintiffs admit that their proposal would not actually resolve the supposed "intra-class conflicts" that they claim warrant a dual-track consolidation, just defer them to be dealt with at some later date.

muddle the issue of which plaintiffs are part of the class." *Wells v. Cingular Wireless LLC*, 2006 WL 2792432, at *3 (N.D. Cal. Sept. 27, 2006).

Finally, the specific consolidation proposals that each Plaintiff group offers—each involving a secondary, alternative class that the opposing Plaintiff group neither proposed in its complaints nor actually seeks to represent—are unworkable for additional reasons.

The Alternative Finance plaintiffs propose creating an "indirect purchaser" class that includes end-users that purchase FICO Scores from the Credit Bureaus (which Alternative Finance will represent) and an alternative "direct purchaser" class of end-users that obtain FICO Scores directly from FICO without the Credit Bureaus' involvement. *See* AFP Mot. at 5. However, none of the Consensus Plaintiffs fall into the second category—they all "purchased credit scores from Fair Isaac through contracts with the three major credit bureaus." CP Mot. at 3.

Similarly, the Consensus Plaintiffs propose a "direct purchaser" class that includes the end-users that purchase FICO Scores from the Credit Bureaus (which the Consensus Plaintiffs will represent) and an "indirect purchaser" class of end-users that sit further downstream in the distribution chain, acquiring FICO Scores from other entities known as "resellers." *See* CP Mot. at 3-4. Alternative Finance does not meet the alternative "indirect purchaser" definition proposed by the Consensus Plaintiffs, however, and no other Plaintiff before the Court actually seeks to represent a class limited to such purchasers. As discussed above (at 3-4), the Alternative Finance Plaintiffs' complaints define a single putative class that specifically includes end-users—like Alternative Finance itself—that purchase FICO Scores from the Credit Bureaus.

## CONCLUSION

For the foregoing reasons, FICO supports consolidation of the related class actions pursuant to Rule 42(a), but opposes the creation of separate "direct" and "indirect" purchaser

actions under either Plaintiff group's proposal. FICO takes no position on the remainder of the Plaintiffs' motions, including with respect to appointment of lead counsel.

Dated:  November 5, 2020

Respectfully submitted,

*/s/ Britt M. Miller*
Britt M. Miller
J. Gregory Deis
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
(312) 701-7711—Facsimile
bmiller@mayerbrown.com
gdeis@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendant Fair Isaac Corporation*

# CERTIFICATE OF SERVICE

I, Matthew D. Provance, an attorney, hereby certify that on November 5, 2020, I caused a true and correct copy of the foregoing **DEFENDANT FAIR ISAAC CORPORATION'S RESPONSE TO PLAINTIFFS' MOTIONS FOR CONSOLIDATION AND APPOINTMENT OF LEAD COUNSEL** to be filed and served electronically via the Court's CM/ECF system.

In addition, a courtesy copy of this filing has been delivered by electronic mail to counsel of record in the related cases.

      /s/ *Matthew D. Provance*
    Attorney for Fair Isaac Corporation