UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: FICO ANTITRUST LITIGATION | ) ) ) ) ) | No. 1:20-CV-2114<br><br>Honorable Edmond E. Chang |

**PLAINTIFFS' JOINT OPPOSITION TO EQUIFAX, INC., EXPERIAN INFORMATION SOLUTIONS, INC., AND TRANSUNION LLC'S MOTION TO CONSIDER SUPPLEMENTAL AUTHORITY**

The Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs (collectively, "Plaintiffs") respectfully submit this joint brief in opposition to Equifax, Inc. ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion LLC's ("Transunion") (collectively, the "Credit Bureaus") Motion to Consider Supplemental Authority (the "Motion").[1]

## INTRODUCTION

The Credit Bureaus ask this Court to consider *Bookends & Beginnings LLC v. Amazon.com*, No. 1:21-cv-2584, 2022 WL 4586213 (S.D.N.Y. Sept. 29, 2022), an out-of-district, unpublished decision adopting the Report and Recommendation of Magistrate Judge Valerie Figueredo (Exhibit A to the Motion) ("Report"). Having reviewed both the Report and the District Court's opinion adopting it, Plaintiffs question why the Credit Bureaus would submit to this Court a motion nearly a month after the decision's release – much less why they offered what amounts to an unauthorized sur-reply instead of simply submitting the decision for consideration.

Regardless of the motivations, *Bookends* fails to announce any new rule of law, offers no new insight to the arguments already briefed, and leans heavily on fact-specific shortcomings that shed no light on the pending motions to dismiss. Plaintiffs respectfully request that the Court deny the Credit Bureaus' motion and renew their request that the Court deny the motions to dismiss in their entirety.

## ARGUMENT

The agreements at issue here differ materially from those in *Bookends*:[2] (1) they contain provisions that restrict the sale of the Credit Bureaus' VantageScore product and allow Fair Isaac

---

[1] The Credit Bureaus failed to confer (or request to confer) with Plaintiffs before filing their motion in violation of the applicable Case Procedures.

[2] Strikingly, the Credit Bureaus omit that the Report recommended dismissal only after the defendants provided the challenged agreements. Rpt. at 7. Plaintiffs do not have access to the

1

to control pricing on B2B Credit scores, against the individual interest of each Credit Bureau; (2) they contain a *quid pro quo* (*i.e.*, the Level Playing Field provision) by Fair Isaac to the Credit Bureaus; and (3) they were entered into in relatively close succession at a critical time and in a highly concentrated market.

*First*, the Credit Bureaus contend that "a party's self-interest is not probative of conspiracy when that conduct is explained by the dominance of another party." Motion at 3. *Bookends* does not support this conclusion. As the Report carefully explains, Bookends failed to allege how any publisher's individual contract with Amazon was against its economic self-interest. *See* Report at 16-19. Unlike *Bookends*, the complaints here contain ***detailed allegations*** explaining why certain agreements between the Credit Bureaus and Fair Isaac are against the Credit Bureaus' self-interest, specifically because those provisions crippled the Credit Bureaus' own credit-scoring product (*i.e.*, VantageScore) and allowed Fair Isaac to control pricing for B2B credit scores. *See, e.g.*, DPP Compl., ¶¶109, 111; IPP Compl., ¶¶126, 128.[3]

Moreover, in *Bookends* the publishers did not receive assurances from Amazon that their competitors had agreed or would be agreeing to provisions against their self-interest. *See* Report at 25-26. Here, the complaints allege (based on TransUnion's own sworn admissions in another case) that Fair Isaac represented to TransUnion that the other two Credit Bureaus had agreed to similar terms before TransUnion acceded to the No Equivalent Products and Dynamic Royalty

---

agreements between the Credit Bureaus and Fair Isaac, which we expect will be provided in discovery.

The disclosure of the contracts in *Bookends* radically altered the theory of the case. While Bookends had previously alleged the agreements contained "most favored nation clauses," the contracts demonstrated this "was simply not true." *Bookends*, 2022 WL 4586213, at *1.

[3]    Citations refer to Direct Purchaser Plaintiffs' Consolidated Class Action Complaint (ECF No. 121) ("DPP Compl.") and Indirect Purchaser Plaintiffs' Consolidated Class Action Complaint (ECF No. 122) ("IPP Compl.").

