**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | No. 1:20-CV-2114 |
| This document relates to: | Judge Edmond E. Chang |
| ALL ACTIONS | Magistrate Judge M. David Weisman |

**PLAINTIFFS' JOINT OPPOSITION TO
<u>THE CREDIT BUREAUS' MOTION TO STAY DISCOVERY</u>**

Direct Purchaser Plaintiffs and Indirect Purchaser Plaintiffs ("Plaintiffs") respectfully submit this joint brief in opposition to the Credit Bureaus' Motion To Stay Discovery (Dkt. 187).

## PRELIMINARY STATEMENT

Discovery does not "cease during the pendency of a motion to dismiss." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988). Despite that default rule, the Credit Bureaus claim they should be exempted from discovery. But they have failed to carry their burden of showing a stay is warranted. They have shown no hardship or inequity that would arise from proceeding with discovery, much less the sort of hardship that would overcome the prejudice to Plaintiffs from a second stay of discovery. This case has been pending since April 2020, and the Credit Bureaus (and FICO) have provided no discovery. They have "already had the benefit of a lengthy stay." *Robinson v. Walgreen Co.*, No. 20 CV 50288, 2021 WL 2453069, at *2 (N.D. Ill. June 16, 2021). Another stay would prejudice Plaintiffs, be contrary to the public interest in prosecuting antitrust-law violations, and threaten the efficient and orderly progress of this case. The motion should be denied.[1]

## BACKGROUND

**I.    THE CREDIT BUREAUS REFUSE TO PARTICIPATE IN CASE SCHEDULE NEGOTIATIONS**

On September 28, 2023, this Court denied the motion to dismiss the § 2 and state-law claims against Fair Isaac, granted the motions to dismiss the § 1 claims against Fair Isaac and the Credit Bureaus, granted Plaintiffs leave to amend their complaints to re-plead the § 1 claims, and ordered that a proposed case schedule be filed by October 16. Dkt. 173, at 30-31. Accordingly, Plaintiffs emailed counsel for Fair Isaac and each Credit Bureau a proposed case schedule and

---

[1] Given the Court's November 16 ruling that "the Credit Bureaus may be treated as a non-party . . . for discovery purposes, starting right now," Dkt. 198, the only remaining dispute is whether party discovery should be stayed as to the Credit Bureaus. For the reasons explained in this brief, it should not.

asked all counsel to "advise when you are available to meet and confer." Ex. A, at 12 (Oct. 6, 2023 Email from L. Weinstein). The Credit Bureaus did not respond. FICO, however, sent a counterproposal on the schedule to Plaintiffs and counsel for the Credit Bureaus. Ex. A, at 9-12 (Oct. 10, 2023 Email from M. Provance). Yet again, the Credit Bureaus did not respond.[2]

On October 11, Plaintiffs suggested by email – which included counsel for each Credit Bureau – a meet and confer regarding Plaintiffs' proposal to pursue certification and merits expert discovery simultaneously. Ex. B, at 1 (Oct. 11, 2023 Email from L. Weinstein). Again, the Credit Bureaus did not respond. Nonetheless, FICO and Plaintiffs continued to copy the Credit Bureaus on email communications concerning the case schedule. *See, e.g.*, Ex. A, at 3-6 (Oct. 13, 2023 Email from M. Provance); Ex. A, at 3 (Oct. 16, 2023 Email from L. Weinstein); Ex. A, at 1 (Oct. 16, 2023 Email from C. Medvene); Ex. C, at 1 (Oct. 13, 2023 Email from L. Dayton).[3]

On October 16, 2023, the proposed case schedule was filed. Dkt. 179. The next day, the Court entered the agreed-upon dates and ruled in Plaintiffs' favor regarding expert discovery, noting that even though "merits expert discovery possibly would go to waste" if certification were denied, that concern was outweighed by the fact that "waiting many, many months to start merits expert discovery 100% guarantees delay." Dkt. 180.

