**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | No. 1:20-CV-02114 |
| *This document relates to:* | Judge Edmond E. Chang |
| ALL ACTIONS | Magistrate Judge David E. Weisman |

**STIPULATION AND ORDER ESTABLISHING THE
PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND
ELECTRONICALLY STORED INFORMATION ("ESI")**

Pursuant to the agreement reached between Plaintiffs and Defendants herein, this Court adopts and orders the following Protocol relating to the Production of Documents and Electronically Stored Information, which binds all parties and their counsel of record in the above-captioned case (the "Action"), whether they currently are involved or become so in the future (collectively, the "Parties"). The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue.

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith regarding discovery issues pertaining to ESI, consistent with the Seventh Circuit Electronic Discovery Pilot Program Principle 1.02.

**I. DEFINITIONS**

a. "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

b. "Document" shall have the same meaning as set forth in Federal Rule of Civil Procedure ("FRCP") 34(a)(l)(A) and when used herein, refers to both ESI and hard copy documents.

      c.      "Electronically Stored Information" ("ESI") shall have the same meaning as set forth in FRCP 34(a)(l)(A) and refers to computer-generated information or data of any kind (including, but not limited to, Email, Structured and Unstructured Data, and data compilations), stored in or on any medium from which information can be obtained, such as computers, cellular telephones, file servers, disks, tape or other real or virtualized devices or media.

      d.      "Email" means an electronic means for sending, receiving, and managing communications via different structured data applications (Email client software), including, but not limited to, Microsoft Outlook, Google Gmail, Yahoo Mail, or Lotus Notes, and the file(s) created or received by such means.

      e.      "Instant Messages" means communications involving immediate correspondence between two or more users sent via chat application that are maintained in the ordinary course of business.

      f.      "Extracted Text" means the text extracted from a native document, and includes all header, footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of documents subject to OCR, a file containing the text resulting from the OCR.

      g.      "Load File" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as identification of OCR or Extracted Text, should such data be available.

h.     "Media" means an object or device, including but not limited to a disc, tape, computer, or other device on which data is or was stored.

i.     "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, and which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

j.     "Native Format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image).

k.     "OCR" means optical character recognition technology that is capable of reading text-based or paper/hard copy documents and making such documents searchable using appropriate software.

l.     "Parties" collectively shall mean all named parties to the above-captioned Action, including any Party added or joined to any complaint filed in the above-captioned Action, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

m.     "Predictive Coding/Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of a litigation regarding the responsiveness of a subset of documents and that extrapolates those judgments to the remaining document collection.  For purposes of this Protocol, Predictive Coding/Technology Assisted Review is synonymous with computer-assisted review,

computer-aided review, content-based advanced analytics, or other terms used to refer to search methodologies that rely on machine-based learning to identify responsive documents.

n.     "Production" includes any exchange of Documents or ESI between the Parties, whether voluntarily or in response to a formal or informal request.

o.     "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI and includes strings of words and phrases joined by proximity and Boolean connectors.

p.     "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format ("TIFF") image is an example of a Static Image.

q.     "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

r.     "Unstructured Data" refers to free-form data that either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, Email, and image files.

## II.     SCOPE

a.     **General**.  Pursuant to FRCP 5(b)(2)(E), the Parties agree to serve written discovery electronically.  The procedures and protocols outlined herein govern the Production of Documents and ESI by all Parties.  The Parties will take reasonable steps to comply with this agreed-upon Protocol.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party requested to produce Documents or ESI ("Producing Party") or a Party requesting Documents or ESI ("Requesting Party").

The production specifications in this Protocol apply to Documents and ESI that are produced in the first instance in this Action. To the extent any Party is required to or agrees to produce Documents or ESI in this Action that originally were collected or produced in other cases or government investigations, such Documents or ESI may be produced in the same format in which they originally were produced in the other cases or to the government.

The Parties agree that nothing in this Protocol is intended to revise or alter the local rules, applicable state or federal statutes, the FRCP, Advisory Committee Notes, or other authorities with regard to the preservation and production of ESI, including but not limited to FRCP 26(b)(1) concerning the Scope in General of Discovery; FRCP 26(b)(2)(B) concerning the Specific Limitations on ESI; FRCP 26(c)(1) concerning Protective Orders; or FRCP 34 concerning Production of ESI.

b.   **Limitations and Non-Waiver**.  The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine.  All Parties preserve their attorney-client privileges, work-product protection, and other privileges.  The Parties and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds.  Further, nothing in this Protocol shall be construed to affect the admissibility of Documents and ESI.  All objections to the discoverability or admissibility of any Documents and ESI are preserved and may be asserted at any time.

c.   **Reservation of Rights**.  For the avoidance of doubt, the inclusion of any platform, program, application, or software in this Protocol as an example does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or

software.  The Parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed in Section I, subject to the provisions of Section V.

       d.    **Modification by Agreement**.  Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Documents and ESI. Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from this Protocol must obtain leave of Court to do so unless all affected Parties otherwise consent in writing.  Before seeking Court intervention, all affected Parties shall meet and confer in good faith regarding any modification.

       e.    **Modification by Court Order**.  Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with the counsel for the opposing Party and the Parties shall use reasonable best efforts to negotiate an exception from or modification to this Protocol prior to seeking relief from the Court.

