# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | No. 1:20-CV-2114 |
| This document relates to: | Judge Edmond E. Chang |
| ALL ACTIONS | Magistrate Judge M. David Weisman |

## PLAINTIFFS' JOINT MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO COMPEL
## DISCOVERY FROM FAIR ISAAC CORPORATION

## PRELIMINARY STATEMENT[1]

Fair Isaac refuses to produce information that is squarely within the broad scope of discovery. First, it refuses to produce information regarding settlement agreements that resolved: (i) the *Equifax* Litigation (*Fair Isaac Corp. v. Equifax Inc.*, No. 06-cv-04112 (D. Minn.)), which is alleged to be part of Fair Isaac's decades-long anticompetitive scheme to put VantageScore, its only meaningful competitor, out of business, DPAC ¶¶ 9, 87-92; IPAC ¶¶ 13, 102-114; and (ii) the *TransUnion* Litigation (*Fair Isaac Corp. v. Trans Union LLC*, No. 17-cv-08318 (N.D. Ill.)), which was resolved via an agreement through which Plaintiffs allege "Fair Isaac essentially bought TransUnion off," DPAC ¶ 99; IPAC ¶ 113.[2] Second, Fair Isaac refuses to produce sealed filings from the *TransUnion* Litigation, which also involved monopolization claims against Fair Isaac. Finally, it refuses to identify personnel responsible for Fair Isaac's lobbying efforts, including its disparagement campaign against VantageScore, and to produce any documents related to that subject. DPAC ¶¶ 146-155; IPAC ¶¶ 163-170.

The requested material is no doubt relevant: Plaintiffs' Complaints contain direct allegations implicating each category of discovery. And Fair Isaac has not claimed any undue burden associated with producing the requested material. Nor can it, since the material comprises

---

[1] Plaintiffs state pursuant to Local Rule 37.2 and this Court's case procedures that they met and conferred with counsel for Fair Isaac via face-to-face videocalls in good faith in an attempt to resolve this dispute on January 5, 2024 and on March 11, 2024. Plaintiffs and Fair Isaac also exchanged correspondence in an effort to resolve the dispute on December 20, 2023; January 4, 2024; January 19, 2024; January 31, 2024; February 15, 2024; February 23, 2024; March 14, 2024; March 27, 2024; and April 11, 2024 (email). Plaintiffs also sent email correspondence to counsel for Fair Isaac on April 19, 2024 to confirm that Fair Isaac objects to and opposes this motion. Counsel for Fair Isaac confirmed Fair Isaac objects to this motion on April 20, 2024. The parties intend to submit a stipulation with a proposed briefing schedule.

[2] "DPAC" refers to Direct Purchaser Plaintiffs' First Amended Consolidated Complaint, Dkt.184; "IPAC" refers to Indirect Purchaser Plaintiffs' Second Amended Consolidated Complaint, Dkt. 185.

(i) filings in Fair Isaac's possession, (ii) documents Fair Isaac produced to the U.S. Department of Justice, (iii) the identities of a limited set of Fair Isaac's own key personnel, and (iv) documents in Fair Isaac's possession concerning its lobbying efforts.

Plaintiffs thus respectfully request that the Court compel Fair Isaac to produce the requested information.

## **ARGUMENT**

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The scope of discovery under Rule 26 is "very broad." *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004); *see also HTG Cap. Partners, LLC v. Doe(s)*, No. 15-CV-02129, 2015 WL 5611333, at *3 (N.D. Ill. Sept. 22, 2015) (Chang, J.) (similar). Discovery is permitted into "'***any*** matter that bears on, or that reasonably could lead to other matter that could bear on, ***any*** issue that is or may be in the case.'" *Illinois ex rel. Raoul v. Monsanto Co.*, 345 F.R.D. 459, 459 (N.D. Ill. Oct. 24, 2023) (emphasis added) (citation omitted). "Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *HTG*, 2015 WL 5611333, at *3. Fair Isaac cannot meet its burden. Its relevance objections lack merit, and it has not articulated any reason why producing the requested material would be unduly burdensome. This Court should grant the Motion to Compel.

## I. FAIR ISAAC SHOULD BE COMPELLED TO PRODUCE THE *EQUIFAX* AND *TRANSUNION* SETTLEMENT AGREEMENTS AND RELATED INFORMATION

### A. The Settlements and Related Documents Are Critical to Plaintiffs' Case

Plaintiffs propounded the following discovery requests regarding settlement agreements:

- **Interrogatory No. 2.** Identify all agreements, including settlement agreements; contracts; and amendments to agreements or contracts with Experian, Equifax, and TransUnion.

- **Interrogatory No. 3.** Identify all persons who conceived, drafted, offered, negotiated, approved, or executed any agreement, contract, or amendment to agreements or contracts described in Interrogatory No. 2.

