IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | ) ) ) ) ) No. 20-cv-2114<br><br>Magistrate Judge M. David Weisman |

### ORDER

Plaintiffs ask the Court to compel Fair Issac Corporation ("FICO") to comply with their interrogatories 2, 3, and 6(b) and RFPs 3, 4, 6, 7, and 8, which seek, inter alia: (1) the settlement agreements that resolved *Fair Isaac Corp. v. Equifax Inc.*, No. 06-cv-04112 (D. Minn.) ("Equifax Litigation") and *Fair Isaac Corp. v. Trans Union LLC*, No. 17-cv-08318 (N.D. Ill.) ("TransUnion Litigation") and related information; (2) sealed filings ECF 113, 141, 148, 159, 162, and 170 from the TransUnion Litigation; and (3) the identities of the FICO employees/agents who lobbied against VantageScore and the documents related to those efforts. (*See generally* ECF 282.) For the reasons discussed below, the Court grants in part and denies in part plaintiffs' motion [ECF 280]. FICO has two weeks from the date of this Order to produce documents as set forth herein and to submit to the Court the sealed documents from the *TransUnion* litigation.

FICO argues that plaintiffs have not made the particularized showing of relevance required to obtain the confidential settlement agreements. There is no privilege that exempts settlement documents from discovery. *See In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979) (stating that the case presented "no convincing basis" for recognizing a settlement negotiation privilege, and "[i]nquiry into the conduct of the negotiations is . . . consistent with the letter and the spirit of Rule 408 of the Federal Rules of Evidence"). Moreover, though some district courts have required a particularized showing of relevance for the production of settlement documents, *see, e.g., Centillion Data Systems, Inc. v. Ameritech Corp.*, 193 F.R.D. 550, 552 n.1 (S.D. Ind. 1999), FICO does not cite, and the Court has not found, a Seventh Circuit case endorsing that requirement. Thus, the Court will evaluate plaintiffs' requests for settlement materials in accordance with Rule 26.

That Rule allows parties:

[To] obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Plaintiffs allege that FICO used litigation against Equifax and TransUnion to inhibit the growth of the rival scoring service, VantageScore. (*See* ECF 121 ¶¶ 88-100; ECF 122 ¶¶ 103-14.) But FICO contends that allegations are not enough to show relevancy. Rather, FICO says plaintiffs must "provide . . . facts to support their speculation that FICO settled with Equifax and TransUnion" on anticompetitive terms. (ECF 291 at 5.) But that is just another way of saying a heightened showing of relevance must be made for settlement materials, a proposition the Court has rejected.

Alternatively, FICO contends that any relevance the settlement materials may have is outweighed by the burden producing them would impose on it and the judicial policy favoring settlements. The burden production would impose on FICO is more perceived than real because a confidentiality order has been entered in this case and the settlement materials would be subject to it. (*See* ECF 199.) Similarly, the federal policy favoring settlements, which is reflected in Federal Rule of Evidence 408, bans the *admission* of settlement materials, not their discoverability. *Id.; see also MiMedx Grp., Inc. v. Fox*, No. 16 C 11715, 2018 WL 11223425, at *2 (N.D. Ill. June 22, 2018) ("Rule 408 addresses the admissibility of settlement agreements at trial and is thus an evidentiary bar and not a discovery bar."). Moreover, the focused nature of the discovery requests, which seek only the settlement agreements related to the *TransUnion* and *Equifax* litigations, minimizes the potential burden associating with responding, and significantly, cannot be reasonably characterized as a "fishing expedition." The Court's application of the balancing factors under Rule 26 could have led to a different result if the discovery requests were more broadly crafted. In short, the circumstances in this case weigh in favor of production of the settlement materials.

FICO also contends that it should not have to produce the sealed documents from the *TransUnion* Litigation that plaintiffs request. Plaintiffs say the requested documents are relevant "because the *TransUnion* Litigation is directly mentioned multiple times in Plaintiffs' Complaints as relevant to Fair Isaac's pattern of anticompetitive practices." (ECF 282 at 10.) FICO says those filings are just "joint status reports and briefing on discovery issues," which plaintiffs have not shown to be relevant to this case. (ECF 291 at 12.) Document 113 is described simply as sealed document. *See FICO v. TransUnion*, 17 C 8318 (N.D. Ill.). Document 141 is described as Second Joint Status Report. *Id.* Documents 148, 159, and 162 are TransUnion's sealed motion for leave to serve written discovery regarding FICO's interference with antitrust counterclaims, FICO's response, and TransUnion's reply, respectively. *Id.* Document 170 is FICO's sealed motion for leave to serve written discovery. *Id.* It is not possible to determine from the documents' descriptions, if any, whether the documents are relevant to this case. Accordingly, the Court will review the documents *in camera* before deciding this portion of the motion.

That leaves plaintiffs' request for the identities of the FICO employees/agents who lobbied against VantageScore and associated documents. FICO contends that discovery into its lobbying efforts is precluded by the *Noerr-Pennington* doctrine, which "immuniz[es] petitioning activity from liability." *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 837 (7th Cir. 2011). But *Noerr-Pennington* only addresses the admissibility of materials related to lobbying, not their discoverability. *Stallings v. Union Pac. R. Co.*, No. 01 C 1056, 2003 WL 21317297, at *7 (N.D.

2

Ill. June 6, 2003), *report and recommendation adopted sub nom. Stalling v. Union Pac. R.R. Co.*, No. 01 C 1056, 2003 WL 21688235 (N.D. Ill. July 17, 2003). Thus, "the mere fact that the documents sought by the plaintiffs relate to or arise from lobbying activity is insufficient to bar their discovery." *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 509666, at *2 (N.D. Ill. Aug. 18, 1995).

Plaintiffs say that the identities of FICO's lobbyists are not shielded by *Noerr-Pennington* and statements FICO made in the course of its lobbying efforts against VantageScore may undermine any assertion FICO may make about VantageScore's ability to compete or shed light on FICO's characterization of the relevant market. FICO argues that the relevance of the materials is speculative, and it would be an undue burden for it to produce them on the chance that they relate to competition or market definition, given that plaintiffs have served other RFPs on those topics.

As noted above, *Noerr-Pennington* does not bar discovery into lobbying activities, much less the names of lobbyists. *In re Brand Name Prescription Drugs Antitrust Litig.*, 1995 WL 509666, at *2. Thus, FICO's argument that obtaining the names of individuals who engaged in lobbying will only lead to Plaintiffs deposing "those individuals for hours of questioning about those activities" puts the cart before the horse. The issue before the Court is identifying the individuals involved in the lobbying activity, not whether all of them should be deposed. Thus, FICO's showing of burden on this point simply misses. Moreover, producing the lobbying documents would be unduly burdensome for FICO only if it already produced them in response to other RFPs (*i.e.*, the burden of reproducing documents already produced) or the relevance of these documents were minimal relative to the costs and associated burden of gathering the same. FICO fails to make this showing. Thus, FICO must produce the lobbyists' names and associated documents.

**SO ORDERED.**                                        **ENTERED: January 28, 2025**


**M. David Weisman**
**United States Magistrate Judge**