IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | ) ) ) ) ) |

No. 20 CV 2114

Magistrate Judge M. David Weisman

### ORDER

The case is before the Court on third-party subpoena respondent, VantageScore's, motion to quash the subpoena served on it by FICO [ECF 268] and FICO's motion to compel VantageScore to comply with the subpoena [ECF 269]. For the reasons discussed below, the Court grants in part and denies in part both motions. VantageScore has twenty-one days from the date of this order to produce documents in accordance with it.

### Discussion

Federal Rule of Civil Procedure 45 instructs the Court to quash a subpoena if it "subjects a person to undue burden" and permits the Court to quash a subpoena seeking "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(A)(iv), (d)(3)(B)(i).

Requests 1 and 2 seek "VantageScore's LLC agreement and Documents sufficient to show . . . the terms on which VantageScore licenses its credit scoring algorithms and software to the Credit Bureaus." (ECF 269 at 1.) FICO says "[b]asic information about the competitive landscape, and how VantageScore, as the allegedly excluded competitor, competes," is relevant to the claims and defenses in this suit. (ECF at 286 at 7.) VantageScore does not argue that the LLC agreement is irrelevant but says FICO can better understand "the competitive landscape" from what is happening in the market. (ECF 277 at 5.) Perhaps that is true, but FICO is not required to limit its requests to the materials VantageScore deems most relevant. However, FICO does not identify the claims or defenses to which VantageScore's licensing agreements with the Credit Bureaus are relevant. Thus, VantageScore must only produce the LLC agreement.[1]

Requests 3 through 8 seek the data that underlies VantageScore's 2017, 2018, 2019, and 2022 Market Study Reports and its 2023 Market Adoption Study; (2) documents sufficient to show the number and type of VantageScore Credit Scores distributed by the Credit Bureaus or Resellers, broken out by category of end user, distribution channel, and, if known, by use case, during each

---

[1] The Court appreciates VantageScore's concern about keeping its LLC agreement confidential. But there is a two-tiered confidentiality order in place, and the Court has no reason to believe that any attorney in this case would jeopardize his or her law license by violating the terms of that order.

year of the Relevant Time Period (2013 to 2023); and (3) documents sufficient to show VantageScore's market share calculations over the same period. (ECF 269 at 1-2.)

VantageScore says it does not generate the information called for by these requests. (ECF 277 at 7-9.) Moreover, it says any responsive documents it may have are available to FICO through VantageScore's publicly available market study reports. (*Id.*) FICO counters that VantageScore admitted to having one category of responsive documents, "'long-form summaries' of the statistics reported in the Market Study Reports" (ECF 271-1, Provance Decl. ¶ 11), and it should be required to produce them. VantageScore says that producing the long-form summaries and any market share calculations it may have would be unduly burdensome:

> [I]dentifying the full scope of summaries of the market adoption data would involve the review of email and hard-copy archives. Certain of the "long-form" summaries FICO seeks are kept—if at all—in hard copy format in a paper-based archive comprised of approximately 478 boxes of paper records . . . VantageScore preliminarily estimates that the cost of digitizing this archive to make it electronically searchable—excluding the cost of attorney review—would be at least $481,000, while the cost of a manual review of the paper files would range from $592,720 to $745,680. . . .
>
> Similarly, VantageScore's historical market share projections, if they still exist at all, are likewise stored only within these paper and email archives. Similar to the paper-based archive, the cost involved in merely collecting the email data and processing it to make it searchable is likely to amount to $30,000, even before the cost of reviewing documents for responsiveness and privilege, which would similarly involve substantial additional costs.

(ECF 277 at 10-11.) Because FICO has not shown that the requested documents are vital to this case and it cannot obtain them at a lower cost from another source, the Court agrees with Vantage Score that the burden of producing the requested information outweighs its relevance.

Requests 10 and 11 seek documents related to "any efforts or evaluation by [VantageScore] during the relevant time period to adopt the odds-to-score relationship (the probability of default at a given credit score) or reason codes (explanations of the factors determining a given credit score) used by FICO Scores." (ECF 271 at 9-10.) VantageScore says it does not have any responsive documents:

> VantageScore has conducted a reasonable and good faith search of its business records but has been unable to locate any information or documents regarding any VantageScore study, evaluation, assessment, or any evidence of any VantageScore attempt (whether consummated or not), nor any written policies or directives restricting VantageScore's ability to attempt, to align the odds-to-score relationship or reason codes between any VantageScore Credit Scores and FICO Scores.

