IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES. ) ) ) ) ) | No. 20-cv-2114<br><br>Magistrate Judge M. David Weisman |

## ORDER

      Plaintiffs seek to compel Fair Issac to comply with their requests for production ("RFPs") 57-59 and 62. RFP 57 seeks "[a]ll documents sufficient to show sales volume, revenue and [Fair Isaac's] profit resulting from sales of B2B Credit Score by country." (ECF 334-2 at 6.) RFP 58 seeks "[a]ll documents and communications discussing or analyzing any differences between the U.S. market and any non-U.S. markets as they relate to . . . any of FICO's performance metrics (including, without limitation, profits, revenues, demand, and switching)." (*Id.* at 7.) RFP 59 seeks "[a]ll documents containing balance sheets, profit and loss statements, cost calculations, investment analyses, and other financial records created by [Fair Isaac] in the ordinary course of business, by country and by business segment (e.g., B2B Credit Scores), and all supporting . . . data . . . ." (*Id.*) Plaintiffs seek both international transaction-level royalty data from Fair Isaac's so-called Snowflake database and responsive custodial documents pertaining to Canada and the United Kingdom.[1]

      Fair Isaac objected to these requests as being overly broad, unduly burdensome, seeking irrelevant information, and seeking information not within its custody or control, and on the basis of these objections, refused to produce responsive documents. (ECF 334-3 at 7-9.) Fair Isaac contends that the requested data is irrelevant because: (1) the market and class definitions plaintiffs propose are geographically limited to the United States; (2) "[Fair Isaac's] domestic and international Scores businesses are fundamentally different and not comparable to one another," and thus the international data are "not a meaningful 'benchmark' for any damages model;" and (3) Fair Isaac "does not have comprehensive structured data on transaction-level royalties across its international Scores operations, and the non-U.S. data [it] does have in structured form is in various stages of uploading and validation." (ECF 348 at 1, 9.)

      Plaintiffs' proposed U.S. market definition does not render irrelevant the international data they seek given their stated intention to use it "to calculate damages by comparing output and pricing in the anticompetitive U.S. market against output and pricing in foreign jurisdictions, presuming they are not tainted by the kind of anticompetitive conduct that Fair Isaac has undertaken in the United States." (ECF 337 at 4.) It may be, as Fair Isaac contends, that its international data is so different from its U.S. data or so incomplete that plaintiffs won't be able to

---

[1] Plaintiffs originally requested custodial documents for Australia as well, but Fair Issac has confirmed that "no portion of [its] international Scores business is in Australia." (ECF 348 at 12.)

use it for their damages model. On the other hand, it may be, as plaintiffs assert, that their damages experts can analyze and account for "differences in market structure, distribution models, and pricing arrangements in the requested jurisdictions." (ECF 369 at 5.) For discovery purposes, the issue is not whether plaintiffs' inchoate damages model is sound but whether they have articulated a theory of relevance for the data they seek, and they have. Satisfying Rule 26(b)'s threshold relevance requirement, we turn to other required considerations.

Even if the requested data has some relevance, Fair Issac says international transaction-level royalty data is not responsive to plaintiffs' RFPs because such data is not sufficient to show sales volume across Fair Isaac's non-U.S. Scores operations, as the RFPs request. Plaintiffs assert that "transaction-level royalty data would show the existence of sales (itself a predicate to establishing sales volume)" and "[would] provide[] details for accurately calculating sales volume, revenue, and profit by country," and thus is responsive to RFP 57. (*Id.* at 6.) Plaintiffs also say that "transaction-level royalty data . . . helps attribute revenue to specific products or services—a key component of profit and loss statements asked for by RFP 59." (*Id.*) Given this explanation, the Court overrules Fair Isaac's objection that the international transaction-level royalty data is not responsive to the RFPs, and orders Fair Isaac to produce that data within thirty days of the date of this order.[2]

Fair Issac also argues that the burden of producing responsive documents from custodial sources pertaining to Canada and the United Kingdom outweighs whatever relevance that information may have. Specifically, Fair Isaac says "[i]t would be vastly disproportional and wasteful to require [Fair Issac] to renegotiate custodians and search terms with Plaintiffs to address these new requests" because it "has already completed a massive custodial review." (ECF 348 at 12) (emphasis omitted). Moreover, Fair Isaac argues, production would be unduly burdensome because plaintiffs do not explain "how emails and loose documents that are sourced from employees' custodial files . . . could be used to construct a damages model." (*Id.* at 11.) The Court agrees that plaintiffs have not explained how the custodial documents they seek will inform their damages model. Absent that explanation, the custodial documents are too tenuously related to the case to warrant requiring Fair Isaac to, once again, negotiate custodians and search terms and cull through voluminous data. Accordingly, plaintiffs' motion is denied with respect to documents from custodial sources pertaining to Canada and the United Kingdom.

RFP 62 seeks "[a]ll documents and communications relating to the negotiation of TransUnion's contract with Fair Isaac in Canada . . . ." (ECF 334-2 at 7.) Fair Isaac contends that documents responsive to this request are only relevant to plaintiffs' Sherman Act Section 1 claim, which the district court dismissed. (ECF 348 at 15.) Plaintiffs say the requested documents are also relevant to their Section 2 conspiracy to monopolize claim. (*See* ECF 121 at ¶¶ 254-71.) Plaintiffs allege that Fair Isaac entered into a lucrative contract with TransUnion to distribute FICO scores in Canada in exchange for TransUnion's dismissal of its antitrust counterclaims against Fair Isaac in a lawsuit over the TransUnion/Fair Isaac U.S agreement. Plaintiffs say they are entitled to discover whether Fair Isaac's conduct in the Canadian negotiations was an attempt to force

---

[2] Fair Isaac does not argue that production of this data would be unduly burdensome. (*See generally*, ECF 348 at 7-11.)

TransUnion to accept Fair Isaac's exclusionary practices. The Court agrees. Thus, Fair Isaac must produce responsive documents within thirty days of the date of this order.

**SO ORDERED.**                             **ENTERED: February 25, 2025**

**M. David Weisman**
**United States Magistrate Judge**