IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES. | ) ) ) ) ) | No. 20-cv-2114<br><br>Magistrate Judge M. David Weisman |

# ORDER

The case is before the Court on FICO and VantageScore's objections to the Court's January 28, 2025 Order. With the permission of the district court and the parties, the Court treats the objections as motions to reconsider and grants VantageScore's motion [ECF 393] and denies FICO's motion [ECF 394].

### Discussion

A motion to reconsider an interlocutory order may be granted if the Court has obviously misunderstood a party, made its decision on grounds not presented to it, has made an error of apprehension, or if there has been a change in the controlling law or facts since the issue was submitted to the Court. *Caine v. Burge*, 897 F. Supp. 2d 714, 716-17 (N.D. Ill. 2012) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990)).

VantageScore contends reconsideration is appropriate for the Court's rulings on FICO's requests for production ("RFPs") 1, 2, and 14-16 because the Court erroneously said that VantageScore did not contest the documents' relevance. In its brief in support of quashing FICO's subpoena, VantageScore argued that documents responsive to those RFPs, which sought VantageScore's LLC agreement, documents showing the terms on which Vantage Score licenses its credit scoring algorithms and software, and VantageScore's confidential financial information, "do not have any *direct* bearing on whether [VantageScore] was a viable competitor to FICO." (ECF 268 at 6) (emphasis added). In the same brief, VantageScore said any relevance its financial information had was "tertiary at best." (*Id.* at 12.)  In its reply brief, VantageScore did not say that documents responsive to RFPs 1 and 2 were irrelevant but that the competitive landscape, which was FICO's justification for seeking the documents, "is best understood from what is happening as a practical matter in the market, not via VantageScore's founding documentation." (ECF 277 at 5-6.) Similarly, VantageScore did not say that the financial information FICO sought was irrelevant. Rather, it said that there were "other, less-intrusive means" of proving that VantageScore remained viable as a competitor. (*Id.* at 14.) The Court interpreted these statements as VantageScore's concession that the responsive documents had some relevance to the case.

 What the Court failed to consider, however, was how Judge Chang's order on FICO's motion to dismiss narrowed plaintiffs' claims. (*See* ECF 341.) That order, which was issued long after the motions at issue here had been fully briefed, reduced the claims against FICO to the

Sherman Act § 2 claim and analogous state law claims. (*Id.* at 23.) Section 2 "prohibits 'the employment of unjustifiable means to gain [monopoly] power'" and a Section 2 claim "requires 'two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power . . . .'" (*Id.* at 9) (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). FICO argues that it needs the license agreements to determine how "VantageScore credit scores are marketed and distributed to putative class members," calling the information "foundational to rebutting Plaintiffs' allegations that FICO has maintained an unlawful monopoly." (ECF 394 at 4.) But VantageScore's LLC agreement, the terms on which it licenses its technology, and its confidential financial information will not shed light on whether FICO has acquired or maintained monopoly power in the market. Thus, the Court erred in ordering VantageScore to respond to FICO's RFPs 1, 2, and 14-16.

FICO contends that the Court erred in denying its request to compel VantageScore to produce the data underlying "five 'Market Studies' that measure VantageScore's growth in use and adoption among putative class members between 2015 and 2023 (Subpoena Request 6)." (ECF 394 at 1.)[1] FICO says the Market Studies "report that VantageScore usage grew by approximately 20% in each year between 2015 and 2019" and even more than that in more recent years, but it needs the underlying data "to support further analysis." (*Id.* at 8-9) (emphasis omitted). The Court said the relevance of the requested documents articulated by FICO was outweighed by the burden producing them would impose on VantageScore. In addition to a needless quarrel with the Court's word choice, FICO argues that the Court should not have accepted VantageScore's assertions of burden because they are unsupported.

The Court disagrees. FICO has the Market Studies, which it describes as "powerful evidence," but seeks the underlying data because it "may allow" analysis of switching rates between FICO and VantageScore and "may support" estimates of how VantageScore's market share has increased over time. (*Id.* at 9.) Given the speculative relevance of the requested data, even a small burden of production on non-party VantageScore would be sufficient to outweigh the data's relevance. VantageScore said that, to the extent it has the requested information, producing it would require VantageScore to review its hard-copy archive, which consists of more than one million pages and would cost nearly $500,000.00 just to scan. (ECF 277 at 10-11; ECF 277-4, Briggs Decl. ¶¶ 4-6.) FICO says these representations are insufficient because they are unsupported assertions made in a brief by counsel. *See Gunn v. Stevens Sec. & Training Servs., Inc.*, No. 17 C 6314, 2018 WL 1737518, at *2 (N.D. Ill. Apr. 11, 2018) ("Defendant offers nothing in the way of proof [of the burden of production]—no affidavit or anything like that. . . . A lawyer's unsupported statement in a brief is not evidence.") Here, most of the statements about burden were made in Ms. Briggs' declaration, so they are not unsupported as in *Gunn*. Moreover, to the extent counsel expanded in the brief on the facts set forth in Ms. Briggs' declaration, Federal Rule of Civil Procedure 11 and the ABA Model Rules of Professional Conduct 3.1 and 3.3 mandate that those factual assertions be correct. In short, the Court believes that VantageScore has made a sufficient showing of burden.

---

[1] FICO also contests the Court's ruling on RFP 2 but because that RFP was discussed in the context of VantageScore's objections, the Court will not repeat that discussion here.

**Conclusion**

For the reasons set forth above, the Court denies FICO's motion to reconsider [ECF 394], grants VantageScore's motion to reconsider [ECF 393], and vacates the portion of the Court's January 28, 2025 Order [ECF 385] compelling VantageScore to produce documents responsive to FICO's RFPs 1, 2, and 14-16.

**SO ORDERED.**     **ENTERED: April 7, 2025**

**M. David Weisman**
**United States Magistrate Judge**