UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION | No. 1:20-CV-2114 |
| This document relates to: | Judge April M. Perry |
| ALL ACTIONS | Magistrate Judge M. David Weisman |

**JOINT STATUS REPORT**

The parties respectfully submit this Joint Status Report in advance of the August 1, 2025, status hearing.

I. **PARTY DISCOVERY**

**Plaintiffs' Statement:** Plaintiffs have reported in the prior status reports that Plaintiffs and FICO continue to discuss the parameters of FICO's responses to certain requests for production, including custodians and date ranges. There are, however, certain disputes that have been under discussion for a long time and which Plaintiffs believe should be brought to the Court's attention.

Structured Data (RFPs 33-35): The parties have been negotiating the scope of FICO's structured data productions for over a year. While the parties have reached agreement on many issues, several key requests remain open. Most notably, Plaintiffs have been requesting price and quantity data since the beginning of the structured data negotiation process over a year ago and have followed up on this request in numerous letters. Finally, in an April 30, 2025 letter, FICO represented that it cannot confirm that it possesses final or complete quantity and price data from prior to 2010. (The parties have agreed that FICO will produce data prior to that date.) In light of

this representation, on May 9, 2025, Plaintiffs proposed an alternative approach that would require Plaintiffs to compile this data manually from FICO's agreements, but FICO refused to accept Plaintiffs' suggestion unless Plaintiffs agreed not to seek additional discovery relating to the data. Additionally, FICO criticized Plaintiffs for not having served formal discovery requests to cover their alternative proposal. Plaintiffs declined to enter into FICO's proposed "stipulation" to not seek additional discovery relating to that data both because Plaintiffs needed to first review the new data and because new relevant information was still being uncovered during the course of discovery. Instead, Plaintiffs were forced to serve formal discovery, which will cause even further delays.

**FICO's Statement:** The parties have continued to meet and confer on certain of Plaintiffs' requests for production. FICO does not believe any of the issues raised by Plaintiffs are ripe for intervention by the Court, but nevertheless, FICO's responses are provided below. FICO will also be prepared to address these issues should the Court wish to discuss them.

Structured Data (RFPs 33-35): On March 8, 2024, early in the parties' negotiations over structured data, FICO confirmed to Plaintiffs that it does not have in its possession structured data reflecting "total price and price per unit charged by any intermediary to the transaction." In May 2024, FICO provided Plaintiffs with samples of its structured data. FICO has since produced voluminous structured data in this case from three different databases, some of which stretches back to 2004. FICO has also produced raw royalty reporting data that FICO received from the Credit Bureaus and maintained in its files in their original form.

Following these productions, in May 2025, Plaintiffs informally requested that FICO produce to them additional information on this topic that was not responsive to any of Plaintiffs' formal discovery requests served pursuant to the Federal Rules. Most notably, Plaintiffs requested

2

that FICO list and produce additional contracts dating back to 2002 when their formal discovery requests only seek documents back to 2006 (for unstructured data) or, at most, 2004 (for structured data). Nevertheless, FICO offered to respond to Plaintiffs' new informal discovery requests on the sensible condition that Plaintiffs would agree that doing so would fully satisfy discovery requests on this general subject matter. Plaintiffs refused to so stipulate, and instead served additional formal discovery requests aimed at obtaining this information. FICO will serve its responses and objections to those requests, after which the parties may meet and confer in an attempt to resolve any disagreements before further burdening the Court with this issue.

