**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: FICO ANTITRUST LITIGATION RELATED CASES.** | ) ) ) ) ) | **No. 20-cv-2114** <br> **Magistrate Judge M. David Weisman** |

**ORDER**

Before the Court is plaintiffs' motion to compel Equifax and TransUnion to comply with their subpoenas. For the reasons set forth below, the Court denies the motion [ECF 427].

**Discussion**

Plaintiffs ask the Court to compel Equifax and TransUnion to "produce transaction-level data from Canada, Australia, and the United Kingdom" responsive to their subpoena requests 9-16 and 18-22. (ECF 427-1 at 1.) Plaintiffs say they "expect their economic experts will use [the requested] data to develop econometric models that compare the prices charged for business-to-business ('B2B') Credit Scores in the monopolized U.S. market with the prices consumers pay in more competitive foreign markets" which will "prove harm to competition in the relevant market and damages to Plaintiffs and the class members." (*Id.*)

Equifax and TransUnion say that the foreign data plaintiffs seek is irrelevant to their claims against FICO, which are based on the U.S. market. FICO made the same argument in opposition to plaintiffs' motion to compel, and the Court rejected it:

> Plaintiffs' proposed U.S. market definition does not render irrelevant the international data they seek given their stated intention to use it "to calculate damages by comparing output and pricing in the anticompetitive U.S. market against output and pricing in foreign jurisdictions, presuming they are not tainted by the kind of anticompetitive conduct that Fair Isaac has undertaken in the United States." (ECF 337 at 4.) It may be, as Fair Isaac contends, that its international data is so different from its U.S. data or so incomplete that plaintiffs won't be able to use it for their damages model. On the other hand, it may be, as plaintiffs assert, that their damages experts can analyze and account for "differences in market structure, distribution models, and pricing arrangements in the requested jurisdictions." (ECF 369 at 5.) For discovery purposes, the issue is not whether plaintiffs' inchoate damages model is sound but whether they have articulated a theory of relevance for the data they seek, and they have.

(ECF 400 at 2.) For the same reasons, the Court rejects the relevance objections Equifax and TransUnion raise here.

Alternatively, Equifax and TransUnion argue that the data is not in their possession, but in the hands of their foreign subsidiaries, which are separate legal entities. (ECF 456-3, Griggs; Decl. ¶ 5; *see* ECF 456-4, Williams Decl. ¶¶ 3-5, 8-9.) What they do not say, however, is that they lack control of, *i.e.*, the right to obtain, the data. *See Dexia Credit Loc. v. Rogan*, 231 F.R.D. 538, 542 (N.D. Ill. 2004) ("[I]t is 'well-settled that a party need not have actual possession of the documents to be deemed in control of them;' rather, the 'test is whether the party has a legal right to obtain them.'") (quoting *In re Folding Carton Antitrust Litig.*, 76 F.R.D. 420, 423 (N.D. Ill. 1977)). Because Equifax and TransUnion do not say that they have no control over their foreign subsidiaries' data, lack of control is not a basis for denying the motion.

Even if they have the right to obtain their foreign subsidiaries' data, TransUnion and Equifax say that requiring them to produce it would be unduly burdensome:

> There is no single database that exists that would allow Equifax to retrieve the data sought by Plaintiffs that could be retrieved and produced in the format requested by Plaintiffs without significant effort to ensure that the data is presented accurately, completely, and in the challenging daily summation format requested. Rather, in each country, the data is stored among multiple databases and would require significant coordination among dozens of employees from Equifax and its foreign entities to locate and collect.

(ECF 456 at 12) (citations omitted). Further, Equifax states that "production of this data would require an additional set of employees to sort the information and produce it in Plaintiffs' requested format," which "would likely take dozens of employees several months to do." (*Id.* at 13.)

TransUnion states that producing the requested data would require its foreign subsidiaries "to draw multiple employees from a variety of functions . . . away from their ordinary work to identify, extract, collect, and prepare the data," which would take "well over 100 hours of employee time." (*Id.* at 13-14) (citations omitted). Moreover, TransUnion says the result of these efforts would be limited. For Canada, produceable data is from 2022 to the present because 2015 data is unavailable and data for 2016 through 2022 has been archived, and for the United Kingdom, produceable data is from 2018 to the present because data for earlier years is not available. (*Id.* at 14.)

In deciding whether the burden of producing the data is undue, the Court considers several factors, including the fact that the respondents are non-parties. *U.S. v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005); *see id.* at *5 ("'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs.'") (emphasis in original) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). Moreover, Equifax and TransUnion have offered declarations attesting that producing the data would require a number of their employees to take time out from performing their usual duties to locate and format the data, a process that would take months.

(ECF 456-3, Griggs Decl. ¶¶ 4-6; ECF 456-4, Williams Decl. ¶¶ 7, 11.) Given this burden, the respondents' status as non-parties, the fact that the universe of available data is small and plaintiffs have FICO's international data, the Court denies plaintiffs' motion.

**SO ORDERED** **ENTERED: October 3, 2025**

M. David Weisman

**M. David Weisman**
**United States Magistrate Judge**