IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|   |   |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION RELATED CASES | ) ) ) ) ) No. 20-cv-2114<br><br>Magistrate Judge M. David Weisman |

**ORDER**

Before the Court is FICO's motion for a protective order. For the reasons set forth below, the Court grants the motion [ECF 592].

**Legal Standard**

Federal Rule of Civil Procedure 26(c) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by, inter alia, forbidding or limiting the scope of the discovery. "The burden to show good cause is on the party seeking the protective order," *Johnson v. Jung*, 242 F.R.D.481, 483 (N.D. Ill. 2007) (citing *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994); *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 440 (N.D. Ill. 2006)), and it must do so with "specific facts." *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (citing *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300, 303 (N.D. Ill. 1993)).

**Discussion**

After plaintiffs served document production requests on TransUnion and Equifax, and the credit bureaus responded, the parties negotiated a set of search terms to be run on FICO's custodial files. (ECF 606 at 2.) FICO applied those terms, which the parties refer to variously as the June searches or the 6/24 searches, to the files of twelve custodians over a ten-year period, which yielded 826,000 documents for FICO to review. (ECF 593 at 1.) In September 2024, FICO discovered an additional set of 440,000 documents that needed to be reviewed. (*Id.*; ECF 606 at 3.) Because FICO had already run the 6/24 search terms on the group of 826,000 documents, it knew that the terms generated many false positives. (ECF 593 at 1-2.) As a result, and in light of an impending substantial completion deadline, the parties agreed to a revised set of searches, the 9/10 or September searches, for the 440,000 documents that awaited review. (*Id* at 3.) After performing both the 6/24 and 9/10 searches, FICO has produced 350,000 documents to plaintiffs. (*Id.*)

Recently, FICO discovered that several sources of custodial information had not been searched, including (a) certain custodial email that was collected for the 2017 litigation with TransUnion; (b) certain archived data, known as "CrashPlan" data; and (c) certain additional custodial email and OneDrive data that was not previously searched. (*Id.* at 3-4.) FICO tested both the 6/24 and 9/10 search terms on these documents. The 6/24 search terms generated 1,027,000

documents; the 9/10 search terms generated 298,000. (*Id.* at 4; *see* Deis Decl., Ex. 1) Moreover, FICO reviewed 2,000 documents that hit on the 6/24 terms but not the 9/10 terms and determined that 95% of those documents are irrelevant or not responsive to plaintiffs' requests. (*Id.* at 6.) FICO argues that requiring it to review the universe of documents that hit on both searches, at a cost of more than a million dollars, only to produce five percent of them is unduly burdensome and not proportional to the needs of the case. (*Id.* at 6-7.)

Plaintiffs argue that, but for FICO's negligence in marshalling its own data, FICO would have used the 6/24 search terms negotiated by the parties for the three "new" sources of information. In their view, "[t]his Motion is FICO's audacious attempt to renege on an agreement that has been in place for almost a year and half to avoid the consequences of its mistake." (ECF 606 at 1.) Plaintiffs say that FICO should "conduct a privilege screen on the universe of outstanding documents and produce all documents that hit on [the 6/24 and 9/10] search strings that are not screened out" so "Plaintiffs could begin immediate review of the corpus of documents initially provided and FICO would need to conduct a review of only those screened documents." (ECF 606-10, Ex. I, 10/16/25 Email from Pls. to FICO.)

Plaintiffs are understandably frustrated that FICO has "discovered" sources of data that still need to be searched. But FICO's sloppy data gathering is not a reason to use search terms that are demonstrably overbroad. (*See* ECF 593 at 4-7.) It makes little sense to require FICO to run the 6/24 search terms on the "new" data when its analyses of those terms versus the 9/10 terms on the "old" data showed that more than 95% of the documents that hit only on the 6/24 terms are not responsive to plaintiffs' requests. (*Id.* at 6.) The amount of time and money that FICO would have to expend needlessly culling and reviewing nonresponsive documents if it were required to use the 6/24 terms would be unduly burdensome for FICO and would not be proportional to the needs of the case.

Further, the discovery issue presented here is not governed by a court order that the parties negotiated, and a court entered. And, while the parties discuss "an agreement," there is no formal, comprehensive document presented allegedly containing such an agreement. (*Cf.* ECF 595; ECF 606 (Attachments 1-10).) Given that set of circumstances, this dispute is informed by the concept of proportionality in Rule 26(b). As explained *supra*, given the cost and time associated with plaintiffs' requested search versus the marginal relevant production, considerations of proportionality do not justify plaintiffs' demands. Accordingly, the Court grants FICO's motion. FICO must use the 9/10 search terms, to complete its custodial reviews from the time period 2013 forward for those documents that have been recently discovered.

**SO ORDERED.**  **ENTERED: December 3, 2025**

**M. David Weisman**
**United States Magistrate Judge**