**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | |
|---|---|
| *In re FICO Antitrust Litigation* | Case No. 20-cv-02114 |
| *This document relates to:* | Honorable April M. Perry |
| ALL ACTIONS | Magistrate Judge M. David Weisman |

**<u>VANTAGESCORE SOLUTIONS, LLC'S MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE WEISMAN'S ORDER (DKT. 613)</u>**

Dated: December 15, 2025

> Sabrina Rose-Smith
> GOODWIN PROCTER LLP
> 1900 N Street NW
> Washington, D.C. 20036
> Tel.: 202.346.4000
> SRoseSmith@goodwinlaw.com
>
> *Counsel for Non-Party Movant*
> *VantageScore Solutions LLC*

**INTRODUCTION**

Non-party VantageScore Solutions, LLC ("VantageScore") respectfully moves for partial reconsideration of Magistrate Judge Weisman's December 1, 2025 Order (Dkt. 613) (the "December 1 Order") granting in part and denying in part Plaintiffs' motion to compel VantangeScore to comply with their requests for production of documents ("RFPs"). Specifically, VantageScore requests that the Court limit VantageScore's production of Federal Housing Finance Agency ("FHFA") documents in response to RFP 2 to only the model performance assessment documents.

VantageScore submitted documents to FHFA in connection with the proposed rule to allow Fannie Mae and Freddie Mac to use VantageScore credit scores to evaluate credit risks in connection with mortgages. *See* 83 Fed. Reg. 65575, 65575-65579 (Dec. 21, 2018); 84 Fed. Reg. 41886, 41906-41907 (Aug. 19, 2019). VantageScore's submission included model performance assessment and monitoring data, such as VantageScore 4.0 annual model performance assessment results and quarterly model performance tracking results, which Plaintiffs have argued are relevant to rebut FICO's claim that FICO holds a monopolistic market share because it offers a superior product. However, VantageScore's submission also contained highly confidential business documents, including internal corporate policies and procedures regarding VantageScore's security controls and disaster recovery plans, and user testimonials that VantageScore agreed with users to provide only in connection with VantageScore's application to Fannie Mae and Freddie Mac. The submission also included highly confidential and competitively sensitive technical detail regarding VantageScore's proprietary credit score model, including details regarding the model's development and how the model is tested and trained. VantageScore submitted certain of these materials with the understanding that its confidential and proprietary information would be protected from public disclosure. *See* FHFA, Credit Score Request for Input (Dec. 20, 2017) at

2

3.8. VantageScore does not share this information with the general public, and in particular, the security controls and model testing and development details constitute competitive differentiators for the company.

Plaintiffs assert that they seek documents comparing the performance of the VantageScore model and FICO, in order to rebut "FICO's arguments that VantageScore's growth has been limited because it offers an inferior product, not because of FICO's anticompetitive conduct." Dkt. 314-1 at 7. VantageScore respectfully submits that the Court should reconsider its December 1 Order to limit production in response to RFP 2 to only those documents submitted to FHFA which evidence how VantageScore's model performs, and particularly how the model performs in comparison to FICO, thereby providing Plaintiffs with the evidence necessary for this litigation while protecting the highly sensitive and proprietary information that enables VantageScore to compete.

## BACKGROUND

### I. Plaintiffs' Antitrust Lawsuit Against FICO.

Direct Purchaser and Indirect Purchaser Plaintiffs (collectively "Plaintiffs") sued FICO under the Sherman Act and various state antitrust and consumer protection laws alleging that FICO engaged in anticompetitive conduct to eliminate competitors in the business-to-business credit-scoring market ("B2B market"). Dkts. 184-85. Plaintiffs allege that FICO has "possessed a monopoly on credit-scoring algorithms since the mid-1970s" and maintains its monopoly in the B2B market through anticompetitive conduct dating back to VantageScore's 2006 formation. *See* Dkts. 184 ¶¶ 60, 85-86; 185 ¶¶ 72, 100-101. According to Plaintiffs, "[FICO's] monopoly in the B2B Credit Score Market has given it the power to control prices and impose monopoly rents." Dkts. 184 ¶ 67; 185 ¶ 82.

