| | |
|---|---|
| *In re FICO Antitrust Litigation* | Case No. 20-cv-02114 |
| *This document relates to:*<br>ALL ACTIONS | Honorable April M. Perry<br><br>Magistrate Judge M. David Weisman |

**FAIR ISAAC CORPORATION'S MOTION FOR RECONSIDERATION OF DISCOVERY RULING REGARDING VANTAGESCORE SOLUTIONS, LLC'S LLC AND IP LICENSING AGREEMENTS**

Dated: April 13, 2026

Britt M. Miller
J. Gregory Deis
Matthew D. Provance
Megan E. Stride
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
(312) 701-7711—Facsimile
bmiller@mayerbrown.com
gdeis@mayerbrown.com
mprovance@mayerbrown.com
mstride@mayerbrown.com

*Counsel for Defendant*
*Fair Isaac Corporation*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND FACTUAL BACKGROUND ............................................................... 1

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 5

I.      THE COURT SHOULD RECONSIDER ITS RELEVANCE DETERMINATION BASED ON THE ROLE THAT THE LLC AND IP AGREEMENTS PLAYED IN THE VANTAGESCORE LITIGATION. ................................................................. 5

II.     THE FACT THAT THE LLC AND IP AGREEMENTS WERE MERELY DESIGNATED "CONFIDENTIAL" WHEN PRODUCED IN THE VANTAGESCORE LITIGATION AND ADMITTED INTO EVIDENCE DURING TRIAL, IN OPEN COURT, ALSO WEIGHS IN FAVOR OF THEIR PRODUCTION. ..................................................................................................... 9

CONCLUSION .................................................................................................................... 10

**Cases**

*Abbott Labs. v. Airco, Inc.*,
    1986 WL 1408 (N.D. Ill. Jan. 13, 1986) ...................................................................7

*Amerisure Mut. Ins. Co. v. Iron Mountain Info. Mgmt., LLC*,
    2020 WL 5085373 (N.D. Ill. May 7, 2020) .............................................................7

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*,
    906 F.2d 1185 (7th Cir. 1990) ................................................................................5

*Exelon Generation Co., LLC v. Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO*,
    2009 WL 10738369 (N.D. Ill. Dec. 22, 2009) .........................................................9

*Fair Isaac Corp. v. Equifax Inc.*,
    2008 WL 623120 (D. Minn. Mar. 4, 2008) ...........................................................2, 6

*Fair Isaac Corp. v. Experian Info. Sols. Inc.*,
    645 F. Supp. 2d 734 (D. Minn. 2009) ...................................................................2, 6

*Fair Isaac Corporation et al. v. Experian Information Solutions Inc. et al.*,
    No. 06-CV-4112 (D. Minn.) ........................................................................... *passim*

*FICO v. Experian Info. Sols., Inc.*,
    711 F. Supp. 2d 991 (D. Minn. 2010) ......................................................................3

*Hagenbuch v. Sonrai Sys.*,
    130 F. Supp. 3d 1213 (N.D. Ill. 2015) .....................................................................5

*Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension
    Tr. Fund*,
    2019 WL 454324 (N.D. Ill. Feb. 5, 2019) ...............................................................7

*N. Am. Sci. Assocs., LLC v. Conforti*,
    2025 WL 692128 (D. Minn. Mar. 4, 2025) ............................................................10

*Petit v. City of Chicago*,
    1999 WL 66539 (N.D. Ill. Feb. 8, 1999) ..................................................................5

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ...................................................................................................3

*Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*,
    2011 WL 1831597 (D. Minn. May 12, 2011) .........................................................10

*Sun Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*,
  2021 WL 12305775 (N.D. Ill. Sept. 23, 2021) ...........................................................................5

*U.S. Futures Exchange, LLC v. Bd. of Trade of the City of Chi.*,
  953 F.3d 955 (7th Cir. 2020) ....................................................................................................3

**Other Authorities**

Fed. R. Civ. P. 54(b) ....................................................................................................................5, 9

## INTRODUCTION AND FACTUAL BACKGROUND

Fair Isaac Corporation ("FICO") respectfully moves for reconsideration of a prior discovery ruling regarding the relevance of two agreements that are related to the formation and operation of non-party VantageScore Solutions, LLC ("VantageScore").[1] The first agreement is VantageScore's Limited Liability Company Agreement (the "LLC Agreement"). The second agreement is an Intellectual Property Agreement between VantageScore and the three national Credit Bureaus (Equifax, Experian, and TransUnion) (the "IP Agreement").

