# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| *In re FICO Antitrust Litigation* | Case No. 1:20-cv-02114 |
| *This document relates to:* | Honorable April M. Perry |
| ALL ACTIONS | Magistrate Judge M. David Weisman |

## VANTAGESCORE SOLUTIONS, LLC'S OPPOSITION TO FAIR ISAAC CORPORATION'S MOTION FOR RECONSIDERATION OF DISCOVERY RULING REGARDING VANTAGESCORE SOLUTIONS, LLC'S LLC AND IP LICENSING AGREEMENTS

Dated: April 28, 2026

Sabrina Rose-Smith
Viona J. Harris
GOODWIN PROCTER LLP
1900 N Street NW
Washington, D.C.
Tel.: 202.346.4000
SRoseSmith@goodwinlaw.com
VHarris@goodwinlaw.com

*Counsel for Non-Party Movant
VantageScore Solutions, LLC*

VantageScore Solutions, LLC ("VantageScore") submits this opposition to Fair Isaac Corporation's ("FICO") Motion for Reconsideration of Discovery Ruling Regarding VantageScore Solutions, LLC's LLC and IP Licensing Agreements (Dkt 648) ("Motion").

## **INTRODUCTION**

Twice this Court has held that VantageScore's highly sensitive and competitive LLC and IP Agreements are not relevant to the claims against FICO in this matter. Specifically, in denying FICO's motion to compel these documents, this Court found that the Agreements "will not shed light on whether FICO has acquired or maintained monopoly power in the market." ECF No. 411. When Plaintiffs later sought to compel production of the same Agreements, this Court again reached the same conclusion finding them not relevant for the same reasons stated in the April 7 Order. ECF No. 613. Despite these clear rulings, FICO now asks the Court to revisit the issue for a third time under the guise of a purportedly "new" basis for relevance. This Court should reject this attempt and deny the Motion for several independent reasons.

First, FICO identifies no new facts that were unavailable when it filed its original motion to compel two years ago. ECF No. 271. FICO now contends that the Agreements are relevant to its defense against Plaintiffs' "sham litigation" allegations. But those allegations have been part of this case since the filing of the complaints on October 30, 2023. *See* ECF Nos. 184 ¶ 88; 185 ¶¶ 102-03. This argument was thus fully available to FICO at the time of its original motion. FICO's inexplicable failure to raise it earlier does not constitute a change in fact or law, nor does it justify reconsideration. Because FICO has not demonstrated any new evidence, intervening change in controlling law, or manifest error in the Court's prior rulings, its motion fails under Rule 54(b). *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) ("To prevail on a

1

motion for reconsideration under Rule 59, the movant must present either newly discovered evidence or establish a manifest error of law or fact.").

Second, even if the Court were to consider FICO's belated argument (it should not), it still fails on the merits. The remaining claims in this case are limited to Section 2 allegations concerning FICO's market power and purported exclusionary conduct. As this Court has already held, VantageScore's internal agreements do not bear on those issues. FICO's invocation of Plaintiffs' "sham litigation" theory does not change that analysis. This case is not a retrial of the prior litigation, and the Agreements are not necessary to assess whether FICO had probable cause to bring that case, which can be evaluated based on the pleadings, rulings, and outcomes already in the record.

Third, contrary to FICO's arguments, the Agreements remain highly confidential. As this Court has recognized, they contain core strategic and proprietary information, including VantageScore's governance, budget allocation, licensing structure, product development, and competitive strategy. ECF No. 411 at 2. The fact that the Agreements were admitted into evidence in a different case nearly two decades ago does not strip them of their confidentiality in this litigation. *Frerck v. John Wiley & Sons, Inc.*, 2012 WL 2127420, at *2 (N.D. Ill. June 12, 2012).