2

provisions and that Fair Isaac made similar representations to the other two Credit Bureaus. *See, e.g.*, DPP Compl., ¶106; IPP Compl., ¶123

*Second*, the Credit Bureaus claim *Bookends* "rejected" the theory that "the Publishers were motivated to collude in order to 'increase their potential profits[.]'" Motion at 4. That fact-bound conclusion is irrelevant. Here, Plaintiffs' complaints contain ***detailed factual allegations*** of a motive to collude. *See, e.g.*, DPP Compl., ¶¶124-25; IPP Compl., ¶¶145-46. The Level Playing Field Provision, for example, guarantees no price competition between the signing Credit Bureau and its competitors by preventing Fair Isaac from charging any one Credit Bureau a more favorable price for distributing FICO Scores, which reduces the Credit Bureau's incentive to oppose price hikes and prevents Fair Isaac from coaxing new competitors into the credit-reporting market. *Id.* So, while the Credit Bureaus might have been interested in agreeing to this provision to enlarge their own profits, really, the Level Playing Field provision is a promise by Fair Isaac to restrict benefits given to each Credit Bureau's ***competitors***.

The *Bookends* Report also explains why the publishers were motivated to raise their prices without a conspiracy: Given that each publisher sells "book titles" that have "completely distinct" demand, a single publisher raising prices would not necessarily suffer "a competitive disadvantage." Report at 20. The same is not true here. A FICO Score is calculated following the same algorithm regardless of which Credit Bureau sells the score. *See* DPP Compl., ¶¶3, 44; IPP Compl., ¶¶3, 48.

*Third*, additional factors not present in *Bookends* favor a finding of conspiracy:

- **VantageScore Solutions is a joint venture by the Credit Bureaus**. This establishes not just the opportunity to communicate, but the reason and means to discuss their agreements with Fair Isaac. DPP Compl., ¶6; IPP Compl., ¶10. *Bookends* did not allege any similar relationship among the Publishers. *See* Report at 22-27.

3

- **The Timing of the Agreements**. Fair Isaac signed the agreements with the Credit Bureaus around the time VantageScore Solutions was poised to become a serious competitor and in fairly rapid succession. DPP Compl., ¶¶104, 142; IPP Compl., ¶¶121, 163. *Bookends* lacked similar allegations.

- **Highly Concentrated Market Structure**. Whereas the plaintiff in *Bookends* shouldered the burden of proving a conspiracy among five Publishers, Report at 1, this case concerns the dominant Credit Bureaus, which essentially have a triopoly in the relevant market. DPP Compl., ¶57; IPP Compl., ¶69.

## CONCLUSION

Plaintiffs respectfully request that the Court deny the Credit Bureaus' Motion.

Dated: November 2, 2022

Respectfully submitted,

 *s/ Steven F. Molo*
Steven F. Molo
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
Facsimile: 312-450-6701
smolo@mololamken.com

Lauren M. Weinstein
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W., Suite 500
Washington, DC 20037
Telephone: 202-556-2000
Facsimile: 202-556-2001
lweinstein@mololamken.com

*Liaison Counsel*
.

 *s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (N.D. Ill. 2759819)
Michelle E. Conston (admitted *pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
mconston@scott-scott.com

Christopher M. Burke (admitted *pro hac vice*)
SCOTT+SCOTT ATTORNEYS AT LAW LLP
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565
Facsimile: 619-233-0508
cburke@scott-scott.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs*

By  */s/Garrett D. Blanchfield*
Garrett D. Blanchfield
REINHARDT WENDORF & BLANCHFIELD
Garrett D. Blanchfield (*Pro Hac Vice*)
Brant D. Penney (*Pro Hac Vice*)
Roberta A. Yard (*Pro Hac Vice* forthcoming)

4

332 Minnesota Street, Suite W-1050
St. Paul, MN 55101
Tel: (651) 287-2100
Fax: (651) 287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

SPECTOR ROSEMAN & KODROFF, P.C.
Jeffrey J. Corrigan (*Pro Hac Vice*)
William G. Caldes (*Pro Hac Vice*)
Icee N. Etheridge (*Pro Hac Vice* forthcoming)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 496-6611
JCorriganf@srkattorneys.com
BCaldes@srkattorneys.com
IEtheridge@srkattorneys.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Joseph P. Guglielmo, hereby certify that on November 2, 2022, I caused a true and correct copy of the foregoing to be filed and served electronically via the Court's CM/ECF system.

                                               *s/ Joseph P. Guglielmo*
                                                  Joseph P. Guglielmo