## II.  PLAINTIFFS AMEND THEIR COMPLAINTS

On October 30, 2023, Plaintiffs filed amended complaints. Dkts. 184, 185. Unlike the prior complaints, Dkts. 121, 122, the amended complaints no longer allege a conspiracy among ***all*** Defendants (*i.e.*, a hub-and-spokes conspiracy). Instead, the amended complaints allege simply

---

[2] Plaintiffs' exhibits have been excerpted to remove duplicate e-mails further down the chain.

[3] To the extent the Credit Bureaus complain about missing the single meet and confer over the case schedule – which focused on the dispute over expert discovery – their quarrel is with Fair Isaac, not with Plaintiffs. Counsel for Fair Isaac sent the calendar invitation and video-call information for that meet and confer and did not inform Plaintiffs that they had not invited counsel for the Credit Bureaus.

2

that *each* Credit Bureau agreed with Fair Isaac to an unreasonable "contract . . . in restraint of trade or commerce." 15 U.S.C. § 1; *see* Dkt. 173, at 13 (holding that the "No Equivalent [Products] Provision and the Dynamic Royalty Schedule clauses" in the contracts between each Credit Bureau and Fair Isaac "together qualify as sufficient allegations of anticompetitive effects"). The amended complaints also incorporate new facts, including facts learned from Fair Isaac's Answers in this case – in particular, that Fair Isaac's contracts with each Credit Bureau contain the provisions the Court held were "sufficient allegations of anticompetitive effects." *See, e.g.*, Dkt. 184 ¶¶ 116, 118; Dkt. 185 ¶¶ 127, 129. Those contracts are "the unlawful agreement[s]" § 1 requires. *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 704 (7th Cir. 2021).

## III. THE CREDIT BUREAUS REFUSE PLAINTIFFS' COMPROMISE OFFER

After sitting by, watching case-schedule negotiations occur and watching the Court enter the now-operative schedule, on November 1, the Credit Bureaus wrote to Plaintiffs stating that they "intend to seek confirmation from the Court that the deadlines the Court entered" "do not apply to the Credit Bureaus" and that "no discovery of the Credit Bureaus . . . shall be exchanged before the motions to dismiss the amended complaints are decided." Dkt. 187-1, at 10-11.

Plaintiffs objected and proposed a compromise: "[T]he Credit Bureaus should be excused from party discovery during the pendency of their motion to dismiss if the Credit Bureaus agree that, if the motion to dismiss is denied, they will not seek to be excused from deadlines under the operative case schedule and they will not seek to be excused from party discovery on the grounds that they have completed some third-party discovery." Dkt. 187-1, at 7. That proposal, Plaintiffs explained, would adequately balance Plaintiffs' need to obtain "discovery from the Credit Bureaus promptly as materials in their possession are critical to [Plaintiffs'] prosecution of the case" against the Credit Bureaus' "concern[s] about being burdened with party discovery." *Id.* Plaintiffs further explained during a November 6 meet and confer with the Credit Bureaus and Fair Isaac that the

3

proposal "was to move forward with third-party discovery now and, in the event that the motion to dismiss is denied, to have the Credit Bureaus proceed on the schedule the Court has entered," not to engage in two rounds of discovery. *Id.* at 2. The Credit Bureaus rejected Plaintiffs' proposal without suggesting an alternative or explaining what categories of documents they would view as reasonable third-party discovery during the pendency of the motion to dismiss. *Id.*[4]

On November 16, the Court entered a briefing schedule for the Credit Bureaus' stay motion. In doing so, the Court ordered that "the Credit Bureaus may be treated as a non-party . . . like any other non-party for discovery purposes, starting right now." Dkt. 198. Plaintiffs thus intend to pursue third-party discovery against the Credit Bureaus promptly, during the pendency of this motion to stay and the forthcoming motion to dismiss, per the Court's order.