## III.    PRESERVATION

       The Parties agree to take reasonable steps to preserve relevant Documents and ESI, in accordance with their obligations under applicable law.  By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.  The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this Action.

## IV.      PRODUCTION OF STRUCTURED DATA

Where a discovery request requires production of Structured Data, in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of a data sample from such structured data source.  The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the sample and the format in which sample data extracted shall be produced, and the Producing Party shall make all necessary disclosures for the Requesting Party to understand and evaluate whether the content and format of the data sample would satisfy a production request, such as the data fields available, the meaning of data fields, as well as codes and abbreviations used in the data source and whether a data dictionary exists, the time period over which data exists, any database schema, or other relevant information.  The Producing Party shall generate a report of such data sample for review by the Requesting Party or counsel after meeting and conferring with the Requesting Party as to the fields to be produced and the format of production.  Nothing in this provision is meant to expand the producing party's obligations under FRCP 34. The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/or inaccessibility.

## V.      IDENTIFICATION OF RESPONSIVE ESI

The Parties shall meet and confer in good faith regarding the methods to be used and locations identified to search Documents and ESI for potentially responsive documents or filter out Documents and ESI that are not subject to discovery, and such meet and confers will include disclosures necessary for the Requesting Party to understand and assess the sufficiency of the proposed search or filtering methodology, such as the nature of and processes of the search technology employed, the custodians and data sources and types to which it will and will not be applied, date ranges that may be used to filter documents, file types subject to or excluded from the methodology, search terms proposed to be used (if any), statistical sampling or validation

7

techniques the Producing Party has used or intends to use to evaluate the sufficiency of the methodology, and whether different search methodologies will be applied to different types or sources of data.

The Producing Party shall retain the sole right and responsibility to manage and control searches of its data files, including the right to propose revisions to search-term methods or advanced-technology procedures in order to make them more accurate and/or cost-effective and will disclose those proposed search methods and any revisions prior to implementation. Nothing in this section shall limit a Party's right to reasonably seek agreement from the other Parties or a Court ruling to modify previously agreed-upon search terms or other search parameters at any time prior to the completion of discovery.

A Producing Party need not provide discovery of ESI from sources that the Producing Party identifies as not reasonably accessible because of undue burden or cost. The Parties will identify and meet and confer over those sources of information that they propose should not be preserved, such as the following:

1. Backup data that is substantially duplicative of data that is more accessible elsewhere (utilized for disaster recovery purposes);

2. Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

3. Obsolete legacy data (*i.e.*, information stored in an obsolete format);

4. Residual, fragmented, damaged, or other data only accessible by forensics;

5. Information stored in unallocated space in file systems on magnetic media;

6. On-line access data such as temporary internet files, history, cache, cookies, and the like;

7. Server, system, or network logs; and

8. Information created or copied during the routine, good-faith performance of processes for the deployment, maintenance, retirement, and disposition of computer equipment by the Party.

If any Producing Party identifies additional sources of not reasonably accessible ESI beyond those listed above that are believed to contain responsive information, it will notify the Requesting Party of that fact and those sources. Nothing in this paragraph shall relieve a Party of its obligation to produce otherwise readily accessible, responsive ESI that the Party knows to exist.

a. Search Terms:

Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties shall meet and confer to provide reasonable assurances to the Requesting Party that the Producing Party's search terms and methodology used to apply them are reasonably calculated to identify responsive Documents and ESI. Prior to or during such meet and confer, the Producing Party shall make the disclosures identified above.

If, after disclosure of the Producing Party's proposed search method, search parameters, and search terms, and prior to the conduct of any searches, and after a reasonable meet and confer process, a Requesting Party believes in good faith that the Producing Party's proposals regarding search, retrieval and production would result in deficiencies in production, the Requesting Party may make prompt requests for different or additional search methods, parameters, or search terms, but such requests shall only be made after the Parties have met and conferred as to the alleged deficiencies identified by the Requesting Party. If the Parties cannot resolve their disagreements regarding the above search term methodologies, they shall promptly bring the dispute to the Court for resolution.

b.      Technology-Assisted-Review:

No Party shall use predictive coding/technology-assisted review for the purpose of culling the documents to be reviewed or produced without notifying the opposing Party prior to use and with ample time to meet and confer in good faith regarding a mutually agreeable protocol for the use of such technologies, if any.  If the Parties cannot resolve their disagreements regarding technology-assisted review methodologies, they shall promptly bring the dispute to the Court for resolution.  The fact that a Document or ESI is responsive to a search term or identified as responsive by any other technology used to identify potentially responsive Documents and ESI shall not prevent any Party from withholding such file from production on the grounds that the file is not responsive, that it is protected from disclosure by applicable privilege or work-product protection.