- **Interrogatory No. 6(b).** For each topic listed below, identify the five current or former Fair Isaac employees who are most knowledgeable about such topic during the relevant period: . . . b) Lobbying efforts against VantageScore, including but not limited to, in connection with allowing VantageScore to be used by Fannie Mae or Freddie Mac.

- **RFP No. 3.** All Agreements or Proposed Agreements to settle or compromise the TransUnion Litigation.

- **RFP No. 4.** All Agreements or Proposed Agreements to settle or compromise the VantageScore Solutions Litigation [*i.e.*, the *Equifax* Litigation].

- **RFP No. 6.** All Documents relating to the decision by You to initiate, maintain, and/or dismiss the TransUnion Litigation or VantageScore Solutions Litigation [*i.e.*, the *Equifax* Litigation], including the bases, merits, or purposes of such litigation, excluding Documents protected by attorney-client privilege or attorney work product doctrine.

- **RFP No. 7.** All Documents relating to the business or economic effect of any anticipated, proposed, or actual outcome of the TransUnion Litigation or VantageScore Solutions Litigation [*i.e.*, the *Equifax* Litigation].

- **RFP No. 8.** Documents relating to any potential or actual resolution, dismissal, and/or settlement of the TransUnion Litigation or VantageScore Solutions Litigation [*i.e.*, the *Equifax* Litigation], as well as any decision to settle or not settle such actions.[3]

---

[3] The discovery requests are excerpted here and reproduced in full in Exhibits 1 and 2. Citations to Exhibits ("Ex.") refer to the exhibits to the Declaration of Chad E. Bell filed with this motion.

These discovery requests are plainly relevant and proportional to the needs of the case. Plaintiffs have alleged that Fair Isaac's lawsuit against the Credit Bureaus and VantageScore (the *Equifax* Litigation) was a critical part of Fair Isaac's decades-long campaign of anticompetitive conduct designed to drive its only real competitor, VantageScore, out of business. DPAC ¶¶ 8-10, 86-100; IPAC ¶¶ 12-15, 101-114. Similarly, Plaintiffs have alleged that, through its settlement of the *TransUnion* Litigation, "Fair Isaac essentially bought TransUnion off" and "cut Plaintiffs off from obtaining further information about the anticompetitive agreements between Fair Isaac and the Credit Bureaus," and that, shortly after settling, TransUnion and Fair Isaac entered into a "long-term (presumably lucrative)" distribution contract. DPAC ¶ 99; IPAC ¶ 113. Fair Isaac thus cannot meet its burden to show that the requested material – which the Complaints put at issue directly – is irrelevant or disproportional to the needs of the case. *See, e.g.*, *Doe v. Loyola Univ. Chi.*, No. 18-CV-7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020) (granting motion to compel discovery "directly relevant to the allegations contained in [the plaintiff's] complaint"); *Merix Pharm. Corp. v. Glaxosmithkline Consumer Healthcare, L.P.*, No. 05-CV-1403, 2006 WL 2931260, at *3 (N.D. Ill. Oct. 11, 2006) (similar).

That Plaintiffs' Complaints directly implicate the settlements and non-privileged documents reflecting their negotiation should end this inquiry. But, at a minimum, Plaintiffs' discovery requests are relevant for the additional, independent reason that they are reasonably calculated to uncover evidence showing that Fair Isaac attempted to induce the Credit Bureaus to forgo VantageScore in favor of Fair Isaac and why the Bureaus went along (if they did). Either way, the material is discoverable. *Eggleston v. Chi. Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 903 (7th Cir. 1981).

**The *Equifax* Litigation.** This Court has held that "Plaintiffs have plausibly alleged that FICO's *Equifax* Litigation was itself an anticompetitive act." Dkt. 173 at 13. In 2008, Experian settled that anticompetitive litigation with Fair Isaac "and entered into a lucrative partnership with Fair Isaac following the settlement." DPAC ¶9; IPAC ¶13. Similarly, in 2010, after a jury ruled against Fair Isaac, TransUnion settled with Fair Isaac. *See* DPAC ¶¶9, 90, 91; IPAC ¶13, 105, 106; *Fair Isaac Corp. v. Equifax, Inc.*, No. 06-CV-04112, Dkt. 1073 (D. Minn. May 17, 2010). Fair Isaac produced both settlement agreements to the Department of Justice in connection with its antitrust investigation into Fair Isaac. Dkt. 258-1 at 13 n.2. But Fair Isaac refuses to produce them to Plaintiffs.