(ECF 277 at 12-13.) In lieu of production, VantageScore must submit to FICO a declaration from a witness authorized to testify on behalf of the company that VantageScore has never studied,

2

evaluated, or attempted to align the odds-to-score relationship or reason codes between any FICO Score and VantageScore credit score.

Requests 12 and 13 seek, respectively, documents related to VantageScore's understanding of the challenged provisions of FICO's license agreements with the Credit Bureaus, *i.e.*, "No Equivalent Products," "Dynamic Royalty Schedule," "Pre-Qualification," and "Level Playing Field" provisions, and communications among Barrett Burns, Silvio Tavarez, Dr. Rikard Bandebo, Susan Fahy, Anthony Hutchinson, Dr. Andrada Pacheco, Jeff Richardson, Benjamin Tagoe, Emre Sahingur, or their predecessors or successors, about various public statements issued by VantageScore concerning its competitive standing. (ECF 269 at 2.) With respect to Request 12, FICO says "VantageScore's understanding of the challenged terms of FICO's agreements will provide the perspective of FICO's primary competitor on whether they have the exclusionary effects that Plaintiffs claim." (ECF 271 at 12.) Further, FICO contends that the public statements identified in Request 13 "publicize VantageScore's competitive strides during the relevant time period," and "communications between VantageScore's executives about these statements will provide crucial context for the statements and their implication for VantageScore's business." (*Id.*) VantageScore's *belief* that terms in FICO's agreements with the Credit Bureaus have, or do not have, an exclusionary effect is irrelevant; what matters is whether the terms, in fact, have such an effect. Similarly, FICO does not explain why it needs "context" for public statements VantageScore made. Accordingly, VantageScore does not have to produce documents responsive to these Requests.

Requests 14-16 seek "documents sufficient to show [VantageScore's] aggregated financial information, such as annual revenue, operating costs, capital expenses, R&D expenses, and investments during the relevant time period (2013 through 2023)." (*Id.* at 13.) FICO argues that "VantageScore's capitalization and investments in R&D during the relevant period are evidence of its ongoing viability as a competitor and will refute claims that FICO's alleged conduct and contracting practices have stunted its development." (*Id.*) VantageScore does not question the relevance of the requested information but says that "as a private company[, it] should not be required to produce such sensitive information to its primary competitor." (ECF 277 at 14.) The fact that VantageScore is a private company does not absolve it from producing relevant information, and its understandable concerns about confidentiality can be addressed by the confidentiality order. Thus, VantageScore must produce documents responsive to these Requests.

Requests 17 and 18 seek documents VantageScore produced or provided to the Department of Justice in connection with its 2020 investigation of FICO. (ECF 269 at 3.) VantageScore says that "it did not produce any records, narrative responses, or data compilations or summaries in connection with the DOJ's 2020 investigation of FICO," and thus has no documents responsive to these Requests. (ECF 277 at 15.) FICO says that VantageScore's counsel has made conflicting representations about whether VantageScore has documents responsive to these Requests, and it asks that VantageScore be required "to provide a supplemental declaration from its counsel who met with FICO's counsel regarding the Subpoena explaining the representations she made during the meet-and-confer process, and a supplemental declaration from its counsel involved in the DOJ investigation that addresses whether the specific items referenced in FICO's Motion to Compel,

including narrative responses and data compilations or summaries, were ever provided to the DOJ, formally or informally, in connection with the investigation." (ECF 286 at 15.) The Court will not order VantageScore's counsel to explain in a declaration the statements she made in the meet-and-confer. If FICO wants clarification of counsel's statements it can ask her for it directly. But to clear up any confusion about whether VantageScore has documents responsive to these Requests, VantageScore must submit a declaration to FICO stating whether VantageScore ever provided to the DOJ, formally or informally, the documents sought in Requests 17 and 18 in connection with the investigation into FICO.

**SO ORDERED**                                              **ENTERED: January 28, 2025**


_M. David Weisman_

**M. David Weisman**
**United States Magistrate Judge**