## II. PENDING MOTIONS

**Plaintiffs' Motion to Extend the Deadline to Serve Party Discovery (against FICO) (ECF No. 458, 472):** On June 9, 2025, Plaintiffs filed their Opposed Motion to Extend the Deadline for Written Discovery on a Party (ECF No. 458) (the "Scheduling Motion"), seeking to extend the time to serve written discovery on a party from June 13, 2025 (ECF No. 389 (operative case schedule)) to 45 days after FICO completes production of all documents for which it has downgraded its privilege claims, including production of any documents served as a result of this Court's rulings on any motions to compel previously withheld documents. On June 10, 2025, the Court set the briefing scheduling in connection with the Motion, directing FICO to respond by June 20, 2025 and ordering no reply. ECF No. 460. The Court further set a ruling on motion hearing for July 1, 2025. *Id.* On June 17, 2025, the Court rescheduled the ruling on motion hearing to July 17, 2025. ECF No. 473.

**Plaintiffs' Statement:** Plaintiffs request that they have an opportunity at the July 17 hearing to address FICO's opposition brief (ECF No. 472) which misrepresents the history of this issue and incorrectly claims that Plaintiffs failed to meet the Rule 16(b)(4) standard. Specifically,

3

FICO failed to acknowledge that after previewing the extension request to the Court at the April 8, 2025, status conference, see April 8, 2025 Transcript of Proceedings ("Tr.") at 29-33, Plaintiffs reiterated this request in greater detail in the parties' May 20, 2025 joint status report, specifically noting that Plaintiffs "will be prepared to discuss this further at the May 22, 2025 status conference, *including whether the Court would like Plaintiffs to move the Court for such relief*." ECF No. 443 at 1-2 (emphasis added). However, on May 21, 2025, the Court canceled the May 22, 2025, status hearing and reset the hearing to June 4, 2025. ECF No. 444. Then, on June 3, 2025, the Court canceled the June 4, 2025, status hearing and did not reset it. ECF No. 450. When it became clear that a new status hearing was not going to be scheduled in the short term, Plaintiffs promptly filed the Motion, several days ahead of the discovery deadline at issue. Plaintiffs were diligent in bringing this issue to the Court's attention every step of the way.

**FICO's Statement:** The additional argument and briefing that Plaintiffs now attempt to submit on this fully briefed motion in the parties' joint status report is inappropriate. FICO does not believe this is what the Court intended for the parties' joint status reports but would appreciate guidance from the Court about this at the upcoming status hearing. If the Court is inclined to hear argument on this motion at the hearing, FICO will be prepared to proceed.

**Plaintiffs' Motion to Compel Regarding FICO's Privilege Log (against FICO) (ECF No. 461, 482, 483):** On June 12, 2025, Plaintiffs filed Plaintiffs' Motion to Compel FICO to Re-Do Certain Aspects of Its Privilege Log and to Produce any De-Logged Documents. Plaintiffs' motion includes four challenges to FICO's privilege log: inconsistent redactions, logging last in time emails only, not providing a privilege basis for each document in the privilege log, and withholding attachments that do not have independent privilege bases. ECF No. 461. On June 17, 2025, the Court held a presentment hearing regarding Plaintiffs' Privilege Log MTC, after

which the Court issued a minute entry (1) ordering that FICO address each of the issues raised in Plaintiffs' motion, (2) setting deadlines for FICO's opposition brief and Plaintiffs' reply brief, and (3) setting a ruling date for July 17, 2025. ECF No. 473. FICO and Plaintiffs timely served their opposition and reply briefs. ECF No. 482 and 483, respectively.

**Plaintiffs' Motion to Compel against VantageScore (ECF No. 314-1, 424, 425):** Plaintiffs' motion to compel VantageScore Solutions, LLC's ("VantageScore") compliance with Plaintiffs' January 25, 2024 subpoena remains pending.[1] At the Court's invitation (*see* ECF No. 415), on May 9, 2025, Plaintiffs and VantageScore filed updated briefs reflecting the current state of the instant litigation. ECF Nos. 424 and 425, respectively.