3

**II.    Plaintiffs Moved to Compel VantageScore to Produce Documents.**

In January 2024, Plaintiffs issued a non-party subpoena to VantageScore, and in July 2024, Plaintiffs moved the Court to compel VantageScore to produce documents responsive to RFPs 1-4, 6-7, 9, and 11-20. Dkt. 314-1. On December 1, 2025, the Court granted in part and denied in part Plaintiffs' Motion to Compel. Dkt. 613. In the December 1 Order, the Court correctly denied Plaintiffs' motion with respect to RFPs 1, 3-4, 6-7, 9, and 11-20. *Id*. The Court granted Plaintiffs' motion to compel with respect to only RFP 2, which requests, in part: "submissions. . . [to] government agencies and staff; executive branch officials and staff; and government-sponsored enterprises and their representatives regarding VantageScores." *Id.* at 1. In their Motion to Compel, Plaintiffs' explained that RFP 2 sought "materials VantageScore submitted to the Federal Housing Finance Agency to persuade it to allow Fannie Mae and Freddie Mac to use VantageScores to assess credit risk for mortgages," including specifically "information about the benefits of VantageScores over FICO Scores." Dkt. 314-1 at 7. As a result, the Court ordered that VantageScore produce the documents from its FHFA submission.

## LEGAL STANDARD

To prevail, a party seeking reconsideration must demonstrate one of the following: "(1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Merix Pharm. Corp. v. EMS Acquisition Corp.*, No. 09 C 5871, 2010 WL 11711079, at *1 (N.D. Ill. Sept. 30, 2010). "While a motion to reconsider should be a rare event," courts in the Seventh Circuit have acknowledged that "it is valuable where … the court has made an error not of reasoning but of apprehension." *Vesey v. Envoy Air, Inc.*, No.

418CV04124SLDJEH, 2019 WL 13292941, at \*2 (C.D. Ill. Aug. 29, 2019); *see also Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (noting the "valuable function" of a motion for reconsideration and "the utility of the motion to reconsider to the misunderstood litigant").

## ARGUMENT

**III.     The Court has Made an "Error of Apprehension" Regarding the Relevance of the Highly Sensitive and Confidential Documents Encompassed by RFP 2.**

VantageScore respectfully submits that the Court may have made an error of apprehension regarding the relevance of the highly sensitive and confidential documents encompassed by RFP 2. In the December 1 Order, the Court concluded that the requested RFP 2 materials "contain information about the benefits and performance of VantageScore, information plaintiffs contend is relevant to FICO's assertion that VantageScore's growth has been limited because it has an inferior product, not because of FICO's allegedly anticompetitive conduct." Dkt. 613 at 2. While that characterization is accurate as to some documents VantageScore provided to FHFA, however the documents VantageScore provided to FHFA contain substantially more than just information on how the VantageScore model performs.

To aid the Court's understanding, the documents produced to FHFA fall into the following four categories:

- o   Highly Sensitive Documents Concerning the VantageScore Model's Use of Data: These documents include the most recent model development documents for VantageScore 4.0, as well as model assessment documents which contain proprietary data and information from each credit bureau. They do not assess how the model performs overall or compared to FICO.

o Documents Concerning VantageScore's Model Performance Results: These documents include both annual model performance assessment results and quarterly performance tracking results. *As VantageScore shows below, these are the only documents in the FHFA submission that provide the information Plaintiffs claim they need to rebut FICO's arguments.*

o Business Continuity Documents: These documents include VantageScore policies and procedures concerning incident response, disaster recovery, cybersecurity risk protections and internal procedures for testing the VantageScore model.

o Pricing and Relevant Market Documents: This category consists of one document concerning newly scorable consumers and VantageScore's view on potential mortgage opportunity sizing.