At the outset of discovery, FICO issued a subpoena to VantageScore for production of the LLC and IP Agreements (collectively, "Agreements"). When the Court ruled on VantageScore's motion to quash the subpoena and FICO's motion to compel, the Court found that the Agreements were not relevant to Plaintiffs' claim that FICO has acquired or maintained monopoly power and denied FICO's motion. 4/7/2025 Order, ECF No. 411 at 2.[2]

FICO moves to reconsider this ruling because there is an additional basis for the relevance of the Agreements. Specifically, the Agreements were part of the record in a prior litigation between FICO, VantageScore, and the Credit Bureaus captioned *Fair Isaac Corporation et al. v. Experian Information Solutions Inc. et al.*, No. 06-CV-4112 (D. Minn.) (the "VantageScore Litigation"). The Agreements were produced in discovery in the VantageScore Litigation, cited by the parties in two rounds of summary judgment motions, and admitted into evidence at trial.[3] The

---

[1] FICO proposes the following briefing schedule: VantageScore and the Credit Bureaus' Opposition shall be due on April 27, 2026 (14 days); FICO's reply thereto shall be due on May 4, 2026 (7 days). Counsel for Plaintiffs as well as VantageScore and the Credit Bureaus (Experian, Equifax, and TransUnion) indicated that they do not oppose this schedule.

[2] Plaintiffs separately issued a subpoena to VantageScore for the LLC and IP Agreements and moved to compel their production. The Court denied this aspect of Plaintiffs' motion and found that the Agreements were not relevant for the same reasons stated in the 4/7/2025 Order. 12/1/2025 Order, ECF No. 613 at 3.

[3] Declaration of Matthew Provance ("Provance Decl.") ¶¶ 3-7 & Exs. 1-6.

record from the VantageScore Litigation—including the LLC and IP Agreements—is relevant to the current lawsuit because Plaintiffs allege that FICO initiated the VantageScore Litigation without probable cause, solely to inflict competitive harm on VantageScore. *See* ECF No. 184 (DPP Compl.) ¶¶ 87-94; ECF No. 185 (IPP Compl.) ¶¶ 102-109. To be clear, FICO disputes this claim and expects to use the LLC and IP Agreements to help demonstrate that the VantageScore Litigation was far from groundless or lacking probable cause. FICO asserted several claims in that lawsuit, including antitrust claims alleging that the Credit Bureaus' joint ownership and control of VantageScore violated the Sherman Act, trademark claims, and others. The LLC and IP agreements reflect facts about VantageScore's structure and relationship with the Credit Bureaus that FICO relied on at both summary judgment and trial. FICO's antitrust claims withstood the defendants' first summary judgment motion, which the district court denied after finding that "there are genuine issues of material fact in the current record as to whether the VantageScore joint venture is anticompetitive and whether Fair Isaac has suffered or is likely to suffer antitrust injury." *Fair Isaac Corp. v. Equifax Inc.*, 2008 WL 623120, at *11 (D. Minn. Mar. 4, 2008).

FICO's antitrust claims were later dismissed before trial, but the district court based its dismissal on a finding that FICO lacked standing, not that FICO had no evidence to support its claims. Indeed, the district court held: "There may be a colorable claim that VantageScore constitutes an illegal presence in the market because of the purpose behind its formation (aiming to eliminate FICO scores), the parties involved in its formation, the sharing of information during its formation, and the alleged agreement by the Credit Bureaus to eliminate their in-house scores and not to compete on prices of VantageScore." *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, 645 F. Supp. 2d 734, 750-51 (D. Minn. 2009). FICO's trademark claims survived summary judgment and were tried to a jury. *See id.* at 756-61. Both the LLC and IP Agreements were admitted into

evidence at trial and became publicly available judicial records. Provance Decl. ¶¶ 5-7 & Exs. 5-6. And although FICO did not ultimately prevail at trial, the district court denied the defendants' post-trial motion for attorney's fees, holding that FICO's claims (while ultimately unsuccessful) were neither "groundless" nor "unreasonable." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 711 F. Supp. 2d 991, 1007, 1010-11 (D. Minn. 2010).