Finally, granting FICO's Motion would undermine both this Court's prior rulings and the discovery protections afforded to Non-party VantageScore. It would strip VantageScore of carefully negotiated confidentiality protections, force it to disclose highly sensitive information in a case in which it is not a party, and simultaneously require it to police the use of that information to prevent further disclosure—all based on a relevance theory that FICO could and

should have raised years ago. Consistent with its prior rulings, this Court should deny FICO's Motion in its entirety.

## BACKGROUND

On October 30, 2023, Direct Purchaser and Indirect Purchaser Plaintiffs (collectively "Plaintiffs") sued FICO under the Sherman Act and various state antitrust and consumer protection laws alleging that FICO engaged in anticompetitive conduct to eliminate competitors in the business-to-business credit-scoring market ("B2B market"). ECF Nos. 184-85. Plaintiffs allege that FICO has "possessed a monopoly on credit-scoring algorithms since the mid-1970s" and maintains its monopoly in the B2B market through anticompetitive conduct dating back to VantageScore's 2006 formation. *See* ECF Nos. 184 ¶¶ 60, 85-86; 185 ¶¶ 72, 100-01. According to Plaintiffs, "[FICO's] monopoly in the B2B Credit Score Market has given it the power to control prices and impose monopoly rents." ECF Nos. 184 ¶ 67; 185 ¶ 82.

Among the allegations Plaintiffs lodge are that, as part of an anticompetitive scheme, FICO filed a 2006 lawsuit against VantageScore and the Credit Bureaus in an effort to eliminate VantageScore as a competitive threat. Specifically, Plaintiffs allege that FICO filed a "meritless lawsuit against [the Credit Bureaus and VantageScore Solutions], alleging that the development of VantageScore violated the antitrust laws and constituted trademark infringement," "raised bogus antitrust claims that it knew lacked foundation" and sought an order that "Defendants be ordered to dissolve VantageScore." ECF Nos. 184 ¶ 88; 185 ¶¶ 102-03. Plaintiffs further contend that "[t]his frivolous lawsuit represented Fair Isaac's first attempt to kill VantageScore before it could gain traction in the market." ECF No. 185 ¶ 102. The district court presiding over that prior litigation ultimately rejected FICO's claims and upheld the verdict against it, observing that "[t]his extensive, expensive litigation seems to have been initiated largely in response to a

perceived threat to Fair Isaac's dominant position in the credit scoring industry." *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 711 F. Supp. 2d 991, 1000 (D. Minn. 2010). The U.S. Court of Appeals for the Eighth Circuit affirmed that outcome. *Fair Isaac Corp. v. Experian Info. Sols., Inc.*, 650 F.3d 1139, 1152-53 (8th Cir. 2011).

On November 24, 2024, following motion to dismiss briefing in this action, the district court issued an order dismissing with prejudice all of Plaintiffs' conspiracy claims against FICO and the Credit Bureaus, leaving only Plaintiffs' monopoly claims against FICO. ECF No. 341 at 23. This order narrowed the scope of Plaintiffs' lawsuit, and, in doing so, narrowed the scope of discovery relevant to Plaintiffs' claims.

On December 21, 2023, FICO served VantageScore with a non-party subpoena (the "Subpoena") seeking, among other highly confidential and competitively sensitive information, VantageScore's LLC Agreement and the license agreements under which VantageScore licensed its credit scoring analytics, software, or intellectual property (i.e., its "IP Agreement"). On March 13, 2024, VantageScore filed its Motion to Quash, and FICO filed a Cross-Motion to Compel. On January 28, 2025, Magistrate Judge Weisman issued an Order granting in part and denying in part both VantageScore's motion to quash and FICO's motion to compel. As relevant here, the Magistrate Judge denied FICO's request for VantageScore's IP Agreement, but directed VantageScore to produce its LLC Agreement. Both VantageScore and FICO filed objections, seeking review of the Magistrate Judge's rulings. On April 7, 2025, this Court issued its ruling resolving them (the "April 7 Order"). ECF No. 411. The Court denied FICO's requests for VantageScore's agreements, licensing terms, financial information, and underlying market study data, finding that these materials were irrelevant to the surviving monopoly claims. *Id.* at 2 ("VantageScore's LLC agreement, the terms on which it licenses its technology, and its

confidential financial information will not shed light on whether FICO has acquired or maintained monopoly power in the market.").