## ARGUMENT

**I.   THE CREDIT BUREAUS FAIL TO JUSTIFY A SECOND STAY OF DISCOVERY**

Discovery does not "cease during the pendency of a motion to dismiss." *SK Hand Tool Corp. v. Dresser Indus., Inc.*, 852 F.2d 936, 945 (7th Cir. 1988). That is the default rule. Filing a motion to dismiss "'is not ordinarily sufficient to justify a stay of discovery. Had the Federal Rules contemplated that a motion to dismiss under Fed. R. Civ. P. 12(b)(6) would stay discovery, the Rules would contain a provision to that effect.'" *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *2 (N.D. Ill. Feb. 20, 2013) (collecting cases); *see also* Judge Edmond E. Chang's Case Procedures, *Discovery & Discovery Motions* ("[T]he pendency of a motion, such as a motion to dismiss, does not necessarily operate as a stay of discovery"). As the ones asking the Court to depart from the default rule, the Credit Bureaus

---

[4] On November 6, while the Credit Bureaus were considering the compromise proposal, Plaintiffs served requests for production and interrogatories on all Defendants as required by the operative scheduling order.

"bear[ ] the burden of proving" that discovery should be stayed. *Robinson v. Walgreen Co.*, No. 20 CV 50288, 2021 WL 2453069, at *2 (N.D. Ill. June 16, 2021) (citing *Ind. State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 961 (2009)); *see* Dkt. 187, at 4-5. They must show that a stay (i) would not "unduly prejudice or tactically disadvantage" Plaintiffs; (ii) would "simplify the issues in question and streamline the trial"; and (iii) would "reduce the burden of litigation on the parties and on the court." *Id.* at *1. The Credit Bureaus have failed to carry their burden. Their proposed stay of discovery "100% guarantees delay." Dkt. 180. And the motion should be denied.

***First***, a stay would "unduly prejudice and disadvantage" Plaintiffs. *Robinson*, 2021 WL 2453069, at *2. Under the Credit Bureaus' proposal, Plaintiffs will not be able to obtain any party discovery from the Credit Bureaus until March 2024 at earliest. That would not just hamper Plaintiffs' ability to develop their cases against the Credit Bureaus; it would also frustrate Plaintiffs' ongoing discovery of **Fair Isaac**, whose contracts and relationships with the Credit Bureaus are at the heart of this antitrust litigation. *See, e.g.*, DPP First Am. Compl., Dkt. 184, ¶¶ 101-145, 156-158; IPP Second Am. Compl., Dkt. 185, ¶¶ 115-162, 171-174. What Plaintiffs learn from discovery produced by the Credit Bureaus will necessarily inform what Plaintiffs seek in discovery from Fair Isaac. The Credit Bureaus' assertion (at 5) that Plaintiffs will be unaffected by a stay because they "can advance their claims and discovery against FICO" in the meantime is thus demonstrably false. Moreover, a stay only heightens the risk that discoverable information will be lost through failures to retain relevant documents or because, for example, employees with discoverable information leave the Credit Bureaus' employment and/or the jurisdiction (and therefore the subpoena power of the Court).

Staying discovery would also harm the "genuine public interest in bringing private antitrust class actions in order to protect consumers, competition, and businesses." *In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2019 WL 6888488, at *21 (E.D.N.Y. Dec. 16, 2019).  Every day that passes is another day that the Credit Bureaus and Fair Isaac extract supracompetitive fees from the financial institutions that comprise the putative class and harm competition in the relevant markets through their anticompetitive contracts.  The Credit Bureaus' desire to avoid the "burden, time and expense" of discovery cannot overcome the harm to Plaintiffs and putative class members "resulting from the unnecessary delay in and the inability to obtain expeditious resolution of this already protracted litigation." *Youngbloods v. BMG Music*, No. 07 Civ. 2394, 2011 WL 43510, at *7 (S.D.N.Y. Jan. 6, 2011).

"'If there is even a fair possibility that the stay will work damage to some one else, the party seeking the stay must make out a clear case of hardship or inequity in being required to go forward.'" *Robinson*, 2021 WL 2453069, at *2 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)) (alteration omitted).  The Credit Bureaus have not made ***any*** case for hardship or inequity resulting from proceeding to discovery, much less a "clear case." *Id.*  All the Credit Bureaus offer is the unsubstantiated assertion (at 5) that discovery "unquestionably will be expensive and time-consuming."  They have provided "no clear showing of [their] burden or cost with any anticipated discovery." *Abbott Labs.*, 2013 WL 690613, at *3.