The Parties will not seek Court intervention on discovery matters without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

## VI.    PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to Documents that existed in paper format prior to production ("hard copy documents").  Documents that originated as paper but that were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Part VII of this Protocol.  The Parties agree to produce hard copy documents in the formats described below, to the extent reasonably practicable and not unduly burdensome.  These formats are deemed to be productions in reasonably usable form.  If a Producing Party intends to produce any hard copy documents in any manner other than as specified herein, the Producing Party shall notify the Requesting Party of its intent, including production format (*e.g.*, produced as paper, made available for inspection).  If the proposed production format is not

acceptable to the Requesting Party, the Parties shall meet and confer to determine a mutually acceptable production format for such Documents.

a. **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b. **Unitizing Documents**. If a document is more than one page, the unitization of the document will be maintained as it existed when collected by the Producing Party to the extent practicable. Parties may unitize their documents using either physical unitization (*i.e.*, based on physical binding or organizational elements present with the original paper documents, like staples, clips, and binder inserts) or logical unitization (*i.e.*, a manual review of the paper to determine what logically constitutes a document, like page numbers or headers).

c. **Parent-Child Relationships.** The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any portions of the Document or attachments that must be withheld or redacted on the basis of privilege or work-product protection. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. The child-document(s) should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

d. **OCR**. Documents shall also be produced with the associated OCR, and with an image cross-reference file and a load file. No Producing Party shall be required to ensure that the OCR is an exact duplicate of the contents of the TIFF image. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. To the extent that a document is redacted, the text files should not contain the text of the redacted portions. OCR should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. All text files shall be provided as a single document level text file for each item, not one text file per page. Text files should be provided in a "Text" folder.

e. **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party, to the extent it is aware of the issue, will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a Party produces in the Action.

f. **Data Load Files**. Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

1. Field Separator: ASCII character 20 ("¶"); and

2. Quote: ASCII character 254 ("þ").

Concordance-compatible image and data load files should be provided in a "Data" folder. The following information shall be produced in the load file accompanying production of hard copy documents: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) Custodian,

(f) AllCustodian, (g) Page Count, (h) Production Volume, (i) Confidentiality, (j) Privilege; and (k) Redacted (Y/N) or otherwise indicating that a redaction is present.

g.   **Metadata**.  Each of the Metadata and coding fields set forth in Appendix A under the heading Hard Copy shall be produced for that Document.

h.   **Color**.  Documents containing color need not be produced in color in the first instance, provided however, that the Producing Party shall retain a copy of produced hard copy documents in color.  However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format.  The Producing Party shall not unreasonably deny such requests.

## VII.   PRODUCTION FORMAT FOR UNSTRUCTURED ESI

The Parties agree to produce in the formats described below.  These formats are deemed to be productions in reasonably usable form.  If any Party contends that particular Documents or ESI warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

a.   **TIFFs**.  Documents and ESI should be produced as single-page, black and white, group IV 300 DPI TIFFs images.  The document's original orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape).  Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent viewable within a document in its native file format, shall also be imaged so that such content is viewable on the image file.  Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image.  TIFF image files should be provided in an "Images" folder.   Where Presentation files (.PPT, .PPTX, etc.) are

produced in a static, rather than native, format, they will be processed to TIFF format showing comments, hidden slides, speakers' notes, and similar data.

b. **Extracted Text Files**. The full text of native files should be extracted directly from the native file (not OCR), to the extent such extracted text is available, and should be delivered in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document. All text files shall be provided as a single document level text file for each item, not one text file per page. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

c. **Instant Messages**. If Instant Messages are to be produced, the Parties will meet and confer to discuss the form of production and the producing party should use best efforts to produce such Instant Messages in a readily usable format.

d. **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g*., ABC-000001), taking into consideration the estimated number of pages to be produced. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in this Action.

e. **Parent-Child Relationships**. The Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any portions of the Email or attachments that must be withheld or redacted on the basis of privilege or work-product protection. The relationship between attachments, enclosures, embedded files, and/or

exhibits to any parent document shall be preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

      f.    **Metadata**. The Parties agree that Metadata will be produced for all ESI, whether produced in Native Format or Static Image formats. Appendix A sets forth the minimum Metadata fields that must be produced to the extent that Metadata exists for a particular document. To the extent that Metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data except for those fields marked for Hard Copy Documents in Appendix A, provided, however, that where such Metadata is not produced on such grounds, the Producing Party shall disclose which fields it will not produce. If Metadata is redacted or withheld, the Producing Party will so inform the Requesting Party and record the redaction on any privilege log prepared by the Producing Party; redacted Metadata shall be preserved.

      g.    **Production of Documents in Native Format**.