Plaintiffs are entitled to documents that reflect ***why*** Experian settled instead of continuing to fight alongside Equifax and TransUnion and the terms to which Experian and Fair Isaac agreed in exchange for Experian forfeiting its litigation rights. Plaintiffs are likewise entitled to documents that reflect why TransUnion settled, as opposed to enforcing its judgment (as Equifax presumably did), and what, if any, concessions TransUnion received in that settlement agreement, or in exchange for settling if memorialized elsewhere. Plaintiffs also have a right to documents that reflect why **Fair Isaac** settled as opposed to fighting off Experian and, later, TransUnion – documents that may well shed light on the anticompetitive nature of the litigation and Fair Isaac's claims' lack of merit. That evidence may also rebut Fair Isaac's denial of the allegations that the *Equifax* litigation inhibited the growth of VantageScore. *See* Dkt. 182 ¶95 (Answer to DPAC); Dkt. 183 ¶110 (Answer to IPAC). And it may rebut Fair Isaac's and the Credit Bureaus' arguments that the Credit Bureaus would not have agreed with Fair Isaac to handicap their joint venture, VantageScore. *See, e.g.*, Dkt. 220 at 3-4, 8-9; Dkt. 222 at 16-17. Discovery of those settlements and communications surrounding them, as well as the identities of the Fair Isaac employees most

knowledgeable on the subject, is critical to the effective prosecution of Plaintiffs' claims that the *Equifax* litigation impaired VantageScore and that Fair Isaac attempted to, and perhaps did, conscript the Credit Bureaus into agreeing to impair VantageScore.

**The *TransUnion* Litigation.** TransUnion's antitrust counterclaims against Fair Isaac challenged the same contractual provisions at issue here. TransUnion, like Plaintiffs, alleged that the "No Equivalent Products" provision effectively prohibits TransUnion from distributing VantageScore; that the "Dynamic Royalty Provision" effectively forecloses the Credit Bureaus from, and punishes them for, selling VantageScore for use in the B2C market if they also sell FICO scores for use in the B2B market; and that the "Level Playing Field" language disincentivizes the Credit Bureaus from negotiating with Fair Isaac for lower royalties. *Compare* TransUnion Counterclaims ¶¶ 46, 55, 60, *Fair Isaac Corp. v. Trans Union LLC*, No. 17-cv-8318, Dkt. 38 (N.D. Ill. Feb. 12, 2018), *with* DPAC ¶¶ 108-110, IPAC ¶¶ 120-123.

Yet TransUnion ultimately dropped its challenges to those provisions when it settled with Fair Isaac on undisclosed terms before even briefing summary judgment. DPAC ¶ 99; IPAC ¶ 113. As Plaintiffs allege: "Fair Isaac essentially bought TransUnion off." DPAC ¶ 99; IPAC ¶ 113. Moreover, "[o]ne effect of this settlement was to cut Plaintiffs off from obtaining further information about the anticompetitive agreements between Fair Isaac and the Credit Bureaus." DPAC ¶ 99; IPAC ¶ 113. And, after entering into the settlement, "TransUnion announced that it had entered into a long-term (presumably lucrative) contract to distribute FICO Scores to lenders and consumers in Canada." DPAC ¶ 99; IPAC ¶ 113. In light of those allegations, Plaintiffs' requests for the settlement agreement between TransUnion and Fair Isaac, the surrounding non-privileged communications, and the identities of the Fair Isaac employees most knowledgeable about the agreement, are reasonably calculated to uncover evidence of agreement between Fair

Isaac and TransUnion to maintain contractual provisions that exclude VantageScore. Such material is also relevant to Fair Isaac's denial of the allegations that it bought off TransUnion through the settlement. *See* Dkt. 182 ¶99 (Answer to DPAC); Dkt. 183 ¶ 114 (Answer to IPAC).[4]

### B. Fair Isaac Fails To Show that Plaintiffs' Requests Are Improper

Fair Isaac claims the information Plaintiffs seek is not discoverable because the relevant requests concern settlement agreements. But that does not alter the analysis. Precedent amply supports ordering Fair Isaac to produce the requested information.

Settlements and documents exchanged by parties relating to settlements, like all other nonprivileged material, are discoverable – especially where, as here, the settlements themselves are alleged to have had anticompetitive effects. *See FTC v. Actavis, Inc.*, 570 U.S. 136, 141 (2013) (settlements themselves may "unreasonably diminish competition in violation of the antitrust laws"). Courts in this Circuit, including this Court, routinely order the production of settlements and related documents when a settlement itself is at issue in a case. *See, e.g.*, *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 & n.20 (7th Cir. 1979); *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) (affirming this Court); *see also Noble Roman's Inc. v. B & MP, LLC*, No. 15-CV-9446, 2017 WL 1163866, at *8-9 (N.D. Ill. Mar. 29, 2017); *Pactiv Corp. v. Multisorb Techs., Inc.*, No. 10-CV-461, 2012 WL 1831517, at *5 (N.D. Ill. May 18, 2012); *Pfizer Inc. v. Apotex Inc.*, 731 F. Supp. 2d 754, 764 (N.D. Ill. 2010); *Channelmark Corp. v. Destination Prods. Int'l, Inc.*, No. 99-CV-214, 2000 WL 968818, at *4-5 (N.D. Ill. July 7, 2000);

---

[4] Plaintiffs agree that any documents properly covered by attorney-client privilege or the work-product doctrine are shielded from discovery and may be logged rather than produced, consistent with the discovery protocol. Dkt. 207 at 22-24. But privilege log entries have value in discovery. For example, they may allow Plaintiffs to identify potential witnesses with non-privileged knowledge of the settlement agreements and the motivations behind them, or to establish dates during which Fair Isaac and/or the Bureaus had obligations to preserve discoverable materials.

*Arcelormittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 15-CV-195, 2016 WL 614144, at \*6-7 (N.D. Ind. Feb. 16, 2016); *Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, 270 F.R.D. 437, 438-39 (E.D. Wis. 2010). This Court should do the same here.

Fair Isaac's objection – that settlement agreements and related communications are categorically "outside the scope of discovery absent special circumstances" – lacks merit (and does not even apply to the request for the identities of knowledgeable Fair Isaac personnel in Interrogatory 6(b)). Ex. 7, FICO Jan. 4, 2024 Correspondence at 2-3. The Seventh Circuit has previously rejected such an absolute position, holding that even "settlement negotiations" are not "protected from examination by some form of privilege." *Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d at 1124 & n.20; *see id.* at 1124 ("refusal to permit discovery or examination of [settlement] negotiations constituted an abuse of discretion"). Other courts agree. *See, e.g.*, *MSTG Inc.*, 675 F.3d at 1348 (affirming decision "order[ing] production of [settlement] negotiation documents"); *Arcelormittal*, 2016 WL 614144, at \*6-7 (ordering production of settlement negotiation documents). Executed settlement agreements are themselves discoverable too. *See, e.g.*, *Pfizer Inc.*, 731 F. Supp. 2d at 759 (relevant "settlement documents . . . are precisely the kind of documents that discovery permits [a party] to demand and receive"). And even if the settlement agreements are not ***admissible*** for a specific purpose in the litigation, they are still ***discoverable***. *See, e.g.*, *Arcelormittal*, 2016 WL 614144, at \*6 (granting motion to compel documents concerning "settlement negotiations" because even if the documents "themselves would not be admissible at trial," "relevant evidence need not be admissible to be discoverable" and "information within the settlement negotiations [would] likely allow [the plaintiff] to conduct additional relevant discovery on those topics").

Fair Isaac contends that "the most instructive authority" supporting its refusal to produce the requested information is *In re Dealer Management Systems Antitrust Litigation*, No. 18-CV-864, 2019 WL 3884036 (N.D. Ill. Aug. 16, 2019). *See* Ex. 11, FICO's Feb. 23, 2024 Correspondence at 2. That is telling. Fair Isaac's leading decision expressly acknowledges that there is "***no settlement privilege***." *Dealer Mgmt. Sys.*, 2019 WL 3884036, at *2 (emphasis added). It also recognizes that "[w]hether a confidential settlement agreement should be disclosed to other parties in a multi-party case is governed by the familiar Rule 26(b)(1) discovery standards," just like all other discovery. *Id.* at *1. There, the plaintiffs had failed to "articulate[ ] a specific basis as to why the settlement terms [we]re relevant to a claim or defense in the continuing litigation." *Id.* at *2. That is not true here – to the contrary, the Plaintiffs have alleged that the settlements are ***part*** of Fair Isaac's course of anticompetitive conduct. *See* pp. 4-7, *supra*.

Fair Isaac also argues that courts "'should honor confidentialities that are bargained-for elements of settlement agreements.'" Ex. 7, FICO's Jan. 4, 2024 Correspondence at 2-3. But Fair Isaac does not explain how Plaintiffs could be bound by a bargain they did not strike. Nor does Fair Isaac explain why the applicable protective order is inadequate to address its confidentiality concerns. "Most cases find that a settlement agreement is discoverable despite a confidential designation, especially when there is a protective order in place." *Thermal Design*, 270 F.R.D. at 438; *see Channelmark*, 2000 WL 968818, at *5 (similar).

There is no justification for denying Plaintiffs this discovery. Whatever interests there might be in keeping settlements confidential that are not already adequately addressed by a protective order, "the public has an equally strong interest in not allowing parties to conceal information that is of legitimate public concern." *Channelmark*, 2000 WL 968818, at *5.

## II. FAIR ISAAC SHOULD BE COMPELLED TO PRODUCE RELEVANT SEALED PLEADINGS FROM THE *TRANSUNION* LITIGATION

Plaintiffs' Document Request No. 2 asked Fair Isaac for "All Documents produced, provided, filed, or served in connection with the TransUnion Litigation." Ex. 2, Plaintiffs' Document Requests at 6. Fair Isaac asserted boilerplate objections and responded that it would "produce non-privileged documents in its possession, custody, or control, if any, that it produced in the TransUnion Litigation that are relevant to TransUnion's counterclaims for alleged monopolization." Ex. 4, Fair Isaac's Objections to RFPs at 7. Fair Isaac has agreed, however, to produce only a small handful of sealed filings from that Litigation, despite the relevance of *other* sealed filings to the monopolization claims pursued in that case as well as this one. Ex. 6, Plaintiffs' Dec. 20, 2023 Letter at 4; Ex. 9, Plaintiffs' Jan. 31, 2024 Letter at 4; Ex. 12, Plaintiffs' Mar. 14, 2024 Letter at 2 (memorializing Plaintiffs' proposal to narrow production to Dkt. Nos. 1, 35, 53, 71, 72, 113, 141, 148, 159, 162, and 170 and Fair Isaac's agreement to produce only Dkt. Nos. 1, 35, 53, 71, and 72); Ex. 14, Plaintiffs' Apr. 11, 2024 Email (confirming impasse).