**Plaintiffs' Statement:** Plaintiffs expanded on arguments already made in their initial motion papers, with an emphasis on why the Court should grant Plaintiffs' motion despite having denied FICO's request for discovery from VantageScore. ECF No. 411. First, Plaintiffs explained why certain discovery is relevant to their Sherman Act § 2 monopolization claims—arguments the Court found absent in FICO's papers. Second, Plaintiffs reiterated the fact that they bear the burden of proof on certain issues and therefore are differently situated than FICO with regard to the reasonableness and proportionality assessments of their subpoena. And third, Plaintiffs explained that they seek certain documents FICO did not seek and which the Court necessarily did not address in resolving FICO's motion to compel VantageScore.

**Plaintiffs' Motion to Compel against Equifax and TransUnion (ECF No. 427, 456):** Plaintiffs' Motion to Enforce Equifax's and Transunion's Compliance with Plaintiffs' Subpoenas

---

[1] *See* Plaintiffs' Joint Mem. in Supp. of Mot. to Compel VantageScore Solutions, LLC's Compliance with Subpoena, *originally filed in* Misc. Case No. 24-80144 (N.D. Cal. June 11, 2024), *re-filed in* 1:20-CV-2114, ECF No. 314-1 (N.D. Ill. July 12, 2024); VantageScore Solutions, LLC's Amended Mem. in Supp. of Opp'n to Pls.' Mot. to Compel, 1:20-CV-2114, ECF No. 312 (N.D. Ill. July 3, 2024); and Pls' Joint Reply Mem. in Supp. of Mot. to Compel Disc., 1:20-CV-2114, ECF No. 317 (N.D. Ill. July 15, 2024).

5

is fully briefed and before the Court ("Credit Bureau Motion"). ECF Nos. 427, 456.[2] This motion concerns Equifax and TransUnion's refusal to produce transactional data from their foreign operations in Canada, the United Kingdom, and Australia.

**Plaintiffs' Statement:** As Plaintiffs explained in their motion, such data is important to developing a yardstick to measure FICO's damages by comparing credit score prices in the United States to other similarly developed markets where FICO's anticompetitive conduct was not present. Given the importance of this data, Plaintiffs argued that its production is proportional to the needs to the case, especially where the Credit Bureaus have not made a particularized showing of the burden involved in producing it. In opposing Plaintiffs' motion, Equifax and TransUnion present entirely new information regarding the claimed burdens of producing the requested data. During negotiations, Plaintiffs requested greater articulation of this burden but Equifax and TransUnion refused to provide it. Nonetheless, the claimed burden is even still vague and not that substantial for such large companies with billions of dollars in revenue each year. The claimed burden is also not undue given the unique relationship Equifax and TransUnion have to this case. Further, Equifax and TransUnion completely fail to respond to Plaintiffs' arguments that this data can only be obtained from Equifax and TransUnion and not from FICO.

**FICO's Statement:** FICO takes no position on the pending motion but disputes any characterization by Plaintiffs that the data sought will demonstrate injury or damages.

**Non-Party VantageScore Solutions' Motion for Leave to File Motion to Quash FICO's Subpoena to Credit Bureaus (ECF No. 466, 471):** On June 9, 2025, the Court granted in part FICO's motion to compel the Credit Bureaus to comply with the subpoenas FICO served on them,

---

[2] Plaintiffs originally filed their motion against Equifax in the Northern District of Georgia, Equifax's home District. That motion was transferred to the Northern District of Illinois and ultimately referred to this Court. ECF No. 455.

ordering them to produce data—with customer names redacted—used to create the VantageScore Market Study Reports. *See* ECF No. 457.

On June 18, 2025, non-party VantageScore Solutions, LLC, filed a Motion for Leave to File Motion to Quash Fair Isaac Corporation's Non-Party Subpoenas to the Credit Bureaus. *See* ECF No. 466. On June 20, 2025, FICO filed an opposition to the motion. *See* ECF No. 471. The Court has set VantageScore's motion for a hearing on July 17, 2025 (ECF No. 475).