According to Plaintiffs, the crux of their case is that: (i) "FICO is the dominant player in the relevant credit-scoring market, DPAC," (ii) "FICO undertook a decades-long campaign of anticompetitive conduct designed to drive VantageScore, its only significant competitor, out of business;" and (iii) "VantageScore's product is superior to FICO's and would have been more successful but for FICO's anticompetitive conduct." Dkt. 314-1 at 5. The first, third, and fourth categories of documents produced to FHFA are highly sensitive and ultimately not relevant to Plaintiff's antitrust claims against FICO. VantageScore requests that the court reconsider granting Plaintiffs' motion to compel as to RFP 2, and instead order VantageScore to produce only the second category of documents responsive to RFP 2 that are evidence of how the VantageScore model performs.

a. **The Evidence Plaintiffs are Targeting via RFP 2 Can be Satisfied by Documents Concerning VantageScore's Model Performance.**

In their Motion to Compel, Plaintiffs explain that "[r]equest No. 2 seeks, primarily, materials VantageScore submitted to the Federal Housing Finance Agency to persuade it to allow Fannie Mae and Freddie Mac to use VantageScores to assess credit risk for mortgages – a use for which only FICO Scores were previously authorized." Dkt. 314-1 at 7. Plaintiffs acknowledge that "VantageScore submitted, among other things, information about the benefits of VantageScore [credit scores]," information which is "relevant to rebutting FICO's arguments that VantageScore's growth has been limited because it offers an inferior product, not because of FICO's anticompetitive conduct." Dkt. 314-1 at 7.

VantageScore submits that the following documents from its FHFA submission will satisfy Plaintiffs' stated need for RFP 2:

- o 2019 VantageScore 4.0 Model Performance Assessment Results
- o 2020 VantageScore 4.0 Model Performance Assessment Results
- o VantageScore 4.0 Model Performance Tracking Results — Q1 2021 Results (May 2021)
- o VantageScore 4.0 Model Performance Tracking Results — Q2 2021 Results (July 2021)
- o VantageScore 4.0 Model Performance Tracking Results — Q3 2021 Results (Oct. 2021)

These documents contain information about the performance of VantageScore's model. The information contained in these documents is or has been previously made publicly available by VantageScore. Put another way, with the disclosure of these documents from the FHFA submission, Plaintiffs have sufficient evidence regarding VantageScore's product performance, including in comparison to FICO, without compromising VantageScore's competitive position in the marketplace.

7

IV. **VantageScore Should Not Be Required to Disclose Documents Concerning its Model's Development and Use of Proprietary Data Sets from the Bureaus**

VantageScore's submission to FHFA included details regarding VantageScore's model that are proprietary, highly sensitive, and should not be disclosed in this litigation. These documents include the development documents for VantageScore 4.0. Critically, they do not discuss how the VantageScore model performs overall or how it performs in comparison to FICO. These documents reveal the inner workings of the VantageScore model and constitute the type of competitive information that "would likely be of tremendous value to a competitor," the disclosure of which in this litigation would place VantageScore at substantial competitive risk. *See In re eBay Seller Antitrust Litig.*, No. C09-0735RAJ, 2009 WL 10677051, at *4 (W.D. Wash. Aug. 17, 2009) (finding Plaintiffs' request for competitively sensitive documents sought to "peruse the highly proprietary core of Amazon's strategic thinking about its business" and "[n]o savvy competitor would voluntarily release the documents Plaintiffs request"). VantageScore would be at risk of suffering significant harm if the inner workings of its business were revealed to anyone associated with its primary competitor, FICO. Additionally, the development details behind VantageScore's model are not necessary for Plaintiffs to prove their claims that FICO has engaged in anticompetitive conduct.

a. **VantageScore's Business Continuity Documents are not Relevant to Plaintiffs' Antitrust Case and are Highly Sensitive.**

VantageScore also submitted certain business continuity documents to FHFA, which are both confidential and not relevant to Plaintiffs' claims. These documents include internal operational documents, such as corporate policies and procedures regarding VantageScore's security controls, disaster recovery plans, and audit procedures. Additionally, VantageScore submitted user testimonials that VantageScore agreed with users to provide only in connection with VantageScore's application to Fannie Mae and Freddie Mac. These documents reflect