Resolving Plaintiffs' allegations that FICO initiated the VantageScore Litigation without probable cause will require an inquiry into the objective basis for filing the litigation.[4] The LLC and IP Agreements are relevant to that inquiry because the parties and the court relied on the Agreements in pretrial motions and orders, and the Agreements were introduced into evidence at trial. Plaintiffs have made FICO's reasons and basis for bringing the VantageScore Litigation an issue in this litigation, so FICO is entitled to defend itself on this front. To do so, FICO should be able to use the same documents and evidence that were used to evaluate its claims in the VantageScore Litigation itself, including the LLC and IP Agreements.

As the Court is aware, Plaintiffs served discovery requests on both FICO and VantageScore to produce documents from the VantageScore Litigation record. *See* 12/1/2025 Order, ECF No. 613 at 2; *see also* Provance Decl. ¶ 8. The LLC and IP Agreements, among other filings, are unequivocally responsive to these requests. The Court sustained VantageScore's objection to

---

[4] Litigation is ordinarily immune from antitrust liability unless it qualifies as a "sham" according to a two-part test. "First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under [the *Noerr-Pennington* doctrine], and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993) (cleaned up); *see also U.S. Futures Exchange, LLC v. Bd. of Trade of the City of Chi.*, 953 F.3d 955, 963 (7th Cir. 2020).

producing the record to Plaintiffs and held that Plaintiffs could obtain these documents from FICO instead. *See* 12/1/2025 Order, ECF No. 613 at 2. Indeed, FICO had already collected the record from its prior counsel and was preparing to make a production to Plaintiffs. Provance Decl. ¶ 15. Before it could make the production, however, VantageScore and the Credit Bureaus objected to FICO producing the LLC and IP Agreements. *Id.* ¶ 16. They did so based on the protective order in the VantageScore Litigation, which allowed a party to object to the later production of any document produced with a confidentiality designation. *See* VantageScore Litigation, ECF No. 1134. Plaintiffs then met and conferred with VantageScore and the Credit Bureaus for several weeks regarding their objections. *Id.* ¶ 17. On December 31, 2025, counsel for VantageScore and the Credit Bureaus informed FICO that Plaintiffs had withdrawn their request for FICO to produce the LLC and IP Agreements due to these non-parties' objections. *Id.* FICO conferred with VantageScore and the Credit Bureaus on January 23, 2026. *Id.* ¶ 18. Following the meet and confer, FICO proposed as a compromise to produce the Agreements with certain redactions, which VantageScore and the Credit Bureaus rejected. *Id.* ¶ 19. After the exchange of additional correspondence, the parties confirmed on April 9, 2026 that they had reached an impasse. *Id.* ¶ 20.

FICO is now left in an untenable position. The LLC and IP Agreements are relevant based on the role they played in the VantageScore Litigation, responsive to Plaintiffs' discovery requests, and should be produced. There is also zero burden on any party other than FICO to produce the Agreements because FICO's outside counsel already has them. However, VantageScore and the Credit Bureaus objected to the production of the Agreements based on their confidentiality designations, and Plaintiffs eventually acquiesced to the objections. To resolve this dispute, FICO now moves for reconsideration of the Court's prior relevance determinations concerning the LLC

and IP Agreements and an order authorizing FICO to produce the documents as part of the VantageScore Litigation record requested by Plaintiffs.

## LEGAL STANDARD

Fed. R. Civ. P. 54(b) governs motions for reconsideration. The Court has discretion to grant a motion to reconsider if it has misunderstood a party, made its decision on grounds not presented to it, has made an error of apprehension, or if there has been a change in the controlling law or facts since the issue was submitted to the Court. *Hagenbuch v. Sonrai Sys.*, 130 F. Supp. 3d 1213, 1214 (N.D. Ill. 2015) (citing *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)). New information can provide a basis to reconsider a prior discovery ruling. *See, e.g.*, *Sun Chenyan v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, 2021 WL 12305775 at *2 (N.D. Ill. Sept. 23, 2021); *Petit v. City of Chicago*, 1999 WL 66539 (N.D. Ill. Feb. 8, 1999) (a district court "has inherent and discretionary authority to reconsider its discovery rulings and modify them in light of the circumstances of the case").