FICO's motion is not the first attempt to compel production of the LLC and IP Agreements in this litigation. Plaintiffs separately subpoenaed VantageScore and moved to compel production of the very same documents, seeking the Agreements under RFPs 4, 6, and 17–20 of their document requests. ECF No. 314. On December 1, 2025, this Court denied Plaintiffs' motion with respect to those requests, applying precisely the same reasoning it had applied when it denied FICO's own motion to compel months earlier and quoting its April 7, 2025 Order: "VantageScore's LLC agreement, the terms on which it licenses its technology, and its confidential financial information will not shed light on whether FICO has acquired or maintained monopoly power in the market." ECF No. 613 at 3 (quoting ECF No. 411 at 2). The December 1, 2025 Order thus confirmed, for a second time, that the Agreements are not relevant to the surviving monopoly claims in this case.

Notwithstanding these prior rulings, FICO filed the instant Motion for Reconsideration on April 13, 2026.

## **LEGAL STANDARD**

Motions for reconsideration under Rule 54(b) are appropriate only when "the Court has patently misunderstood a party," "has made a decision outside the adversarial issues presented to the Court by the parties," "has made an error not of reasoning but of apprehension," or when there has been a "significant change[] to the law or facts of the case." *Love v. Myers*, 2022 WL 3026855, at \*2 (S.D. Ill. Aug. 1, 2022); *Friends for Health: Supporting the N. Shore Health Ctr. v. PayPal, Inc.*, 2022 WL 22330155, at \*2 (N.D. Ill. Aug. 3, 2022) (when a party "does not contend that the court patently misunderstood any party, made a decision outside of the

adversarial issues, or made any manifest errors of law or fact," that "alone is sufficient to deny the motion"). Such circumstances "rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted). Accordingly, while courts permit motions to reconsider, they "are generally disfavored and are granted only in the rarest of circumstances and where there is a compelling reason." *Moreno v. Napolitano*, 2019 WL 13496797, at *1 (N.D. Ill. July 22, 2019) (internal quotation marks and citation omitted).

## ARGUMENT

### I.      FICO Fails the Standard for Reconsideration.

FICO's Motion fails to allege any valid basis for reconsideration. FICO does not claim that the Court has patently misunderstood any party, made a decision outside of the adversarial issues, or made a manifest error of law. Nor does FICO identify any significant change to the law or facts of the case that did not exist when it originally brought this issue before this Court two years ago. Instead, FICO's Motion is nothing more than an attempt to rehash a dispute this Court has already resolved twice, based on arguments that it could have raised but chose not to. Rule 54(b) does not permit such serial re-litigation.

FICO seeks reconsideration based on a purported "additional basis for the relevance of the Agreements," specifically the role those Agreements allegedly played in FICO's prior litigation against VantageScore. Mot. at 1-2. According to FICO, the Agreements are necessary to defend against Plaintiffs' sham litigation allegations because they purportedly "help demonstrate that the VantageScore Litigation was far from groundless or lacking probable cause." Mot. at 2. This argument is not new, it is late.

Since the outset, the sham litigation allegations have been part of this case. The Direct Purchaser Plaintiffs' ("DPP") Complaint, filed October 30, 2023, alleges that "Fair Isaac raised

6

bogus antitrust claims that it knew lacked foundation," that FICO engaged in a "legal battle that sought to put [VantageScore] out of business," and that the prior litigation was "based on a trademark that Fair Isaac had fraudulently obtained." ECF No. 184 ¶ 88. The Indirect Purchaser Plaintiffs' ("IPP") Complaint, filed the same day, similarly alleges that FICO "initiated litigation against Equifax, Experian, TransUnion, and VantageScore Solutions" in a "frivolous lawsuit" that "represented Fair Isaac's first attempt to kill VantageScore before it could gain traction in the market." ECF No. 185 ¶¶ 102-03.