The Credit Bureaus point out (at 5) that "'having to wait for resolution is not a persuasive reason to deny the motion for stay.'"  That may be true in an ordinary case.  But where, as here, there has already been a lengthy stay in place, courts recognize that a "second stay . . . would be prejudicial." *Robinson*, 2021 WL 2453069, at *2; *see, e.g.*, *CMG Worldwide Inc. v. Adidas Am., Inc.*, No. 1:17-CV-2356, 2018 WL 7140117, at *3 (S.D. Ind. Sept. 26, 2018) (denying a second stay on the ground that it "could prejudice the plaintiff's ability to develop its case, because the passage of time tends to erode proof of claims and damages.").  This case has been pending for

over three years; the Credit Bureaus have "already had the benefit of a lengthy stay." *CMG Worldwide*, No. 1:17-CV-2356, 2018 WL 7140117, at *3. There is no reason to stay discovery again now, just as the case is getting off the ground.

**Second**, a stay would not "simplify the issues in question and streamline the trial." *Robinson*, 2021 WL 2453069, at *1. The cases the Credit Bureaus cite (at 5) presented circumstances where the pending motion to dismiss would have resolved the case in its entirety. *See Calderon v. Procter & Gamble Co.*, No. 22-cv-3326, 2022 WL 20742696, at *2 (N.D. Ill. Oct. 6, 2022) (stay "appropriate where the motion to dismiss can resolve the case"); *Rodriguez v. Ford Motor Co.*, No. 21 C 2553, 2022 WL 704780, at *1 (N.D. Ill. Mar. 9, 2022) (same). But here – whether the Credit Bureaus are parties or not – this litigation will continue at least as to Fair Isaac. And regardless of the outcome of the motions to dismiss, the Court will have to assess the reasonableness of Fair Isaac's contracts with each of the Credit Bureaus to resolve the § 2 claim against Fair Isaac. *See* Dkt. 173, at 30-31 (permitting § 2 claims to proceed to discovery on the basis of anticompetitive contract provisions). Courts routinely deny stays of discovery in similar circumstances. *See, e.g.*, *Kelley v. BT Bourbonnais, LLC*, No. 1:17-cv-06636, Dkt. 52 (N.D. Ill. July 6, 2018) (denying stay "in light of the factual overlap" between part of the case proceeding to discovery and part of the case subject to a motion to dismiss); *Burlinski v. Top Golf USA, Inc.*, No. 1:19-cv-06700, Dkt. 81 (N.D. Ill. Feb. 4, 2021) (stay not warranted where pending ruling "would not entirely resolve the case").

The Credit Bureaus assert (at 5) that a stay is warranted here because the Court has found "a set of claims legally defective," but they do not cite a single case that suggests the dismissal of claims in an earlier version of a complaint warrants a stay of discovery on re-pleaded claims. Indeed, courts have denied motions to stay discovery after granting motions to dismiss with leave

7

to amend. *See, e.g.*, *Kindstrom v. Lake County*, 3:22-cv-50041, Dkt. 120 (N.D. Ill. March 6, 2023) (striking motions to stay discovery "in light of the anticipated third amended complaint").

**Third**, a stay would not "reduce the burden of litigation on the parties and the Court." *Robinson*, 2021 WL 2453069, at *2. To the contrary, if the Credit Bureaus' motion to dismiss is denied but the Credit Bureaus have been excused from party discovery during the pendency of the motion, the case schedule could be thrown into disarray and resolution of this case could be needlessly prolonged. The Credit Bureaus will be subject to discovery one way or the other, whether as parties or third parties (indeed, they are now subject to discovery as third parties per the Court's November 16 order). A stay will merely postpone – at the expense of Plaintiffs, the public interest, and the Court-ordered schedule – whatever burdens are associated with that discovery. While the Credit Bureaus suggest (at 6) that party discovery will be significantly more burdensome than third-party discovery, the Federal Rule governing third-party discovery (Rule 45) "contains no language distinguishing the scope of party discovery from non-party discovery." *United States v. AT&T Inc.*, No. 1:11-cv-01560, 2011 WL 13273135, at *3 (D.D.C. Oct. 29, 2011). And though the Credit Bureaus tally up the discovery requests served by Plaintiffs, they nowhere argue that the requests are overbroad, unreasonable, or disproportionate to the needs of this complex antitrust case. The fact is, they have critical information that is uniquely in their possession and relevant to the ongoing case against Fair Isaac as well as the claims against the Credit Bureaus. Plaintiffs are entitled to that information now so they can effectively prosecute this case.