      1.    The processed native for all spreadsheets (*i.e.*, .XLS, .XLSX, .CSV, or similar), presentation files maintained in Microsoft Powerpoint format (.PPT, .PPTX, etc.), and electronic information containing audio or video components should be produced and linked to the database by the Metadata field "NativeLink."

      2.    Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the

file itself in Native Format.  The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page.  The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

3.      To the extent that a native spreadsheet must be redacted, the Producing Party may redact either the native file or produce TIFF images with burned in redactions in lieu of a native file and TIFF placeholder image.  If redacting TIFF images and to the extent that any of the following can be automated, the Producing Party, or its ediscovery vendor, should make reasonable efforts to: (1) reveal hidden rows, columns or sheets prior to converting the document to TIFF; (2) clear any filters that may conceal information; (3) adjust column widths so that numbers do not appear as symbols (*e.g.*, "#######"); (4) ensure that column and row headings print; (5) ensure that the tab name appears in the header or footer of the document; (6) process comments so that they are produced at the end of the spreadsheet; and (7) process spreadsheets so that they print across then down. If good cause exists, the Requesting Party may ask the Producing Party to manually undertake the foregoing for certain documents identified by Bates number by the Requesting Party to the extent the document was originally produced with concealed information.  The Producing Party shall not unreasonably deny such a request.

4.      **Request for Native Format Production**.  Other than as specifically set forth above, a Producing Party need not produce documents in Native Format.  If good cause exists for the Requesting Party to request production of certain documents in Native Format, the Requesting Party may request production in Native Format by providing (1) a list of the Bates numbers of documents it requests to be produced in Native Format; and

(2) an explanation of the need for reviewing such documents in Native Format. The Producing Party shall not unreasonably deny such requests. The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each native file in such production, and all Extracted Text and applicable metadata fields.

h. **Cellphone and Personal Device Data**: The Parties will meet and confer regarding whether ESI maintained on any custodian's cellphone(s) and/or personal device(s) is within the scope of permissible discovery in this Action. If such discovery is agreed upon by the Parties or ordered by the Court, the Parties will meet and confer regarding (1) the identity of any document custodian that may possess unique, responsive ESI maintained on their cellphone(s) and/or personal device(s) that is within the responding Party's possession, custody, or control, and (2) the appropriate search parameters and form of any production of such information.

i. **Track Changes and Comments**. To the extent that a Document or ESI contains tracked changes or comments, the Document or ESI should be imaged showing tracked changes and comments using standard functionality available from the software used to facilitate the Producing Party's review and production of Documents and ESI in this Action.

j. **Password-Protected Files**. The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents and ESI are successfully processed for review and production. The Producing Party will identify relevant and responsive encrypted or password-protected Documents and ESI that it cannot process so that the parties can meet and confer to determine if there are any alternative means to have such information produced in a usable format.

k. **Embedded Documents**. Embedded files in responsive documents shall be extracted during processing and produced as separate documents, to the extent practicable given

the application used.  To the extent the Producing Party becomes aware in the ordinary course of discovery that extracted documents cannot be produced, the Producing Party will notify the Requesting Party of the types of files, and Custodian for which such extracted documents cannot be produced.  The Bates Number of the source file from which the embedded file is extracted shall be provided as metadata associated with the embedded file, as described in Appendix A.

l.      **Data Load Files**.  Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters:

1.      Field Separator

2.      ¶ (ASCII 020) Text Qualifier þ (ASCII 254)

3.      Substitute Carriage Return or New Line in data ® (ASCII 174)

4.      Multi-value separator (followed by a space) ; (ASCII 059)

All rows will contain the same number of delimiters and fields.  The multi-value field delimiter must be consistent across all fields.  For example, if the CC field contains semi-colons between Email addresses, the Tag field should also contain semi-colons.  Concordance-compatible image and data load files should be provided in a "Data" folder. Parties have the option to exchange sample load files.  If this exchange occurs, the Requesting Party will have fourteen (14) days to respond with Load File change requests.  Nothing in this Order will limit the Parties from discussing Load File changes throughout the course of the Action.

m.      **Email Collection and Processing**.