The requested documents are undoubtedly relevant. The *TransUnion* Litigation is directly mentioned multiple times in Plaintiffs' Complaints as relevant to Fair Isaac's pattern of anticompetitive practices (*e.g.*, DPAC ¶¶ 96-100). Evidence concerning core factual allegations in Plaintiffs' Complaints certainly falls within Rule 26(b)(1)'s provision that "allows the parties to engage in broad, liberal discovery" of "any nonprivileged matter that is relevant to any party's claim or defense." *Coleman v. Illinois*, No. 19-CV-3789, 2020 WL 5752149, at *3 (N.D. Ill. Sept. 25, 2020); *see, e.g.*, *Doe*, 2020 WL 406771, at *2 (evidence regarding Plaintiffs' allegations is discoverable); *Merix Pharm. Corp.*, 2006 WL 2931260, at *3 (same).

Moreover, "[i]f relevance is in doubt, courts should err on the side of permissive discovery." *Wiginlon v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004). That is

especially the case where the discovery in question comprises filed pleadings that may have additional potential judicial estoppel value. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, [the party] may not thereafter, simply because [its] interests have changed, assume a contrary position." (first alteration in original)); *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) ("The doctrine of judicial estoppel prevents a party from prevailing on an argument in an earlier matter and then relying on a contradictory argument to prevail in a subsequent matter."). As Plaintiffs explained to Fair Isaac when identifying the precise sealed pleadings they seek, "these sealed materials contain representations that either Fair Isaac or Trans Union made in pleadings to the court, and thus have discovery value as such" and the redacted information "appears to, in many cases, quote or discuss the contents of discovery materials produced in the Trans Union Litigation, including but not limited to agreements to which Trans Union and/or Fair Isaac were parties, verified interrogatory responses by both Fair Isaac and Trans Union, and testimony made by Trans Union and/or Fair Isaac employees in sworn declarations." Ex. 12, Plaintiffs' Mar. 14, 2024 Letter at 1.

Rather than turn over that information, Fair Isaac proposes to limit its production to a few documents of its choosing. As Plaintiffs told Fair Isaac, that position is "nonsensical, and has only caused further, unnecessary delay." Ex. 10, Plaintiffs' Feb. 15, 2024 Letter at 4. Fair Isaac has identified no burden associated with producing this relevant material. *Id.* Nor could it: These are non-voluminous filings to which Fair Isaac and/or its agents have ready access. Fair Isaac would face no burden in producing the information, much less an undue burden.

The Seventh Circuit has "uniformly rejected" invitations to shield from disclosure materials that "are filed and form the basis of judicial action," stating that, with the exception of

genuine trade secrets, certain personal identifying information, and grand jury materials, they "must eventually be released." *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000) (collecting cases); *In re Continental Ill. Sec. Litig.*, 732 F.2d 1302, 1308 (7th Cir. 1984) ("The public's right of access to judicial records has been characterized as 'fundamental to a democratic state.'" (quoting *United States v. Mitchell*, 551 F.2d 1252, 1258 (D.C. Cir. 1976)) (cleaned up)). If the public at large has a presumptive right to sealed pleadings, surely the Plaintiffs in this matter – who are subject to a protective order negotiated with Fair Isaac and so-ordered by this Court – have the right to receive the unredacted filings they seek within the formal discovery process.

Plaintiffs thus respectfully request that Fair Isaac be compelled to produce Dkt. Nos. 113, 141, 148, 159, 162, and 170 from the *TransUnion* Litigation, in addition to Dkt. Nos. 1, 35, 53, 71, and 72, which Fair Isaac has already agreed to produce.

## III. FAIR ISAAC SHOULD BE COMPELLED TO RESPOND TO REQUESTS FOR INFORMATION CONCERNING ITS LOBBYING AGAINST VANTAGESCORE

Plaintiffs' Interrogatory 6(b) asked Fair Isaac to "identify the five current or former Fair Isaac employees who are most knowledgeable about . . . [l]obbying efforts against VantageScore" during the relevant period. Ex. 1, Plaintiffs' Interrogatories at 8. Similarly, Plaintiffs' Document Request No. 32 asked Fair Isaac to produce "[a]ll Documents relating to submissions, presentations, or other communications with legislators and legislative staff, including members and staff of legislative committees; government agencies and staff; executive branch officials and staff; and government-sponsored enterprises and their representatives regarding VantageScores or any Competitor Credit Score Products." Ex. 2, Plaintiffs' Document Requests at 11. Fair Isaac objected to the Interrogatory and Document Request as irrelevant, claiming that its "'lobbying efforts' have no bearing on any claims or defenses at issue in this action," relying on the "*Noerr-*

*Pennington* doctrine." Ex. 3, Fair Isaac's Interrogatory Objections at 22-23; Ex. 4, Fair Isaac's Objections to RFPs at 35-36.