**FICO's Motion to Compel against Non-Party Franklin Mint Federal Credit Union (Case No. 2:25-mc-00041 (E.D. Pa.)):** On July 11, 2025, FICO moved to compel the production of documents by non-party Franklin Mint Federal Credit Union in response to a subpoena that FICO issued in connection with this litigation. The motion is currently pending.

### III. ANTICIPATED DISCOVERY MOTIONS

**Plaintiffs' Statement:**

**Second Motion to Compel FICO Regarding FICO's Privilege Log:** The parties have exchanged correspondence and held a Zoom meet and confer regarding certain deficiencies with FICO's privilege log that Plaintiffs identified after the June 17 presentment hearing on Plaintiffs' Privilege Log MTC. Given the vast size of FICO's log, Plaintiffs continue to address certain macro issues with the log but hope that resolution of some of these issues will better enable Plaintiffs to tackle withheld documents on a more targeted basis. The macro issues that Plaintiffs intend to move on in the near future are as follows:

Blast Emails: Plaintiffs first raised the issue of "blast" emails with FICO in a February 6 letter. The parties agree that there is no magic number of recipients that constitutes too many to maintain a privilege, but Plaintiffs firmly believe that the number of blast emails on FICO's

privilege log—particularly in light of how few attorneys are involved in those emails[3]—is indicative of a problem. FICO claims to have re-reviewed all emails on its privilege log that included more than 15 recipients and to have reduced or withdrawn its privilege claims where FICO determined it appropriate to do so, but 82 such emails still remain on the log.[4] FICO has also confirmed that it will not re-review the 749 log entries that involve between 10 and 15 recipients.

In addition, there are multiple other issues that Plaintiffs have identified with FICO's log—most three months ago—that are still not resolved. Those include the following:

Third parties included on withheld communications: There are numerous log entries that indicate that FICO shared with third parties documents over which FICO claims privilege, seemingly waiving any claim to privilege. Plaintiffs first raised this issue in an April 10, 2025 letter, and FICO responded that it "disputes that the presence of a third party necessarily waives privilege; privilege may well be preserved in such situations under agency principles." In a May 23, 2025 letter—and again in a June 9, 2025, letter—Plaintiffs asked FICO to identify the entities with which it believes it enjoys an agency relationship such that communication with those entities

---

[3] For instance, of the emails that went to 10 recipients, 120 of them involved two or fewer attorneys. Of the emails that went to 11 recipients, 226 involved three or fewer attorneys. Of the emails that went to 12 recipients, 147 involved three or fewer attorneys. Of the emails that went to 13 recipients, 84 involved three or fewer attorneys. Of the emails that went to 14 recipients, 37 involved three or fewer attorneys. Of the emails that went to 15 recipients, 13 involved three or fewer attorneys. And with regard to the emails that went to more than 15 recipients, there are consistently few attorneys involved, although the total number of such emails is smaller.

[4] In the initial draft of this JSR sent to FICO, Plaintiffs noted that FICO's amended privilege log continued to maintain privilege over a document "entitled 'Forecast Control Sheet & Leaders Call Review Sheets 22.MSG' that went to 111 recipients (and two of whom were attorneys)." FICO responded, "Counsel: The specific email identified here by file name (FicoPriv_04019) is an email for which FICO withdrew its privilege claim; FICO produced it in full in February (see FICO-SKY_01134555). We will ensure that privilege log entry is updated accordingly." While Plaintiffs were pleased to see that FICO withdrew its privilege claim over this document, it is troubling that the document nevertheless remains on FICO's amended log, and it certainly begs a number of questions, including why does it remain on the log? and how many other produced documents are on the log?

does not "necessarily" waive privilege. It has been over a month and a half, and FICO has yet to do so, despite the fact that this list of entities should be something that FICO could provide immediately, as presumably it was a list provided to the contract attorneys who populated FICO's privilege log.