VantageScore's subjective internal assessments of its own model's performance and operational capabilities, and have no bearing on whether Plaintiffs can establish anticompetitive conduct by FICO. The Court has previously held, when it denied both FICO's and Plaintiffs' requests for documents regarding how VantageScore operates and aspects of VantageScore's relationship with the credit bureaus, that VantageScore's "confidential financial information will not shed light on whether FICO has acquired or maintained monopoly power in the market." Dkt. 613 at 3; Dkt. 411 at 2. These business continuity documents are akin to confidential financial information, and are not relevant to Plaintiffs' claims.

Additionally, these documents should be protected from disclosure due to the risk that threat actors could gain access to a credit scoring company's business continuity plans for improper purposes. *See DeHate v. Lowe's Home Centers, LLC*, 2020 WL 7084551, at *4 (C.D. Cal. Oct. 8, 2020) (granting defendant's motion for protective order as to confidential documents "reflecting defendant's policies and procedures" given that they "contain sensitive information, which if disclosed to the public could harm defendant's competitive advantage and lead to theft or other undesirable acts").

## V. VantageScore's Document Concerning the Market of Newly Scorable Consumers is Competitively Sensitive, and a Category of Document the Court has Already Deemed Not Relevant to Plaintiffs' Case.

The final category of information provided to FHFA regarding VantageScore's view of the market, consists of a single document regarding the potential mortgage opportunity of newly scorable consumers (the "Newly Scorable Consumers" document). This document contains highly confidential and commercially sensitive information reflecting VantageScore's business decision-making and marketing plans, which are precisely the types of sensitive strategic materials that courts recognize should be protected from disclosure to competitors. As recognized in *In re eBay Seller Antitrust Litigation*, documents revealing "marketing plans, or its assessments of the

9

marketing plans of its competitors, are plainly the sort of information [a competitor] would not disclose." 2009 WL 10677051 at *4.

Producing this document would be inconsistent with the Court's reasoning in the December 1 Order. The Newly Scorable Consumers document encapsulates VantageScore's views on the parameters of the mortgage market opportunity and the competitive landscape. As VantageScore previously argued, several courts have found that a competitor's views on the relevant market are irrelevant for antitrust claims. *See In re eBay*, 2009 WL 10677051, at *5 ("An assessment of the relevant markets for Plaintiffs' antitrust case is an objective inquiry, not one that depends on Amazon's views on the subject.") (*citing ACT, Inc. v. Sylvan Learning Sys., Inc.*, Misc. No. 99-63, 1999 WL 305300, at *2 (E.D. Pa. May 14, 1999) ("Nor does ACT offer any argument for why ASI's 'perspective' on the market in particular is relevant or necessary to ACT's claims.")). The Court adopted the reasoning of *In re eBay*, noting that VantageScore's views on the parameters of the relevant market and the competitive landscape "have little, if any bearing, on the determination of the relevant market." Dkt. 613 at 5. The Newly Scorable Consumers document reflects VantageScore's subjective view of the mortgage market opportunity and its internal assessment of potential market segments—precisely the type of competitor perspective that the Court found has "little, if any bearing" on determining the relevant market based on the "commercial realities of the industry." Accordingly, VantageScore respectfully requests that the Court reconsider its order compelling production of this document.

## VI.  A Confidentiality Order is Insufficient to protect VantageScore's Highly Competitively Sensitive Information

VantageScore understands the Court's view that the protective order entered in this case should be sufficient to protect VantageScore's competitively sensitive information, but due to the unique competitive relationship between VantageScore and FICO, and the practical limitations of

the protection afforded by a "Highly Confidential – Outside Attorneys' Eyes Only" provision ("AEO"), the risk of disclosure of VantageScore's highly commercially and competitively sensitive information cannot be eliminated through the Confidentiality Order. First, the parties' history and the market in which they compete are highly relevant to the risks facingVantageScore. Historically, FICO has dominated the credit scoring industry, while VantageScore has only recently gained sufficient market traction to pose a competitive threat to FICO's market dominance. Given the limited number of participants within the credit scoring market, disclosure of the highly sensitive documents described above could seriously impair VantageScore's ability to compete fairly. Placing such competitively sensitive information within reach of VantageScore's primary competitor—even if provided only to FICO's experts or used at trial—is not warranted given the parties' antagonistic history, as the consequences of any breach would be catastrophic.