## ARGUMENT

**I.     The Court Should Reconsider Its Relevance Determination Based On The Role That The LLC And IP Agreements Played In The VantageScore Litigation.**

The Court previously held that the LLC and IP Agreements "will not shed light on whether FICO has acquired or maintained monopoly power in the market," and denied FICO's request for VantageScore to produce the Agreements. 4/7/2025 Order at 2. However, an additional basis for the relevance of the LLC and IP Agreements has arisen: the Agreements are part of the VantageScore Litigation record and were among the evidence evaluated by the district court and the jury when deciding the merits of the litigation. The Agreements are therefore relevant to Plaintiffs' disputed claim that the VantageScore Litigation lacked probable cause. The Court should reconsider its prior ruling and find that the Agreements are relevant on this basis.

As noted above, the LLC and IP Agreements were evidence that both sides cited in the VantageScore Litigation. FICO relied on the IP Agreement in its opposition to the defendants' early summary judgment motion related to FICO's antitrust claims. Provance Decl. Ex. 1 (FICO Br. at 34); *id.* at Ex. 1 (FICO Decl. at 2). Specifically, FICO cited the IP Agreement as evidence that the Credit Bureaus' joint ownership of VantageScore undermined their incentives to compete. *Id.* FICO prevailed on this motion, which supports FICO's position that its antitrust claims were not objectively baseless.

On the second round of summary judgment motions, the defendants cited both the LLC and IP Agreements to establish the details of VantageScore's structure, specifically, as the district court noted in its opinion, "[a]n agreement between the Credit Bureaus and the newly-formed VantageScore provided that each Credit Bureau pay a $300,000 annual licensing fee to VantageScore in exchange for global, royalty-free, perpetual, and irrevocable licenses for the use of the VantageScore scoring model." *Equifax*, 645 F. Supp. 2d at 740; *see* Provance Decl. Ex. 2 (Defendants Br. at 8); *id.* at Ex. 3 (Defendant Decl. at 140-44). Although the district court ruled as a matter of law that FICO lacked standing to pursue its antitrust claims, it credited FICO as raising "a colorable claim" that "VantageScore constitutes an illegal presence in the market[.]" *Equifax*, 645 F. Supp. 2d at 750-51. Again, as record evidence cited by the court in an opinion finding FICO's antitrust claims colorable, the Agreements are probative of FICO's objective basis for litigating those claims and therefore relevant to Plaintiffs' attempt here to dispute that basis.

The record also shows that the LLC and IP Agreements were relevant to FICO's trademark claims, which survived summary judgment and went to trial. In fact, both Agreements were admitted into evidence at trial, in open court. *See* Provance Decl. ¶¶ 5-7 & Exs. 4-6.

Just as the LLC and IP Agreements were relevant to the factual basis and resolution of the VantageScore Litigation, they are relevant now to Plaintiffs' allegations that the VantageScore Litigation was groundless and filed without probable cause. Indeed, "[f]acts which tend to prove or disprove the parties' respective assertions . . . are discoverable." *Abbott Labs. v. Airco, Inc.*, 1986 WL 1408 at *1 (N.D. Ill. Jan. 13, 1986). The LLC and IP agreements reflect important facts about VantageScore's structure and relationship with the Credit Bureaus that both sides argued at summary judgment and trial. And the fact that the defendants in the VantageScore Litigation also relied on the LLC and IP Agreements only further underscores that they are relevant to Plaintiffs' allegations. "Relevance in discovery is broader than relevance at trial; during discovery, 'a broad range of potentially useful information should be allowed' when it pertains to issues raised by the parties' claims." *Amerisure Mut. Ins. Co. v. Iron Mountain Info. Mgmt., LLC*, 2020 WL 5085373 at *3 (N.D. Ill. May 7, 2020) (quoting *Harris Davis Rebar, LLC v. Structural Iron Workers Loc. Union No. 1, Pension Tr. Fund*, 2019 WL 454324 at *1 (N.D. Ill. Feb. 5, 2019)). The court's reference to the IP Agreement in its opinion assessing FICO's antitrust claims as "colorable" removes any doubt that the Agreements were among the evidence that the court considered. Requiring FICO to defend the factual basis of the VantageScore Litigation in this case without permitting it to make the LLC and IP Agreements part of the record is unfairly prejudicial.