FICO itself cites these very allegations as the source of the supposed 'new' relevance theory. Mot. at 5. It cannot simultaneously rely on those longstanding allegations and claim they represent newly discovered grounds for reconsideration. These allegations were on the docket for over seventeen months before the Court ruled on FICO's prior motion to compel. FICO's failure to raise the argument earlier does not justify reconsideration and this Court should deny the Motion in its entirety. *See Hossfeld v. Allstate Ins. Co.*, 2024 WL 325337, at *3 (N.D. Ill. Jan. 29, 2024) (denying reconsideration where plaintiff "submitted evidence not previously presented to the court" but "does not contend that this evidence was unavailable to him when he filed" his original motion); *Friends for Health*, 2022 WL 22330155, at *2 ("[Plaintiff]'s reconsideration motion is denied because it presents no valid basis for reconsideration. [Plaintiff]'s motion rehashes old arguments, raises new arguments that could have been made in her earlier motions to vacate, and presents new evidence that could have been presented with her original motions . . . .").

**II.      FICO's Belated Theory of Relevance Fails on the Merits.**

Even if this Court were to consider FICO's untimely relevance argument—and it should not—that argument fails on the merits.

As an initial matter, this Court has now held twice that VantageScore's IP and LLC Agreements are not relevant because they shed no light on the sole remaining issue in this litigation: whether FICO has acquired or maintained monopoly power in the market. ECF No. 411 at 2 ("VantageScore's LLC agreement, the terms on which it licenses its technology, and its confidential financial information will not shed light on whether FICO has acquired or maintained monopoly power in the market."); ECF No. 613 at 3 (quoting the April 7 Order for the same proposition). The arguments made in FICO's Motion do not alter this result.

FICO contends that because Plaintiffs have alleged that FICO filed the VantageScore Litigation without probable cause, it purportedly must be able to rely on every single document that was part of that prior litigation to defend itself from those allegations. Mot. at 8-9. Not so. It is axiomatic that parties may only obtain discovery that is relevant to the claims or defenses in that case, and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) ("[R]elevance alone does not translate into automatic discoverability under Federal Rule of Civil Procedure 26. An assessment of proportionality is essential."). A document's historical use in a different litigation is not a basis for relevance in a subsequent case. *Moore v. Morgan Stanley & Co.*, 2008 WL 4681942, at *5 (N.D. Ill. May 30, 2008) ("[J]ust because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit.").

Even under FICO's sham litigation defense theory, the Agreements do not meet the standard for relevance. To prove that FICO filed baseless litigation against VantageScore as a competitive threat, Plaintiffs would need to show that "no reasonable litigant could realistically expect success on the merits" of that prior litigation. *Prof. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). VantageScore's IP and LLC Agreements were

not determinative then and certainly are not determinative now to answering that inquiry. Neither

summary judgment order from the prior litigation even mentions the LLC Agreement, and the

2009 opinion references the IP Agreement only in passing as part of the background narrative,

and not as part of the court's substantive analysis of the claims. *See* Mem. Op. & Order at 7, *Fair*

*Isaac Corp. v. Experian Info. Sols. Inc.*, No. 06-cv-4112 (D. Minn. July 24, 2009), ECF No. 694

(citing IP Agreement §§ 4.1, 4.9 solely as background to describe the formation of

VantageScore's joint venture licensing structure).[1] In that litigation, the District Court found that

"antitrust laws certainly are not designed to protect a competitor from having to compete with a

new entrant to the market." *Id.* at 25. The record thus makes clear that neither Agreement played

any meaningful role in the disposition of the prior case.