Nor will a stay reduce the burdens on the Court. Far from it: A stay risks upsetting the already-entered case schedule as explained above. It also creates opportunities for further disputes that will require Court resolution, including disputes over what constitutes third-party versus party

discovery, and disputes over the case schedule if the parties must go back to the well on that after the Court's ruling on the forthcoming motions to dismiss. Courts in this district have recognized that "[s]taying discovery as to some, but not all of the Defendants will not operate to simplify th[e] case but may result in the need to duplicate depositions, complicate discovery, and frustrate the expeditious resolution to this litigation." *Harper v. Cent. Wire, Inc.*, No. 19 CV 50287, 2020 WL 5230746, at *2 (N.D. Ill. Sept. 2, 2020).

The Credit Bureaus spill much ink attempting to persuade the Court to stay discovery based on their belief that their forthcoming motion to dismiss will be successful. *See* Dkt. 187 at 1-2, 5-6. But that is not a proper basis for staying discovery, as even the cases the Credit Bureaus cite recognize. *See Robinson*, 2021 WL 2453069, at *3 (collecting cases); Dkt. 187 at 4-5 (listing factors). Courts have recognized that such arguments are essentially improper requests for "a preliminary finding on the likelihood of success on the merits" that have no place in deciding whether to stay discovery. *Abbott Labs.*, 2013 WL 690613, at *2. The relevant factors favor proceeding with discovery.

## II. THE COURT'S ORDERS DO NOT IMPLIEDLY STAY DISCOVERY

Unable to meet their burden under the relevant factors, the Credit Bureaus resort to reading the tea leaves in the Court's prior orders. Dkt. 187, at 6. Those attempts are as unavailing as they are unilluminating.

*First*, the Credit Bureaus speculate (at 7) that the deadline the Court set for Fair Isaac's Answers and Plaintiffs' amended complaints "suggest that the Court did not contemplate that filing amended complaints would also automatically entitle the Plaintiffs to expand that discovery to include the Credit Bureaus." But the Credit Bureaus forget that the Court operates against the backdrop of the defaults set by the Federal Rules of Civil Procedure, under which discovery is not automatically stayed during the pendency of a motion to dismiss.

9

***Second,*** the Credit Bureaus suggest (at 7) that the Court should have "scheduled this [October 17] status report for a date after the Plaintiffs filed amended complaints on October 30, 2023, so that the Credit Bureaus could participate in the process of negotiating the dates." But the only thing that stopped the Credit Bureaus from negotiating the schedule was their own refusal to engage. The Court expressly granted leave to amend; the Credit Bureaus knew there was a risk they would be brought back into the case. Now, they are parties who are subject to discovery in the ordinary course.

***Finally,*** the Credit Bureaus assert (at 7) that Plaintiffs are to blame for not "request[ing] the Credit Bureaus' views on any of the discovery deadlines included in the October 16, 2023 Joint Status Report." That claim is not only irrelevant to the stay inquiry, it is patently false. Plaintiffs proposed the discovery schedule to "Counsel," not just counsel for Fair Isaac, and included counsel for the Credit Bureaus on all correspondence regarding the case schedule. *See* p. 2, *supra* & Exs. A-C. The Credit Bureaus made a strategic choice in refusing to provide their views on the case schedule; the schedule should not be thrown into disarray because of the Credit Bureaus' litigation tactics.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny any stay of discovery and require the Credit Bureaus to comply with the existing case schedule if the Court denies the Credit Bureaus' forthcoming motion to dismiss.[5]