1.      Email Threading:  The Parties may use Email thread suppression to avoid review and production of identical or duplicative information contained within an existing Email thread in another document being reviewed and produced, provided, however, that an Email that includes an attachment or content in the BCC or other blind copy field shall

not be treated as a lesser included version of an Email that does not include the attachment or content, even if all remaining content in the Email is identical. Under no circumstances will Email thread suppression eliminate (a) the ability of a requesting Party to identify every custodian who had a copy of a produced document or Email, to the extent this information is available on an automated basis through the use of industry-standard Email threading methods consistent with this paragraph; or (b) remove from a production any unique branches and/or attachments contained within an Email thread.

     2.    Email Domains: Producing parties may utilize an ESI search process to identify categories of documents, such as Emails from domains typically associated with junk Email (*e.g.*, fantasy football-related Emails, retailer advertising, and newsletters or alerts from non-industry sources).

     n.    **Deduplication**. A Producing Party shall globally deduplicate by exact duplicate families provided that (i) only exact duplicates are subject to deduplication; (ii) the Producing Party identifies all custodians in the main All Custodian metadata field, to the extent this information is available on an automated basis through the use of industry-standard deduplication methods consistent with this paragraph; and (iii) an Email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an Email that does not include content in the BCC or other blind copy field, even if all remaining content in the Email is identical. Duplicate electronic documents shall be identified based on MD5 or SHA-1 hash values at the document family level. All electronic documents bearing an identical value are a duplicate group. De-duplication must be performed at the document family level. Stand-alone files will de-duplicate against other stand-alone files, but not against attachments contained in document families. Each party may also de-duplicate Emails in such a way as to eliminate earlier or

incomplete chains of Emails and therefore produce only the most complete iteration of an Email chain. In performing de-duplication described above, a Producing Party may not eliminate any unique, non-duplicative responsive information from chains of Emails that are not contained within the most complete iteration of an Email chain. Any other methodology for identification of duplicates, including Email field selection for hash value creation, must be discussed with the Requesting Party and approved in writing before implementation. If the Requesting Party objects to the methodology, it shall timely raise those concerns with the Producing Party. If a party opts not to deduplicate, it shall disclose such fact to the Requesting party prior to production of such non-deduplicated data.

o. **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's allocated hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as to identify the department, group, entity, or facility. A Producing Party shall use a uniform description of a particular custodian across productions.

p. **Color**. Except for PowerPoint and other Documents produced natively, Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

q.      **Foreign Language**.  Foreign language text files and Metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

r.      **Date Format**:

1.      Documents and ESI shall be processed using a single standard time zone (*e.g.*, GMT) selected by the Producing Party.

2.      If a time is not available, such as the estimate date for a coded document, then 12:00 am, or 00:00 should be assigned, *i.e.*, 12/21/1999 00:00

3.      Date delimiters, such as slashes and colons, must be consistent across all fields.  In the format of MM/DD/YYYY, there are no spaces and only forward slashes.

4.      Date formats must be consistent within any one field.

5.      Date formats must be consistent across all fields, *i.e.*, a record with a sent date should have the same format in the last modified date field.

s.      **Production Media**.  Producing documents may be done via secure FTP or secure file share, via CD, DVD, flash drive, or hard drive.  To the extent possible, physical media should be protected before it is produced.

1.      **Naming Convention for Production Media**.  Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc.  The compressed file should be named so as to indicate Producing Party, the date of the production, and the sequence of the production (*e.g.*, "Fourth Production 20180508-001").  If the production is made using physical media, the media should be labeled to include the aforementioned information, as well as the Bates range of the materials contained on the media.

t.      **Replacement Productions**.  Any replacement production will be transmitted with a cover letter or Email to identify the production as a replacement and shall cross-reference the

BegBates and EndBates of the documents being replaced.  If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

u.     **Encrypted Data**.  To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data under separate cover.

v.     **Zero-byte Files**.  The Parties may, but are not required to, filter out stand-alone files identified as zero-bytes in size that do not contain responsive file links or file names.  If the Requesting Party in good faith believes that a zero-byte file was withheld from production and contains information responsive to a request for production, the Requesting Party may request that the Producing Party produce the zero-byte file.  The Requesting Party may provide a Bates number to the Producing Party of any document that suggests a zero-byte file was withheld from production and contains information responsive to a request for production.