"Relevance, particularly in the discovery phase, is a low bar to meet. According to the Federal Rules, evidence is relevant if it 'has any tendency' to make a fact of consequence 'more or less probable than it would be without the evidence.'" *LKQ Corp. v. Kia Motors Am., Inc.*, No. 21-CV-3166, 2023 WL 3455315, at *2 (N.D. Ill. May 15, 2023) (citing Fed. R. Evid. 401(a)-(b)). The relevance of information sought by Interrogatory 6(b) and Document Request No. 32 – which concern Fair Isaac's lobbying efforts against its only real competitor, VantageScore – cannot seriously be contested. *See In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94-0897, 1995 WL 509666, at *1 (N.D. Ill. Aug. 18, 1995) ("[C]ourts have recognized that evidence of protected lobbying activity may be used to show the purpose and character of other activities." (citing *United Mine Workers of Am. v. Pennington*, 381 U.S. 657, 670-71 n.3 (1965))).

Fair Isaac's invocation of *Noerr-Pennington* is misplaced and does not change the relevance analysis. The doctrine does not apply to Interrogatory 6(b), which asks for the identities of "the five current or former Fair Isaac employees who are most knowledgeable about . . . [l]obbying efforts against VantageScore." Ex. 1, Plaintiffs' Interrogatories at 8. There is no reasonable basis for Fair Isaac to argue that the ***names*** of relevant potential witnesses alone could ever be used to assert liability based on protected lobbying efforts in violation of *Noerr-Pennington*.

Nor does *Noerr-Peninngton* shield the documents Plaintiffs seek from discovery. "The mere fact that the documents sought . . . relate to or arise from lobbying activity is insufficient to bar their discovery." *Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 509666, at *2. Discovery and admissibility are separate questions, and only the latter is implicated by *Noerr-*

*Pennington*, since the "*Noerr-Pennington* doctrine does not address the ***discoverability*** of Defendants' lobbying efforts." *Stallings v. Union Pac. R.R. Co.*, No. 01-CV-1056, 2003 WL 21317297, at *7 (N.D. Ill. June 6, 2003) (emphasis added), *report and recommendation adopted*, No. 01-CV-1056, 2003 WL 21688235 (N.D. Ill. July 17, 2003).

      *Stallings* is particularly instructive. There, the Court overruled a *Noerr-Pennington* objection nearly identical to Fair Isaac's, where the plaintiff did not "seek to impose liability based on Defendants' lobbying efforts," but instead sought discovery of lobbying efforts for the "limited purpose" of "establish[ing] that Defendants knew they had a common law duty [to provide adequate warning devices] which they lobbied to change." *Stallings*, 2003 WL 21317297, at *7. Other case law is similar. *See, e.g.*, *N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 666 F.2d 50, 53 (4th Cir. 1981) (permitting discovery of material relating to legislative lobbying efforts because "*Noerr-Pennington* is by definition an exemption from anti-trust liability, and not a bar to discovery of evidence"); *Associated Container Transp. (Aus.) Ltd. v. United States*, 705 F.2d 53, 60 (2d Cir. 1983) (holding that *Noerr-Pennington* is not a bar to a civil investigative demand).[5]

      This case is no different, and the same result should follow. As in *Stallings*, Plaintiffs seek discovery into Fair Isaac's lobbying efforts not because those lobbying efforts themselves are the basis of antitrust liability, but because statements made by Fair Isaac during the course of its lobbying efforts against VantageScore may have independent evidentiary value. For example, Fair

---

[5] *See also Houston Indus. v. Kaufman*, 95-CV-5237, 1996 WL 580418, at *3-4 (S.D. Tex. Mar. 7, 1996) (permitting discovery into lobbying efforts despite *Noerr-Pennington*); *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1167 (D. Kan. 2010) ("Courts have generally held that efforts to petition the government are not protected from discovery."); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, No. 11-CV-1062, 2016 WL 8849699, at *6 (C.D. Cal. June 8, 2016) ("No liability could be predicated on the initiation, but the evidence is still admissible to show Emirates' intent. . . . Analysis of the *Noerr-Pennington* doctrine yields the same result.").