Distribution lists: Plaintiffs have identified multiple group distribution lists on FICO's privilege log (*e.g.*, FICO@gpg.com, FICOTeam@vocecomm.com, FICO@fgsglobal.com, info@email.fico.com, pollead@fico.com, and Polsupport@fico.com) and have asked FICO to provide information on the recipients of the emails sent to those lists. Without that information, Plaintiffs cannot identify the number nor the identity of the recipients of those emails and thus cannot evaluate FICO's privilege claim. Although FICO has stated that it is looking into what information it can provide with respect to these group distribution lists, Plaintiffs first identified this issue in an April 10 letter, and the amount of time it has taken FICO to provide this information is unacceptable.

**Second Motion to Compel the Credit Bureaus:** As previewed in the parties' May 20 Joint Status Report, there was one outstanding document request (Request 6 of the subpoenas) about which Plaintiffs and the Credit Bureaus had not yet reached impasse when Plaintiffs filed the Credit Bureau Motion. At this point, Plaintiffs do appear to have reached impasse with Experian Information Solutions, Inc. ("Experian"), Equifax and TransUnion regarding that request. Absent any last-minute changes in position by the Credit Bureaus, Plaintiffs anticipate filing a motion to compel their compliance with this request.

**FICO's Statement:**

**Plaintiffs' Anticipated Second Motion to Compel FICO Regarding FICO's Privilege Log:** Plaintiffs have continued to raise categorical objections to FICO's privilege log. While FICO

9

is trying to work with Plaintiffs to respond to their objections and seek compromises with them in a manner consistent with the Federal Rules, FICO continues to disagree that its privilege log is categorically deficient.

"Blast" Emails: Plaintiffs demand that FICO re-review email communications associated with 749 entries on its privilege log based solely on the fact that there were more than 10 recipients. Plaintiffs admit "[t]here is no rule of law . . . that puts a numerical upper limit on the number of corporate employees who can be within the sphere of privilege." *Muro v. Target Corp.*, 250 F.R.D. 350, 364 (N.D. Ill. 2007), *aff'd*, 580 F.3d 485 (7th Cir. 2009) (citations omitted). Indeed, the attorney-client privilege can extend to many recipients; it need not "be a small group." *Id.* For instance, in one longstanding case, "communications with eighty-six corporate employees were held to be within the scope of a potential privilege." *Id.* (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 n.3 (1981)). The burden and cost on FICO to re-review documents associated with several hundred privilege log entries is significant and cannot be justified by Plaintiffs' unadorned "belie[f]" that more than 10 recipients "is indicative of a problem." Moreover, FICO has already undertaken the burden and expense of re-reviewing emails on its log sent by non-attorneys to more than 15 recipients—that is, FICO has already compromised on this issue with Plaintiffs using a more reasonable 15-recipient threshold.[5] If Plaintiffs have other specific privilege log entries they

---

[5] In fact, FICO already agreed to re-review the specific email noted in Plaintiffs' footnote number 4 above, told Plaintiffs in a February 21, 2025 letter that it was withdrawing its privilege claim over the document, and produced the document to Plaintiffs on February 25, 2025. It appears that the privilege log entry associated with this document was not updated, which FICO promptly corrected once the issue had been brought to FICO's attention. Moreover, at Plaintiffs' request, FICO served an updated amended and supplemental privilege log on July 11, 2025, that reflects the Bates numbers of all documents for which it has withdrawn or reduced its privilege claim since serving its original log in December 2024, including those documents it produced on May 30, 2025. Moreover, as FICO has already clarified for Plaintiffs, any log entry for which FICO has full withdrawn its privilege claim may be easily identified, because those entries are the ones that have no text in the "Privilege Log Description" and "Privilege Type" log columns. Plaintiffs have the information they need to identify the documents for which FICO has withdrawn or reduced its privilege claim.

wish to challenge on this ground, they may identify those entries by their Privilege ID numbers and FICO will consider those entries on a document-by-document basis.