VantageScore's designation of material as AEO would not prevent disclosure of such information to FICO-affiliated individuals other than counsel who are involved in the litigation. For example, the expert reports in this matter will likely incorporate highly confidential VantageScore materials—whether directly through quotation or summary, or indirectly in the experts' analysis—making it difficult to exclude that information from the expert reports that FICO-affiliated individuals will necessarily review as part of the litigation, and which will ultimately be filed publicly. While in many cases courts can rely on AEO provisions and the good faith of counsel to protect competitively sensitive information, "[a]n antitrust action does not come with an automatic entitlement to force non-parties to reveal their competitive thinking." *In re eBay*, 2009 WL 10677051, at *5-6. Modification of the Confidentiality Order would also be insufficient, as "Rule 45 does not require the court to permit the disclosure of competitively

11

sensitive information even under a heighted confidentiality order or a protective order." *Id.* at 4

(c*iting Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("A

protective order is no substitute for establishing relevance or need.")).

A protective order would also be insufficient to protect VantageScore's confidential

information and would only increase the burden on the nonparty. A protective order would

require VantageScore to either (i) rely upon the filing party to adequately advocate to keep such

material sealed on its behalf; or (ii) take upon itself the burden of diligently monitoring the case

as it develops so that it can intercede as necessary to ensure none of its commercially sensitive

information is disclosed. Neither solution is tenable or an appropriate burden for a non-party.

*Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 530–31 (D. Del. 2002);

*see also In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust*

*Litigation*, Case No. 17-md-2785-DDC-TJJ, 2018 WL 3818914, at *4-*5 (D. Kans. Aug. 10,

2018) (finding existing protective order inadequate to protect a nonparty even though the Court

was "well aware of the strength of the protective order in th[e] case, and without casting

aspersions on the good faith of any party's adherence to its terms").

Finally, the Court should not force VantageScore to produce these confidential government

communications due to the potential chilling effect on the willingness of persons to engage in

future submissions to FHFA. *See, e.g.*, *Int'l Action Ctr. v. U.S.*, 207 F.R.D. 1, 3 (D.D.C. 2002)

(granting motion for protective order prohibiting discovery of information "courts have long

recognized…is protected by the First Amendment…[including] past political activities").

## CONCLUSION

For these and the foregoing reasons, VantageScore requests that this Court (i) reconsider

its December 1, 2025 Order; and (ii) order that VantageScore limit its production of documents in

response to RFP 2 to only VantageScore performance documents, including those which evidence

how VantageScore's model performs in comparison to FICO.

Dated: December 15, 2025            Respectfully submitted,

           */s/ Sabrina Rose-Smith*

           Sabrina Rose-Smith
           GOODWIN PROCTER LLP
           1900 N Street NW
           Washington, D.C. 20036
           Tel.: 202.346.4000
           SRoseSmith@goodwinlaw.com

           *Counsel for Non-Party Movant*
           *VantageScore Solutions LLC*

## <u>CERTIFICATE OF SERVICE</u>

I, Sabrina Rose-Smith, an attorney, hereby certify that on December 15, 2025, I caused a

true and correct copy of the foregoing to be filed and served electronically via the Court's

CM/ECF system.  Notice of this filing will be sent by e-mail to all parties by operation of the

Court's electronic filing system or by mail to anyone unable to accept electronic filing as

indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's

CM/ECF system.


<u>/s/ Sabrina Rose-Smith</u>

Sabrina Rose-Smith
GOODWIN PROCTER LLP
1900 N Street NW
Washington, D.C. 20036
Tel.: 202.346.4000
SRoseSmith@goodwinlaw.com