The Court's order denying Plaintiff's motion to compel VantageScore to produce the VantageScore Litigation record also weighs in favor of reconsideration. The Court denied that motion on the ground that "[P]laintiffs can obtain the documents requested . . . from FICO." 12/1/2025 Order, ECF No. 613 at 2. The Court's resolution of VantageScore's dispute with Plaintiffs assumed that the documents were relevant and could be produced by FICO—as they have been, with the exception of the Agreements and a few ancillary documents that are not in

dispute.[5] VantageScore pointed to FICO as the party who should produce the record from the VantageScore Litigation when it opposed Plaintiff's motion to compel. It should not be able to block FICO from producing documents from that record by disputing their relevance.

Further, the threshold for demonstrating relevance of the LLC and IP Agreements should be particularly low in these circumstances, where there is no burden on VantageScore or the Credit Bureaus to produce them. As noted above, FICO's outside counsel already has the Agreements in its possession and can produce them with the Court's approval.

Finally, FICO is timely bringing this motion. FICO did not obtain the VantageScore Litigation record from its former counsel until July 2025, when it requested the record to comply with Plaintiffs' discovery request. Provance Decl. ¶¶ 9-12.[6] Once FICO determined that the LLC and IP Agreements were responsive to Plaintiffs' request, FICO planned to produce the documents until VantageScore and the Credit Bureaus objected. First Plaintiffs, and then FICO, met and conferred with VantageScore and the Credit Bureaus and attempted to convince them to withdraw their objections. FICO apprised the Court of this issue in recent status reports (ECF Nos. 637 & 641) and moved with diligence to file this motion promptly after trying to resolve the dispute without motions practice. Under the circumstances, FICO filed this motion within a "reasonable time," in compliance with Rule 54(b). *Exelon Generation Co., LLC v. Loc. 15, Int'l Bhd. of Elec. Workers, AFL-CIO*, 2009 WL 10738369, at *2 (N.D. Ill. Dec. 22, 2009).

---

[5] VantageScore and the Credit Bureaus also objected to FICO's production of a small number of additional documents in the VantageScore Litigation record, many of which directly quote from the LLC and IP Agreements. FICO seeks only an order permitting the production of the LLC and IP Agreements, as the other documents are largely duplicative of the Agreements.

[6] FICO's former counsel was prohibited from sharing the file with FICO or its present counsel because it contained documents designated confidential under the protective order in the VantageScore Litigation. Provance Decl. ¶ 10. FICO petitioned the District of Minnesota to modify the order so that its current counsel could access and review the filings. *Id.* ¶ 11. The District of Minnesota modified the protective order on July 15, 2025, *see* VantageScore Litigation, ECF No. 1134, and FICO's current counsel received a set of files maintained by former outside counsel later that month. *Id.* ¶¶ 12-13.

**II.    The Fact That The LLC And IP Agreements Were Merely Designated "Confidential" When Produced In The VantageScore Litigation And Admitted Into Evidence During Trial, In Open Court, Also Weighs In Favor Of Their Production.**

VantageScore previously objected to the production of the LLC and IP Agreements on the grounds that the documents were highly confidential and competitively sensitive, and thus likely to result in competitive harm to VantageScore or the Credit Bureaus if produced. While the Court "appreciate[ed] VantageScore's concern about keeping its LLC agreement confidential," it emphasized that "there is a two-tiered confidentiality order in place, and the Court has no reason to believe that any attorney in this case would jeopardize his or her law license by violating the terms of that order." 1/28/2025 Order, ECF No. 386 at 1. To the extent that VantageScore or the Credit Bureaus continue to argue that the Agreements should not be produced in this litigation because they are highly confidential trade secrets, two points of history from the VantageScore Litigation are contrary to their arguments.