FICO's assertion (Mot. at 7) that it would be prejudiced by producing an incomplete

record absent these documents is also unfounded. Answering the inquiry of whether its prior

litigation was meritless is properly assessed by reference to the legal claims, pleadings, and

judicial outcomes of the prior case—not through wholesale discovery of every exhibit admitted

at that trial. The judicial record of the VantageScore Litigation is publicly available. The relevant

court opinions, the dispositions of FICO's claims, and the findings regarding FICO's standing all

exist in the public record. Accordingly, to the extent the anticompetitive nature of that lawsuit is

relevant to the surviving claims here, the dispositive briefings on the merits of that lawsuit and

the related orders will establish that, not VantageScore's discovery responses. At bottom, the

absence of documents that were neither relied upon nor materially analyzed in the prior

proceedings does not render the record in this litigation incomplete—it simply reflects their lack

of relevance.

**III.    The Agreements Remain Highly Confidential and Commercially Sensitive.**

This Court has already recognized that VantageScore's IP and LLC Agreements contain competitively sensitive information regarding "the terms on which VantageScore licenses its credit scoring algorithms and software, and VantageScore's confidential financial information." ECF 411 at 1. FICO argues that this Court should set aside its prior determination and compel production of the Agreements for two reasons: (1) certain versions of the Agreements were allegedly produced in the VantageScore Litigation under a "Confidential" designation rather than "Attorneys' Eyes Only"; and (2) the Agreements were admitted at trial and therefore became "presumptively public." Mot. at 9. Neither argument has merit.

First, FICO's reliance on prior confidentiality designations is misplaced and irrelevant to the present dispute. The VantageScore Litigation was governed by a detailed protective order that established specific categories of permitted disclosure and notice procedures. Under that order, documents designated "Confidential" could be "used **solely for the purpose of this action**" and recipients were expressly prohibited from disclosing or using those materials for any other purpose, including "use for competitive purposes." Protective Order ¶ 3, *Fair Isaac Corp. v. Experian Info. Sols. Inc.*, No. 06-cv-4112 (D. Minn. June 19, 2007), ECF No. 139 (emphasis added). Thus, even assuming some versions of the Agreements were designated "Confidential" rather than "Attorney's Eyes Only," this designation does not negate the Agreements' confidential nature or permit their production in a separate litigation. *Frerck v. John Wiley & Sons, Inc.*, 2012 WL 2127420, at *2-3 (N.D. Ill. June 12, 2012) ("The fact that [Plaintiff]'s counsel put the document on the record in other cases does not deprive it of confidential status.").

Second, FICO's argument that the Agreements lost their confidentiality because they were admitted into evidence at a prior trial equally lacks merit. The two cases FICO cites for this proposition are inapposite. Both address the presumption of public access to court files within the context of an ongoing case, not whether documents introduced at trial nearly two decades ago are freely discoverable in a subsequent, unrelated litigation involving a non-party.[2] Admission at trial does not automatically strip a document of its confidential status. *Frerck*, 2012 WL 2127420, at \*1. Moreover, FICO overstates the extent to which these Agreements were ever publicly accessible: they are not available on the public docket and were not broadly disseminated. The fact that they may have been used in a prior proceeding subject to a protective order does not render them generally discoverable here. Those confidentiality protections remain intact.

## IV. FICO's Motion Is Based on an Improper Use of Protected Materials and Must Be Denied.

FICO's Motion is not only unsupported, it is premised on conduct that violated the District of Minnesota's order modifying the protective order. That order granted Plaintiff's counsel access to materials from the prior litigation solely "for the limited purposes of reviewing materials that are potentially responsive to requests for the production served in *In re FICO Antitrust Litigation*."[3] Third Am. Protective Order ¶ 5(j), *Fair Isaac Corp. v. Experian Info. Sols.*

---

[2] The Court may take "judicial notice of pleadings, orders, and trial transcripts from previous litigation between the parties" as matters in the public record. *Arthur Anderson LLP v. Fed. Ins. Co.*, No. 06 C 1824, 2007 WL 844632, at \*1 (N.D. Ill. Mar. 16, 2007).