---

[5] Fair Isaac, to date, has not moved to stay discovery and has taken no position on the stay the Credit Bureaus seek. *See* Dkt. 187-1, at 8-9. To the extent Fair Isaac takes a different position in its November 20 statement, Plaintiffs respectfully request the right to respond to its arguments in writing. For now, Plaintiffs object to any stay of discovery as to Fair Isaac, even if the Court grants a stay of party discovery as to the Credit Bureaus, given that the Court has already held that the § 2 and state-law claims against Fair Isaac may proceed to discovery, and the § 2 and state-law allegations in the amended complaints are essentially unchanged from the prior pleadings.

Dated: November 20, 2023

Respectfully Submitted,

/s/ Steven F. Molo
Steven F. Molo
Lauren F. Dayton
**MOLOLAMKEN LLP**
300 North LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
smolo@mololamken.com
ldayton@mololamken.com

Lauren M. Weinstein
Robert Y. Chen
**MOLOLAMKEN LLP**
600 New Hampshire Avenue, N.W.,
Suite 500
Washington, DC 20037
Telephone: 202-556-2000
lweinstein@mololamken.com
rchen@mololamken.com

*Liaison Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

George A. Zelcs
Randall P. Ewing, Jr.
Ryan Z. Cortazar
**KOREIN TILLERY, LLC**
205 North Michigan Avenue,
Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Jennifer W. Sprengel
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
150 South Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
jsprengel@caffertyclobes.com

/s/ Carmen Medici
Carmen Medici (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-798-5319
cmedici@scott-scott.com

Joseph P. Guglielmo (N.D. Ill. 2759819)
Michelle E. Conston (*pro hac vice*)
Anna Hunanyan (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
jguglielmo@scott-scott.com
mconston@scott-scott.com
ahunanyan@scott-scott.com

Patrick McGahan (*pro hac vice*)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
156 S. Main St.
Colchester, CT 06415
Telephone: 860-531-2606
pmcgahan@scott-scott.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
**KOREIN TILLERY PC**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: 619-625-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

Barbara J. Hart (*pro hac vice*)
**GRANT & EISENHOFER**
485 Lexington Ave., 29th Floor
New York, NY 10017
Telephone: 646-722-8526
bhart@gelaw.com

Paul E. Slater
Joseph M. Vanek
Michael G. Dickler
Matthew T. Slater
**SPERLING & SLATER, P.C.**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200
pes@sperling-law.com
jvanek@sperling-law.com
mdickler@sperling-law.com
mslater@sperling-law.com

Guillaume Buell (*pro hac vice*)
**THORNTON LAW FIRM LLP**
1 Lincoln Street, 13th Floor
Boston, MA 02111
Telephone: 617-720-1333
gbuell@tenlaw.com

Daniel E. Gustafson (*pro hac vice*)
Daniel C. Hedlund (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Joshua J. Rissman
Ling S. Wang
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
lwang@gustafsongluek.com

Linda P. Nussbaum
Susan Schwaiger
**NUSSBAUM LAW GROUP, P.C.**
1211 Avenue of the Americas, 40th Floor
New York, NY 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com

Michael L. Roberts
Karen Sharp Halbert
**ROBERTS LAW FIRM, P.A.**
20 Rahling Circle
Little Rock, AR 72223
Telephone: 501-821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

Gregory S. Asciolla (*pro hac vice*)
Karin E. Garvey (*pro hac vice*)
Robin A. van der Meulen (*pro hac vice*)
Matthew J. Perez (*pro hac vice*)
Jonathan S. Crevier (*pro hac vice*)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Telephone: 646-933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com
rvandermeulen@dicellolevitt.com
mperez@dicellolevitt.com
jcrevier@dicellolevitt.com

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312-332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Dennis Stewart (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: 619-595-3200
dstewart@gustafsongluek.com

Kenneth A. Wexler
Melinda J. Morales
**WEXLER BOLEY & ELGERSMA LLP**
311 s. Wacker Dr., Suite 5450
Chicago, IL 60606
Telephone: 312-346-2222
kaw@wexlerwallace.com
mjm@wexlerwallace.com