## VIII.   ASSERTIONS OF PRIVILEGE

a.     **Privilege Logs**.  Privilege Logs shall be provided containing the following information, which may, in part, be supplied by metadata associated with the document that reasonably supplies the information identified below:

1.     A sequential number associated with each Privilege Log record;

2.     The date of the document redacted or withheld;

3.     The Bates numbers of documents redacted or withheld;

4.     The identity of all persons who sent, authored, signed or otherwise prepared the document or withheld portion of the document, and identification of which of them are attorneys;

5.     The identity of all persons designated as addressees or copyees, and identification of which of them are attorneys;

6.      The title or subject of a document unless providing this information would reveal information that is itself privileged or protected;

7.      A description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity; and

8.      The type or nature of the privilege asserted (*e.g.*, attorney-client privilege; work-product doctrine).

| Privilege Log #/ Bates # | Date | Author | From or Sender | Recipient | CC | BCC | Title | Subject | Privilege Log Description | Privilege |
|---|---|---|---|---|---|---|---|---|---|---|
| i, iii | ii | iv | iv | v | v | v | vi | vi | vii | viii |

b.      **Logging of Document Families.**  Where multiple members of a document "family" (*e.g.*, an Email and its attachment, multiple Email attachments, etc.) are withheld or redacted on the grounds of privilege, immunity, or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship, provided however, that information logged must be sufficient to assess the privilege for each family member.  For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

c.      The following documents presumptively need not be included on a Privilege Log:

1.      Communications exclusively between a Party and its outside counsel regarding this Action dated after the commencement of this Action;

2.      Work product created by outside counsel, or by an agent of outside counsel other than a Party, regarding this Action and created after commencement of this Action;

23

3. Communications exclusively between a Party and its outside counsel, or work product created by outside counsel, or by an agent of outside counsel other than a Party, concerning the action *Fair Isaac Corporation v. Trans Union LLC*, Case No. 1:17-cv-08318 (N.D. Ill.), provided that the Party claiming privilege or immunity over the communication or work product was a party to that action.

4. Documents not responsive to the Requesting Party's substantive document requests (as modified by the Producing Party's responses and objections to such requests).

## IX. COST ALLOCATION

Pursuant to FRCP 26, the Parties generally presume that the Producing Party bears all costs of preservation, retrieval, and production of its reasonably accessible ESI. However, there may be cost-sharing or cost-shifting upon agreement of the Producing and Requesting Parties or upon proper motion and Order of the Court, such as for ESI that is not reasonably accessible.

## X. THIRD PARTY DOCUMENTS

A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the Action have requested that third parties produce Documents in accordance with the specifications set forth herein. The Issuing Party shall timely notify other Parties when it receives non-party productions, and shall, upon request by other Parties ("Requesting Parties" for purposes of this paragraph), provide copies of such productions to Requesting Parties in the format in which they were received from the third party. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

## XI. AUTHENTICATION

The Parties will meet and confer regarding an authentication stipulation concerning Documents produced in this Action.

IT IS SO ORDERED.

Dated: 11/29/2023

Edmond E. Chang
United States District Court Judge

Dated: November 6, 2023

Respectfully Submitted,

*/s/ Lauren M. Weinstein*
Lauren M. Weinstein
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.,
  Suite 500
Washington, DC 20037
Telephone: 202-556-2000
lweinstein@mololamken.com

Steven F. Molo
Lauren F. Dayton
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
smolo@mololamken.com
ldayton@mololamken.com

*Liaison Counsel for Direct Purchaser*
*Plaintiffs and the Proposed Direct*
*Purchaser Class*

Gary F. Lynch
CARLSON LYNCH LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
glynch@carlsonlynch.com

Katrina Carroll
CARLSON LYNCH LLP
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
kcarroll@carlsonlynch.com

*/s/ Carmen Medici*
Carmen Medici
  (admitted *pro hac vice*)
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone:  619-798-5319
cmedici@scott-scott.com

Joseph P. Guglielmo
  (N.D. Ill. 2759819)
Michelle E. Conston
  (admitted *pro hac vice*)
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
mconston@scott-scott.com

Patrick McGahan
  (admitted *pro hac vice*)
SCOTT+SCOTT
ATTORNEYS AT LAW LLP
156 S. Main St.
Colchester, CT 06415
Telephone:  860-531-2606
pmcgahan@scott-scott.com

*Interim Lead Class Counsel for Direct*
*Purchaser Plaintiffs and the Proposed*
*Direct Purchaser Class*

Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
KOREIN TILLERY PC
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: (619) 6225-5620
Facsimile: (314) 241-3525
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

George A. Zelcs
Randall P. Ewing, Jr.
Ryan Z. Cortazar
KOREIN TILLERY, LLC
205 North Michigan Avenue,
Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
Facsimile: 312-641-9751
gzelcs@koreintillery.com
rewing@koreintillery.com
rcortazar@koreintillery.com

Jennifer W. Sprengel
CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
jsprengel@caffertyclobes.com

Barbara J. Hart (admitted *pro hac vice*)
GRANT & EISENHOFER
485 Lexington Ave., 29th Floor New
York, NY 10017
Telephone: 646-722-8526
bhart@gelaw.com