Isaac's past statements in lobbying efforts could undermine or contradict any attempted defense by Fair Isaac that VantageScore's failure to gain wide adoption was due to VantageScore offering an inferior product, instead of Fair Isaac's attempts to crush it through anticompetitive conduct. Indeed, all statements Fair Isaac made in its lobbying efforts serve as evidence of positions Fair Isaac has previously taken, which could be used to refute Fair Isaac's contrary positions on questions relevant to this litigation, or to estop Fair Isaac from attempting to take such contrary positions in the first place. Moreover, Plaintiffs anticipate that market definition will be heavily litigated. Discovery into statements made by Fair Isaac, including during its lobbying activities, in which it characterized or discussed the relevant product market are therefore highly probative and relevant, even if the underlying lobbying efforts themselves cannot form an independent basis for antitrust liability under *Noerr-Pennington*.

To the extent *Noerr-Pennington* applies, determinations as to the admissibility of evidence can be made at trial or on summary judgment; the doctrine does not impact the ***discoverability*** of evidence concerning Fair Isaac's efforts to lobby against VantageScore. The Court should compel Fair Isaac to respond in full to Plaintiffs' Interrogatory 6(b) and Document Request No. 32.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion to Compel Discovery from Defendant Fair Isaac Corporation and order Fair Isaac to produce all non-privileged information sought by Plaintiffs' Interrogatory Nos. 2, 3, and 6(b) and Document Request Nos. 2, 3, 4, 6, 7, 8, and 32, as clarified in this Motion.

Dated: April 24, 2024

Respectfully submitted,

  /s/ Steven F. Molo
Steven F. Molo
Lauren F. Dayton
**MOLOLAMKEN LLP**
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
smolo@mololamken.com
ldayton@mololamken.com

Lauren M. Weinstein
**MOLOLAMKEN LLP**
600 New Hampshire Avenue, N.W.,
  Suite 500
Washington, DC 20037
Telephone: 202-556-2000
lweinstein@mololamken.com

*Liaison Counsel for Direct Purchaser*
*Plaintiffs and the Proposed Direct*
*Purchaser Class*

Joseph P. Guglielmo
Michelle E. Conston (*pro hac vice*)
Anna Hunanyan (*pro hac vice*)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 212-223-6444
jguglielmo@scott-scott.com
mconston@scott-scott.com
ahunanyan@scott-scott.com

Patrick McGahan (*pro hac vice*)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
156 S. Main St.
Colchester, CT 06415
Telephone: 860-531-2606
pmcgahan@scott-scott.com

  /s/ Chad E. Bell
Christopher M. Burke
Walter Noss
Yifan (Kate) Lv
**KOREIN TILLERY PC**
707 Broadway, Suite 1410
San Diego, CA 92101
Telephone: 619-625-5620
cburke@koreintillery.com
wnoss@koreintillery.com
klv@koreintillery.com

George A. Zelcs
Randall P. Ewing, Jr.
Chad E. Bell
Labeat Rrahmani
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
cbell@koreintillery.com
lrrahmani@koreintillery.com

  /s/ Carmen Medici
Carmen Medici (*pro hac vice*)
Gary Foster (*pro hac vice*)
**SCOTT+SCOTT**
  **ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-798-5319
cmedici@scott-scott.com
gfoster@scott-scott.com

*Interim Lead Class Counsel for Direct*
*Purchaser Plaintiffs and the Proposed Direct*
*Purchaser Class*

16

Jennifer W. Sprengel
**CAFFERTY CLOBES MERIWETHER &
  SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
jsprengel@caffertyclobes.com

Barbara J. Hart (*pro hac vice*)
**GRANT & EISENHOFER**
485 Lexington Ave., 29th Floor
New York, NY 10017
Telephone: 646-722-8526
bhart@gelaw.com

Brian M. Hogan
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Telephone: 312-214-7900
bhogan@dicellolevitt.com

Gregory S. Asciolla (*pro hac vice*)
Karin E. Garvey (*pro hac vice*)
John M. Shaw (*pro hac vice*)
**DICELLO LEVITT LLP**
485 Lexington Avenue, Suite 1001
New York, NY 10017
Telephone: 646-933-1000
gasciolla@dicellolevitt.com
kgarvey@dicellolevitt.com
jshaw@dicellolevitt.com

Paul E. Slater
Joseph M. Vanek
Michael G. Dickler
Matthew T. Slater
**SPERLING & SLATER, P.C.**
55 W. Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: 312-641-3200
pes@sperling-law.com
jvanek@sperling-law.com
mdickler@sperling-law.com
mslater@sperling-law.com

Linda P. Nussbaum
Susan Schwaiger
**NUSSBAUM LAW GROUP, P.C.**
1133 Avenue of the Americas, 31st Floor
New York, NY 10036
Telephone: 917-438-9102
lnussbaum@nussbaumpc.com
sschwaiger@nussbaumpc.com

Michael L. Roberts
Karen Sharp Halbert
**ROBERTS LAW FIRM, P.A.**
6834 Cantrell Road, Suite #1131
Little Rock, AR 72207
Telephone: 501-821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
gary@lcllp.com