Third parties included on withheld communications and distribution lists: Plaintiffs have asked for a list of third parties that FICO believes do not break privilege with respect to documents on FICO's log and have also asked for information regarding certain distribution lists hosted by third-party email domains. FICO has informed Plaintiffs that it is assembling that information and will provide it. Any disputes arising over these issues are not yet ripe.

## IV. OTHER ISSUES

**Plaintiffs' Statement:** The Agreed Confidentiality Order includes provisions regarding procedures the parties are to follow regarding requests to claw back inadvertently privileged documents. One provision provides that "[a]ny motion contesting the privilege or work-product claim shall be submitted to the Court in camera for review or, if the Court directs, filed under seal." ECF No. 199 at 8(f). Plaintiffs seek the Court's guidance regarding how the Court would like to proceed in the event there is a clawback-related dispute to bring to the Court's attention.

**FICO's Statement:** FICO is unaware of any disputes that have arisen over the privileged status of documents that have been clawed back pursuant to the procedures outlined in the parties' Agreed Confidentiality Order. As such, seeking guidance from the Court over its preference for resolving any such disputes is premature. Nevertheless, if the Court is inclined to address this issue, FICO respectfully submits that in camera review by the Court of documents designated by a party as privileged is preferable to filing the documents under seal on ECF, which increases the risk that the documents will be disclosed, inadvertently or otherwise, to other parties.

\* \* \* \* \* \*

The parties are, of course, available to discuss any additional issues into which the Court may wish to inquire.

Dated: July 14, 2025

Respectfully submitted,

*/s/ Lauren M. Weinstein*
Lauren M. Weinstein
Christian Bale
**MOLOLAMKEN LLP**
600 New Hampshire Avenue, N.W.,
 Suite 500
Washington, DC 20037
Telephone: 202-556-2000
lweinstein@mololamken.com
cbale@mololamken.com

Steven F. Molo
Lauren F. Dayton
Eric Posner
**MOLOLAMKEN LLP**
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
smolo@mololamken.com
ldayton@mololamken.com
eposner@mololamken.com

Anden Chow
Cody Wiles
**MOLOLAMKEN LLP**
430 Park Avenue
New York, NY 10022
Telephone: 212-607-8177
achow@mololamken.com
cwiles@mololamken.com

*Liaison Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

*/s/ Karin E. Garvey*
Karin E. Garvey
Brian M. Hogan
Joseph P. Guglielmo
Michelle E. Conston (*pro hac vice*)
Anna Hunanyan (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: 212-223-6444
kgarvey@scott-scott.com
brian.hogan@scott-scott.com
jguglielmo@scott-scott.com
mconston@scott-scott.com
ahunanyan@scott-scott.com

Carmen Medici
Gary Foster (*pro hac vice*)
**SCOTT+SCOTT**
 **ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-798-5319
cmedici@scott-scott.com
gfoster@scott-scott.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

*/s/ Garrett D. Blanchfield*
Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
**REINHARDT WENDORF &**
  **BLANCHFIELD**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Telephone: 651-287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

Jeffrey J. Corrigan (*pro hac vice*)
William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)
**SPECTOR ROSEMAN &**
  **KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: 215-496-0300
JCorriganf@srkattorneys.com
BCaldes@srkattorneys.com
JSpector@srkattorneys.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs and the Proposed Indirect Purchaser Class*

Charles R. Watkins (3122790)
**GUIN & EVANS, LLC**
321 South Plymouth Court, Suite 1250
Chicago, IL 60604
Telephone: 312-878-8391
charlesw@gseattorneys.com

*Liaison Counsel for Indirect Purchaser Plaintiffs and the Proposed Indirect Purchaser Class*


*/s/ Matthew D. Provance*
Britt M. Miller
J. Gregory Deis
Matthew D. Provance
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: 312-782-0600
Facsimile: 312-701-7711
bmiller@mayerbrown.com
gdeis@mayerbrown.com
mprovance@mayerbrown.com

*Counsel for Defendant Fair Isaac Corporation*