First, copies of the Agreements were produced in the VantageScore Litigation with a "Confidential" designation under the protective order in that case. Provance Decl. ¶ 14. Under the terms of that protective order, it was permissible for both outside counsel and the parties' business representatives to access and review the LLC and IP Agreements. *See* VantageScore Litigation, ECF No. 1134 at ¶ 5 (listing the persons who may access Confidential discovery, including eight officers and employees of each party subject to advance notice requirements). In other words, the Agreements were already subject to disclosure to designated FICO business representatives, not just FICO's counsel, under the governing protective order in that earlier litigation. FICO is unaware of any claims of competitive harm that resulted from this or otherwise by the designation of the LLC and IP Agreements as "Confidential" in the VantageScore Litigation.

Second, as noted above, both the LLC and IP Agreements were admitted into evidence at trial and became part of a presumptively public judicial record. *See* Provance Decl. ¶ 6 & Ex. 5

(11/3/2009 Trial Tr. 830:4 – 834:6) (admitting the IP Agreement into evidence as Exhibit 30); *see also id.* ¶ 7 & Ex. 6 (11/10/2009 Trial Tr. 1792:5-21) (admitting the LLC Agreement into evidence as Exhibit 65). No efforts were made to close the court, and witnesses were specifically questioned about the Agreements. *Id.* When exhibits, such as the Agreements in the VantageScore Litigation, are admitted at trial without any additional confidentiality protections, they become presumptively public notwithstanding the fact that they were designated confidential during discovery pursuant to a protective order. *See*, *e.g.*, *N. Am. Sci. Assocs., LLC v. Conforti*, 2025 WL 692128 at \*2 (D. Minn. Mar. 4, 2025) (quoting *Marden's Ark, Inc. v. UnitedHealth Grp., Inc.*, 534 F. Supp. 3d 1038, 1044 (D. Minn. 2021)) ("All documents properly filed by a litigant seeking a judicial decision are judicial records and are entitled to a presumption of public access."); *Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*, 2011 WL 1831597 at \*2 (D. Minn. May 12, 2011) (quoting *Rohrbough v. Hall*, 2010 WL 1998554, at \*1 (E.D. Mo. May 19, 2010)) (holding that "[the] presumption [of public access] applies with equal force in the face of a protective order, because once an otherwise confidential record is entered into evidence at trial, it becomes part of a presumptively public proceeding").

Despite this, FICO does not seek to disclose the LLC and IP Agreements publicly. It remains willing to produce the documents with a "Highly Confidential – Outside Attorneys Eyes Only" designation pursuant to the Agreed Confidentiality Order (ECF No. 199) in this litigation, which will give the documents a greater level of protection than they had in the VantageScore Litigation. That is sufficient to protect a non-party's confidentiality interests, as this Court has previously held. *See* 1/28/2025 Order, ECF No. 386 at 1.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should grant FICO's motion to reconsider and order the LLC and IP agreements to be produced. If it would be beneficial to the Court to hear argument on this motion, FICO is available at the Court's convenience.

Dated: April 13, 2026

Respectfully Submitted,

*/s/ Matthew D. Provance*
Britt M. Miller
J. Gregory Deis
Matthew D. Provance
Megan E. Stride
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606-4637
(312) 782-0600
(312) 701-7711—Facsimile
bmiller@mayerbrown.com
gdeis@mayerbrown.com
mprovance@mayerbrown.com
mstride@mayerbrown.com

*Counsel for Defendant*
*Fair Isaac Corporation*

**CERTIFICATE OF SERVICE**

I, Matthew D. Provance, an attorney, hereby certify that on April 13, 2026, I caused a true and correct copy of the foregoing **FAIR ISAAC CORPORATION'S MOTION FOR RECONSIDERATION OF DISCOVERY RULING REGARDING VANTAGESCORE SOLUTIONS, LLC'S LLC AND IP LICENSING AGREEMENTS** to be filed and served electronically via the court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF system.

/s/ *Matthew D. Provance*
Matthew D. Provance
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600
mprovance@mayerbrown.com