[2] *See N. Am. Sci. Assocs., LLC v. Conforti*, No. 24-CV-287, 2025 WL 692128, at \*2 (D. Minn. Mar. 4, 2025) (addressing motion to seal portion of hearing transcript where the party seeking sealing had itself placed the document at issue by filing it in support of its own motion and had failed to object when opposing counsel read it aloud during the public hearing); *Schedin v. Ortho-McNeil-Janssen Pharms., Inc.*, No. 08-5743, 2011 WL 1831597, at \*2 (D. Minn. May 12, 2011) (considering motion to unseal documents that were admitted at trial and applying the Eighth Circuit's public access presumption).

[3] Plaintiff's Request for Production No. 5 in this litigation seeks documents produced or obtained in the VantageScore Litigation. *See* Mot. at 5.

*Inc.*, No. 06-cv-4112 (D. Minn. July 15, 2025), ECF No. 1134. After the protective order was modified on July 15, 2025, FICO's current counsel received the prior litigation files that had been maintained by FICO's former outside counsel later that month. But instead of confining its review to identifying responsive documents, FICO's counsel substantively reviewed the IP and LLC Agreements to assess whether they supported FICO's arguments in this case. Counsel then went further still, proposing a selectively redacted version of those Agreements that preserved material favorable to FICO while withholding the remainder. Mot. at 3-4.

The District of Minnesota's authorization was intentionally narrow. It permitted review for the limited purpose of identifying responsiveness to Request for Production No. 5—not to conduct a merits-based evaluation of the documents or to develop new litigation arguments based on them. Under the order, FICO's counsel should have stopped its review once it identified the Agreements (e.g., by title) as potentially responsive and triggering any required notice procedures. Instead, counsel conducted a merits-based evaluation of their contents to advance FICO's position. Courts in this district have held that using materials obtained under a protective order in one action to advance arguments in separate proceedings violates both the letter and spirit of protective orders. *See In re Trans Union Corp. Privacy Litig.*, 249 F.R.D. 302, 304 (N.D. Ill. 2008) (finding that counsel "violate[d] the spirit, if not the terms, of the Protective Order" by using a redacted balance sheet obtained under a protective order in one action to advance arguments in a mediation of a separate action). Likewise, courts have held that documents produced under a protective order may not be used in separate litigation. *See Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, 2020 WL 208825, at *1 (N.D. Ill. Jan. 14, 2020) (denying motion to take discovery for use in a foreign proceeding, as the documents were designated as "Confidential" or "Highly Confidential" under the protective

order and party was "not authorized to use the documents in another litigation"); *Craft v. Flagg*, 2008 WL 5339052, at *1 (N.D. Ill. Dec. 16, 2008) (denying plaintiff's motion to use documents obtained in one matter under a protective order in a separate case, finding the protective order specified evidence to "be used by the parties to this cause *solely for the purpose of this lawsuit and for no other purpose*" (emphasis in original)).  Mayer Brown's conduct here—reviewing the Agreements to formulate legal arguments and selectively redacting them for strategic use—is exactly what protective orders are designed to prevent and should not be rewarded.

## V.      Granting the Motion Would Greatly Prejudice VantageScore.

Granting FICO's motion would also place VantageScore in an untenable position by forcing a non-party to relinquish carefully negotiated confidentiality protections and disclose highly sensitive commercial information in litigation to which it is not even a party. VantageScore entered into the LLC and IP Agreements with the expectation that those terms would remain confidential. It secured those protections in the VantageScore Litigation and has defended them through multiple rounds of briefing in this case. Each successive attempt by FICO to obtain these same documents has imposed additional costs on VantageScore as a non-party. Allowing FICO to succeed now, after repeated failures, would effectively reward persistence rather than merit.