Scott A. Martin
Irving Scher
Jeanette Bayoumi
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
smartin@hausfeld.com
ischer@hausfeld.com
jbayoumi@hausfeld.com

Gary F. Lynch
**CARLSON LYNCH LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
glynch@carlsonlynch.com

Katrina Carroll
**CARLSON LYNCH LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
kcarroll@carlsonlynch.com

Charles F. Barrett (*pro hac vice*)
**NEAL & HARWELL, PLC**
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: 615-244-1713
cbarrett@nealharwell.com

Don Barrett (*pro hac vice* forthcoming)
**BARRETT LAW GROUP, P.A.**
404 Court Square
P.O. Box 927
Lexington, MS 39095
Telephone: 662-834-2488
dbarrett@barrettlawgroup.com
donbarrettpa@gmail.com

Richard R. Barrett (*pro hac vice* forthcoming)
**BARRETT LAW GROUP, P.A.**
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: 662-380-5018
rrb@rrblawfirm.net

Michael P. Lehmann (SBN 77152)
Christopher Lebsock (SBN 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com

Hilary K. Scherrer
Paul Gallagher
**HAUSFELD LLP**
1700 K Street, N.W., Suite 650
Washington, D.C. 20006
Telephone: 202-540-7200
hscherrer@hausfeld.com
pgallagher@hausfeld.com

*Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

   */s/ Garrett D. Blanchfield*
Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard (*pro hac vice* forthcoming)
**REINHARDT WENDORF & BLANCHFIELD**
332 Minnesota Street, Suite W-1050
St. Paul, MN 55101
Telephone: 651-287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

Jeffrey J. Corrigan (*pro hac vice*)
William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
Icee N. Etheridge (*pro hac vice*)
**SPECTOR ROSEMAN & KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: 215-496-0300
JCorriganf@srkattorneys.com
BCaldes@srkattorneys.com
JSpector@srkattorneys.com
IEtheridge@srkattorneys.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs and the Proposed Indirect Purchaser Class*

Jonathan M. Jagher (*pro hac vice* forthcoming)
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
jjagher@fklmlaw.com

David McLafferty (*pro hac vice* forthcoming)
**MCLAFFERTY LAW FIRM, P.C.**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-940-4000, ext. 12
dmclafferty@mclaffertylaw.com

Charles R. Watkins (3122790)
**GUIN, STOKES & EVANS, LLC**
321 South Plymouth Court
Suite 1250
Chicago, IL 60604
Telephone: 312-878-8391
charlesw@gseattorneys.com

*Liaison Counsel for Indirect Purchaser Plaintiffs and the Proposed Indirect Purchaser Class*

Michael S. Smith (*pro hac vice*)
Gregory P. Hansel (*pro hac vice*)
Randall B. Weill (*pro hac vice*)
Elizabeth F. Quinby (*pro hac vice*)
**PRETI FLAHERTY, BELIVEAU & PACHIOS LLP**
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: 207-791-3000
msmith@preti.com
ghansel@preti.com
rweill@preti.com
equinby@preti.com

Brian P. Murray (*pro hac vice* forthcoming)
Lee Albert (*pro hac vice* forthcoming)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue,
Suite 358
New York, NY 10169
Telephone: 212-682-5340
bmurray@glancylaw.com
lalbert@glancylaw.com

Douglas A. Millen
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: 224-632-4500
dmillen@fklmlaw.com

Michael J. Boni (*pro hac vice* forthcoming)
Joshua D. Snyder (*pro hac vice* forthcoming)
John E. Sindoni (*pro hac vice* forthcoming)
**BONI, ZACK & SNYDER LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com

Simon B. Paris, Esq.
(*pro hac vice* forthcoming)
Patrick Howard, Esq.
(*pro hac vice* forthcoming)
**SALTZ MONGELUZZI &
BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-575-3985
sparis@smbb.com
phoward@smbb.com

*Counsel for Indirect Purchaser Plaintiffs and
the Proposed Indirect Purchaser Class*