Paul E. Slater
Joseph M. Vanek
Michael G. Dickler
Matthew T. Slater
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200
pes@sperling-law.com
jvanek@sperling-law.com
mdickler@sperling-law.com
mslater@sperling-law.com

Linda P. Nussbaum
Susan Schwaiger
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th
Floor
New York, NY 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com

Michael L. Roberts
Karen Sharp Halbert
ROBERTS LAW FIRM, P.A.
20 Rahling Circle Little Rock, AR
72223
Telephone: 501-821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

Gregory S. Asciolla
  (admitted *pro hac vice*)
Karin E. Garvey
  (admitted *pro hac vice*)
Robin A. van der Meulen
  (admitted *pro hac vice*)
Matthew J. Perez
  (admitted *pro hac vice*)
Jonathan S. Crevier
  (admitted *pro hac vice*)
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, New York 10017
(646) 933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com
rvandermeulen@dicellolevitt.com
mperez@dicellolevitt.com
jcrevier@dicellolevitt.com

Marvin A. Miller
Lori A. Fanning
MILLER LAW LLC
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: 312-332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com

Guillaume Buell
  (admitted *pro hac vice*)
THORNTON LAW FIRM LLP
1 Lincoln Street, 13th Floor
Boston, MA 02111
Telephone: 617-720-1333
gbuell@tenlaw.com

Daniel E. Gustafson
  (admitted *pro hac vice*)
Daniel C. Hedlund
  (admitted *pro hac vice*)
Michelle J. Looby
  (admitted *pro hac vice*)
Joshua J. Rissman
Ling S. Wang
GUSTAFSON GLUEK PLLC
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jrissman@gustafsongluek.com
lwang@gustafsongluek.com

Dennis Stewart (admitted *pro hac vice*)
GUSTAFSON GLUEK PLLC
600 B Street, 17th Floor
San Diego, CA 92101
Telephone: 619-595-3200
dstewart@gustafsongluek.com

Kenneth A. Wexler
Melinda J. Morales
Michelle Perkovic
WEXLER WALLACE LLP
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
kaw@wexlerwallace.com
mjm@wexlerwallace.com
mp@wexlerwallace.com

Charles F. Barrett
  (admitted *pro hac vice*)
 NEAL & HARWELL, PLC
 1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
Telephone: 615-244-1713
cbarrett@nealharwell.com

Don Barrett (*pro hac vice* forthcoming)
BARRETT LAW GROUP, P.A.
404 Court Square
P.O. Box 927
Lexington, MS 39095
Telephone: 662-834-2488
dbarrett@barrettlawgroup.com
donbarrettpa@gmail.com

Richard R. Barrett
 (*pro hac vice* forthcoming)
BARRETT LAW GROUP, P.A.
2086 Old Taylor Road, Suite 1011
Oxford, MS 38655
Telephone: 662-380-5018
rrb@rrblawfirm.net

Michael P. Lehmann (SBN 77152)
Christopher Lebsock (SBN 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200 San
Francisco, CA 94111
Telephone: 415-633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com

Hilary K. Scherrer
Paul Gallagher
HAUSFELD LLP
1700 K Street, N.W., Suite 650
Washington, DC 20006
Telephone: 202-540-7200
hscherrer@hausfeld.com
pgallagher@hausfeld.com

Scott A. Martin
Irving Scher
Jeanette Bayoumi
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
smartin@hausfeld.com
ischer@hausfeld.com
jbayoumi@hausfeld.com

*Counsel for Direct Purchaser Plaintiffs*
*and the Proposed Direct Purchaser*
*Class*

REINHARDT WENDORF &
BLANCHFIELD
Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard
 (*pro hac vice* forthcoming)
332 Minnesota Street, Suite W-1050
St. Paul, MN 55101
Telephone: 651-287-2100
Facsimile: 651-287-2103
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

SPECTOR ROSEMAN &
KODROFF, P.C.
Jeffrey J. Corrigan (*pro hac vice*)
William G. Caldes(*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
Icee N. Etheridge
 (*pro hac vice* forthcoming)
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: 215-496-0300
Facsimile: 215-496-6611
JCorriganf@srkattorneys.com
Bcaldes@srkattorneys.com
Jspector@srkattorneys.com
Ietheridge@srkattorneys.com

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs and the Proposed
Indirect Purchaser Class*

GUIN, STOKES & EVANS, LLC
Charles R. Watkins (3122790)
321 South Plymouth Court
Suite 1250
Chicago, IL 60604
Telephone: 312-878-8391
Facsimile: 205-226-2357
charlesw@gseattorneys.com

*Liaison Counsel for Indirect Purchaser
Plaintiffs and the Proposed Indirect
Purchaser Class*