Katrina Carroll
**LYNCH CARPENTER LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: 312-750-1265
katrina@lcllp.com

Michael P. Lehmann (SBN 77152)
Christopher Lebsock (SBN 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
mlehmann@hausfeld.com
clebsock@hausfeld.com

Hilary K. Scherrer
Paul Gallagher
**HAUSFELD LLP**
1700 K Street, N.W., Suite 650
Washington, DC 20006
Telephone: 202-540-7200
hscherrer@hausfeld.com
pgallagher@hausfeld.com

Scott A. Martin
Irving Scher
Jeanette Bayoumi
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
smartin@hausfeld.com
ischer@hausfeld.com
jbayoumi@hausfeld.com

Daniel E. Gustafson (*pro hac vice*)
Michelle J. Looby (*pro hac vice*)
Daniel J. Nordin (*pro hac vice*)
Dennis Stewart (*pro hac vice*)
Anthony J. Stauber
**GUSTAFSON GLUEK PLLC**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 612-333-8844
dgustafson@gustafsongluek.com
mlooby@gustafsongluek.com
dnordin@gustafsongluek.com
tstauber@gustafsongluek.com
dstewart@gustafsongluek.com

Kenneth A. Wexler
Melinda J. Morales
Michelle Perkovic
**WEXLER WALLACE LLP**
55 W. Monroe Street, Suite 3300
Chicago, IL 60603
Telephone: 312-346-2222
kaw@wexlerwallace.com
mjm@wexlerwallace.com
mp@wexlerwallace.com

*Counsel for Direct Purchaser Plaintiffs*
*and the Proposed Direct Purchaser Class*

/s/ Garrett D. Blanchfield

Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard (*pro hac vice* forthcoming)
**REINHARDT WENDORF &**
  **BLANCHFIELD**
222 South 9th Street, Suite 1600
Minneapolis, MN 55101
Telephone: 651-287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs and the Proposed
Indirect Purchaser Class*

Charles R. Watkins (3122790)
**GUIN, STOKES & EVANS, LLC**
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Telephone: 312-878-8391
charlesw@gseattorneys.com

*Liaison Counsel for Indirect Purchaser
Plaintiffs and the Proposed Indirect
Purchaser Class*

Brian P. Murray (*pro hac vice* forthcoming)
Lee Albert (*pro hac vice* forthcoming)
**GLANCY PRONGAY & MURRAY LLP**
230 Park Avenue, Suite 358
New York, NY 10169
Telephone: 212-682-5340
bmurray@glancylaw.com
lalbert@glancylaw.com

Douglas A. Millen
**FREED KANNER LONDON &**
  **MILLEN LLC**
100 Tri-State International Drive, Suite 128
Lincolnshire, IL 60069
Telephone: 224-632-4500
dmillen@fklmlaw.com

Jeffrey J. Corrigan (*pro hac vice*)
William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
Icee N. Etheridge (*pro hac vice*)
**SPECTOR ROSEMAN &**
  **KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: 215-496-0300
JCorriganf@srkattorneys.com
BCaldes@srkattorneys.com
JSpector@srkattorneys.com
IEtheridge@srkattorneys.com

Michael S. Smith (*pro hac vice*)
Gregory P. Hansel (*pro hac vice*)
Randall B. Weill (*pro hac vice*)
Elizabeth F. Quinby (*pro hac vice*)
**PRETI FLAHERTY, BELIVEAU &**
  **PACHIOS LLP**
One City Center,
P.O. Box 9546
Portland, ME 04101
Telephone: 207-791-3000
msmith@preti.com
ghansel@preti.com
rweill@preti.com
equinby@preti.com

David McLafferty (*pro hac vice* forthcoming)
**MCLAFFERTY LAW FIRM, P.C.**
  **ATTORNEYS AT LAW**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-940-4000, ext. 12
www.McLaffertyLaw.com

Simon B. Paris, Esq.
  (*pro hac vice* forthcoming)
Patrick Howard, Esq.
  (*pro hac vice* forthcoming)
**SALTZ MONGELUZZI &**
  **BENDESKY, P.C.**
1650 Market Street, 52nd Floor
Philadelphia, PA 19103
Telephone: 215-575-3985
sparis@smbb.com
phoward@smbb.com

Jonathan M. Jagher
  (*pro hac vice* forthcoming)
**FREED KANNER LONDON &**
  **MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
Telephone: 610-234-6487
jjagher@fklmlaw.com

Michael J. Boni (*pro hac vice* forthcoming)
Joshua D. Snyder (*pro hac vice* forthcoming)
John E. Sindoni (*pro hac vice* forthcoming)
**BONI, ZACK & SNYDER LLC**
15 St. Asaphs Road
Bala Cynwyd, PA 19004
Telephone: 610-822-0200
mboni@bonizack.com
jsnyder@bonizack.com
jsindoni@bonizack.com

*Counsel for Indirect Purchaser Plaintiffs*
*and the Proposed Indirect Purchaser Class*