Even if the Agreements were marginally relevant (they are not), Rule 26 independently requires denial of FICO's Motion. The Agreements contain sensitive information which VantageScore should not be forced to disclose to its primary competitor, which undisputedly has dominated the credit scoring market for decades. The competitive harm and burden to a non-party far outweigh any speculative relevance. To conclude otherwise would fundamentally undermine the purpose of protective orders. *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33-

35 (1984) (acknowledging that "it is necessary for the trial court to have the authority to issue protective orders" as a means to protect the "privacy interests of litigants and third parties" given "[i]t is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse."); *Cont'l Auto. Sys., U.S., Inc. v. Omron Auto. Elecs., Inc.*, No. 14 C 3731, 2014 WL 2808984, at *3 (N.D. Ill. June 20, 2014) (noting that, in the context of pretrial discovery, there is "no more harmful type of disclosure [. . .] than to a direct competitor").

Finally, FICO's suggestion that the Agreements can simply be produced under a "Highly Confidential" designation does not cure the fundamental defects in its request. Mot. at 10. An "Attorneys' Eyes Only" or "Highly Confidential" designation is not an adequate substitute for non-production where the documents are not relevant and where a non-party's commercially sensitive information is at stake. Courts routinely recognize that protective orders do not eliminate the risk of competitive harm or the burdens imposed on non-parties forced to disclose sensitive materials. *In re Northshore Univ. Healthsystem*, 254 F.R.D. 338, 342-43 (N.D. Ill. 2008) (finding good cause to grant an additional protective order related to non-parties, noting that "[w]hile a protective order cannot prevent inadvertent disclosure, a carefully crafted protective order can provide the non-parties with the means to prevent the disruptive effects of inadvertent disclosures. Non-parties will invariably risk a greater potential for injurious disclosure than parties, because of their inability to maintain a physical presence").

That concern is especially acute here. As a non-party, VantageScore has no practical ability to monitor compliance with the protective order, to police improper use of its information, or to ensure that its proprietary materials are appropriately sealed if referenced in motion practice or at trial. Once disclosed, the risk of dissemination, whether through expert reports, filings, or inadvertent disclosure, cannot be meaningfully undone. Courts have recognized that such risks

are particularly troubling where sensitive information is sought by a direct competitor. *Cont'l Auto. Sys., U.S.*, 2014 WL 2808984, at \*3 ("One can imagine no more harmful type of disclosure of technical information of the type sought here than to a direct competitor. It's a blatantly obvious point.").

The procedural history here only reinforces that point. VantageScore has repeatedly been required to expend resources to resist FICO's efforts to obtain these same confidential materials in litigation to which VantageScore is not a party. FICO's conduct has gone even further by violating the District of Minnesota's order, which expressly limited FICO's review to identifying potentially responsive documents, not to mining those materials for new litigation arguments. That pattern underscores why reliance on FICO to safeguard VantageScore's interests is not a workable solution. Where, as here, a party has already exceeded the bounds of a court-imposed limitation, the appropriate remedy is not to entrust it with even broader access, but to deny the request outright.

**<u>CONCLUSION</u>**

For the foregoing reasons and those set forth in VantageScore's prior briefing, the Court should deny FICO's Motion in its entirety.

Dated: April 28, 2026                       Respectfully submitted,


                               <u>*/s/* Sabrina Rose-Smith</u>

                               Sabrina Rose-Smith
                               Viona J. Harris
                               GOODWIN PROCTER LLP
                               1900 N Street NW
                               Washington, D.C.

15

Tel.: 202.346.4000
SRoseSmith@goodwinlaw.com
VHarris@goodwinlaw.com


*Counsel for Non-Party Movant
VantageScore Solutions, LLC*

# CERTIFICATE OF SERVICE

I, Sabrina Rose-Smith, an attorney, hereby certify that on April 28, 2026, I caused a true and correct copy of the foregoing to be filed and served electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

*/s/* Sabrina Rose-Smith

Sabrina Rose-Smith
GOODWIN PROCTER LLP
1900 N Street NW
Washington, D.C.
Tel.: 202.346.4000
SRoseSmith@goodwinlaw.com