PRETI FLAHERTY, BELIVEAU &
PACHIOS LLP
Michael S. Smith
 (*pro hac vice* forthcoming)
Gregory P. Hansel
 (*pro hac vice* forthcoming)
Randall B. Weill
 (*pro hac vice* forthcoming)
Elizabeth F. Quinby
 (*pro hac vice* forthcoming)
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: 207-791-3000
msmith@preti.com
ghansel@preti.com
rweill@preti.com
equinby@preti.com

GLANCY PRONGAY & MURRAY
LLP
Brian P. Murray
 (*pro hac vice* forthcoming)
Lee Albert (*pro hac vice* forthcoming)
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: 212-682-5340
Facsimile: 212-884-0988
bmurray@glancylaw.com
lalbert@glancylaw.com

FREED KANNER LONDON &
MILLEN LLC
Douglas A. Millen
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: 224-632-4500
dmillen@fklmlaw.com

FREED KANNER LONDON &
MILLEN LLC
Jonathan M. Jagher
 (*pro hac vice* forthcoming)
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
jjagher@fklmlaw.com

BONI, ZACK & SNYDER LLC
Michael J. Boni (*pro hac vice* forthcoming)
Joshua D. Snyder
 (*pro hac vice* forthcoming)
John E. Sindoni (*pro hac vice* forthcoming)
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
Facsimile: 610-822-0206
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com

MCLAFFERTY LAW FIRM, P.C.
David McLafferty
 (*pro hac vice* forthcoming)
Attorneys at Law
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-940-4000, ext. 12
www.McLaffertyLaw.com

SALTZ MONGELUZZI &
BENDESKY, P.C.
Simon B. Paris, Esq.
 (*pro hac vice* forthcoming)
Patrick Howard, Esq.
 (*pro hac vice* forthcoming)
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-575-3985
Facsimile: 215-496-0999
sparis@smbb.com
phoward@smbb.com

*Counsel for Indirect Purchaser
Plaintiffs and the Proposed Indirect
Purchaser Class*

/s/ *Matthew D. Provance*
Britt M. Miller
Matthew D. Provance
J. Gregory Deis
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
(312) 701-7711—Facsimile
bmiller@mayerbrown.com
mprovance@mayerbrown.com
gdeis@mayerbrown.com

*Counsel for Defendant Fair Isaac
Corporation*

31

## APPENDIX A: REQUIRED METADATA FIELDS

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments to an Email | x | x | |
| Custodian | Primary Individual Custodian Name or Shared Resource Name the document was processed for production -- format: Last, First or ABC Dept. consistent naming and formatting should be used across all productions. | x | x | x |
| AllCustodian | Production custodians or non-human production data sources associated with the produced document; Format: Last, First or ABC Dept. | x | x | x |
| File Name | File name of document | | x | |
| File Extension | File extension of document | x | x | |
| LogicalPath | The directory structure of the | x | x | |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
|  | original file(s); any container name is included in the path |  |  |  |
| Page Count | For documents produced in TIFF form, number of pages in the document; for documents produced in native, page count will be 1 (for placeholder) | x | x | x |
| Email Subject | Subject of Email | x | x |  |
| Author | Any value populated in the Author field of the document properties |  | x |  |
| From | Email author | x | x |  |
| To | Email recipients | x | x |  |
| CC | Email copyees | x | x |  |
| BCC | Email blind copyees | x | x |  |
| Importance | Email importance flag | x | x |  |
| Date Sent | Date sent (MM/DD/YYYY format) | x | x |  |
| Time Sent | Time sent (HH:MM:SS format) | x | x |  |
| Date Received | Date received (MM/DD/YYYY format) | x | x |  |
| Time Received | Time received (HH:MM:SS format) | x | x |  |
| Date Created | Date created (MM/DD/YYYY HH:MM:SS format) |  | x |  |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| DateLastModified | Last modification date (MM/DD/YYYY HH:MM:SS format) | x | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of Email or electronic file | x | x | |
| NativeFile | Native File Link | x | x | |
| Email Thread Family ID (if Email threading is used by Producing Party) | Unique identifier from Email threading algorithm to denote Emails from a single thread and all attachments | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| Withheld Placeholder | To the extent a document family member is fully withheld on the basis of privilege and other documents in that family are produced, this field must be populated with a "Y" | x | x | |
| Privilege | Populated if privilege is being asserted | x | x | x |
| Attachname | File name of attachment | x | | |

| Field | Description | Email | Non- Email ESI | Hard Copy |
|---|---|---|---|---|
| Title | Any value populated in the Title field of the document properties | | x | |
| Subject | Any value populated in the Subject field of the document properties | | x | |
| LastEditedBy | Any value populated in the Last Edited by or Last Modified By field of the document properties | | x | |