| | |
|---|---|
| IN RE: FICO ANTITRUST LITIGATION | No. 1:20-CV-2114 |
| This document relates to: | Judge April M. Perry |
| | Chief Magistrate Judge M. David Weisman |
| ALL ACTIONS | |

## JOINT STATUS REPORT

The parties respectfully submit this Joint Status Report pursuant to the Court's March 16, 2026 and April 9, 2026 Minute Orders. ECF Nos. 642, 645.

### I. PARTY DISCOVERY ISSUES

**Joint Statement:**

The parties have made significant progress in resolving the outstanding discovery issues that they have discussed with the Court at prior status hearings. The below issues have been resolved and require no Court intervention at this time.

FICO's supplemental privilege log and related document production

On April 30, 2026, FICO served its Supplemental Privilege Log containing 43,385 entries. In addition, FICO produced 33,875 documents that were subject to privilege review but ultimately determined to be not privileged or qualifying for privilege redactions. There are currently no disputes on this subject.

<u>FICO's responses to Plaintiffs' Request for Production ("RFP") No. 71</u>

As stated in the parties' April 27, 2026 Joint Status Report (ECF No. 655), the parties have reached agreement on the search string that FICO shall use in connection with RFP No. 71. *See also* ECF No. 657. FICO completed its production of documents responsive to this RFP and another RFP from Plaintiffs' Fourth Set of Requests for Production (RFP No. 88), with the exception of those documents that are undergoing further review for privilege, on May 6, 2026.

<u>Plaintiffs' Fourth Set of Requests for Production</u>

Plaintiffs received FICO's written responses and objections to FICO's Fourth Set of Requests for Production on April 17, 2026. The parties have agreed on FICO's search obligations and the search parameters that FICO shall use. The parties met and conferred regarding FICO's responses on April 29, 2026. On May 6, 2026, FICO completed its production of documents (with the exception of those documents that are undergoing further review for privilege) responsive to RFP No. 88, the only remaining RFP from this set requiring additional document review. FICO will supplement its privilege log to reflect documents from this review as appropriate.

<u>Personal Emails</u>

Each party has agreed to withdraw its request for the other to collect and produce documents (beyond those FICO has already produced) from custodians' personal email accounts.

<u>First Choice's Supplemental Document Production</u>

On March 20, 2026, FICO requested that Plaintiff First Choice Federal Credit Union ("First Choice") add Michael Wehr as a document custodian and expand the time period for First Choice's document collection relating to its transition to VantageScore. First Choice has agreed to expand the time period for this limited production to December 31, 2025 and add Mr. Wehr as a custodian. On April 16, 2025, First Choice completed its production of documents from the custodial files of

its existing document custodian—Michael Vatter—through December 31, 2025. First Choice is working on the review and production of Mr. Wehr's documents and will endeavor to complete that production by May 15, 2026.

**<u>Plaintiffs' Statement on Additional Issues:</u>**

<u>Supplemental Production Responsive to RFP No. 71</u>

As Plaintiffs mentioned in the prior Joint Status Report (ECF No. 644 at 3-4), Plaintiffs have recently become aware that FICO received an additional letter from U.S. Senator Josh Hawley on March 23, 2026 referencing an ongoing investigation by the Senate Judiciary Committee into alleged anticompetitive practices by FICO in the market for credit scores and credit reports.[1] On April 3, 2026, Plaintiffs requested that FICO produce documents and communications relating to this recent letter. FICO responded to Plaintiffs' letter on April 23, 2026, declining to produce any further documents. On April 29, 2026, Plaintiffs responded to FICO asking to meet and confer further regarding this issue, and Plaintiffs followed up on that request on May 4, 2026. The parties are scheduled to meet and confer on May 8, 2026, and will be able to provide an update to the Court at the May 12, 2026 status hearing.

<u>FICO's Interrogatory Responses</u>

FICO served its responses to Plaintiffs' Second Set of Interrogatories on April 17, 2026. The parties met and conferred regarding FICO's responses on April 29, 2026. While the parties continue to discuss FICO's responses, there are no disputes currently ripe for resolution by the Court.

---

[1] FICO relies heavily on the assertion that "every statement a politician makes is not necessarily grounded in all of the facts." April 9, 2026 Hr'g Tr. at 4:3-5. Nonetheless, an investigation by a co-equal branch of government is a serious matter.

Plaintiffs served responses and objections to FICO's Second Set of Requests for Admission and Third Set of Interrogatories on April 17, 2026. Plaintiffs' position is that their responses satisfied Plaintiffs' discovery obligations regarding these requests. Presently, no issues are ripe for the Court.

Plaintiffs' Responses to RFA Nos. 1-2

As stated in prior Joint Status Reports, it is Plaintiffs' position that they are not obligated to respond to RFA Nos. 1 and 2 until FICO's document productions in this litigation are complete. At the February 12, 2026 status conference, and in its subsequent Minute Order, the Court instructed the parties that FICO's request for Plaintiffs to amend their responses to RFA Nos. 1 and 2 was premature. ECF No. 638. FICO's continued insistence that Plaintiffs' responses do not require further document discovery stands in contrast to this Court's prior statements. *See* Feb. 12, 2026 Hr'g Tr. at 15:13-16 ("those answers would still need to be subject to being amended later if discovery leads us there").

However, in a good-faith effort to avoid bringing this dispute to the Court, and consistent with Plaintiffs' scheduling proposal discussed in further depth *infra*, Named DPPs have agreed to provide their supplemental responses to RFA Nos. 1 and 2 45 days after actual completion of FICO's document productions.[2]

**FICO's Statement on Additional Issues:**

Third Letter From Senator Hawley

Plaintiffs have continued to pursue the production of documents related to a March 23, 2026 letter from Senator Josh Hawley. Plaintiffs purport to seek these documents in response to

---

[2] Plaintiffs responded to FICO's second set of RFAs, along with FICO's third set of Interrogatories, on April 17, 2026.

their RFP No. 71, which as originally drafted seeks "All Documents and Communications concerning any inquiries, investigations, or outreach from members of Congress urging the Department of Justice or other governmental entity to investigate Fair Isaac, including but not limited to internal communications, analyses, reports, and responses related to such inquiries."

The requested additional production in response to RFP No. 71 is unwarranted. FICO disputes the relevance of *any* documents that Plaintiffs have sought in response to this RFP. As this Court observed at the April 9, 2026 status hearing, "every statement a politician makes is not necessarily grounded in all of the facts." 4/9/2026 Hr'ing Tr. 4:3-5. However, in an effort to resolve the parties' long-running negotiations over this RFP, agreed in December 2025 to produce non-privileged documents, if any, related to two previous letters from Senator Hawley, as well as a third letter from Senator Elizabeth Warren and various other members of Congress. As FICO noted it the previous Joint Status Report, to FICO's knowledge, the U.S. Department of Justice did not open an investigation of FICO in response to any of those letters. *See* ECF No. 644 at 5. The discovery Plaintiffs are now seeking related to a *third* letter from Senator Hawley would be, at best, cumulative of the discovery FICO has already agreed to provide related to the earlier letters. FICO objects to expanding its response to RFP No. 71 on relevance and proportionality grounds.

FICO's Interrogatory Responses

FICO served its responses to Plaintiffs' Second Set of Interrogatories on April 17, 2026. FICO's position is that those responses satisfy FICO's obligations under the Federal Rules of Civil Procedure. The parties are in discussions regarding certain of those responses, and FICO agrees there is no issue that is ripe for the Court's consideration.

Plaintiffs' Responses to FICO's Second Set of RFAs and Third Set of Interrogatories

Plaintiffs served responses and objections to FICO's Second Set of Requests for Admission and Third Set of Interrogatories on April 17, 2026. FICO is evaluating those responses and will raise any issues with Plaintiffs for discussion. No issue is ripe for the Court's consideration at this time.

Plaintiffs' Responses to RFA Nos. 1-2

Named DPPs take the position that they will only respond to FICO's RFA Nos. 1 and 2 by "45 days after actual completion of FICO's document productions." That timeline is too indefinite, and too delayed. As FICO has previously explained, these RFAs go to critical issues in the case, including Plaintiffs' standing to recover damages under the federal antitrust laws. *See* ECF No. 644, at 9-10. Plaintiffs should be able to respond to these RFAs without requiring additional documents from FICO. *See* Mar. 16, 2026 Hr'g Tr. at (45:1-47:13) (FICO's counsel noting that a company can simply look to its own bank records or accounts payable records for this information). Nonetheless, FICO's proposed schedule permits Plaintiffs to amend their responses to the RFAs after the substantial completion of all document productions. For the reasons discussed in FICO's section of this Joint Status Report addressing the case schedule, Plaintiffs should not be permitted to hold hostage their responses to this RFAs or other events in the case based on an open-ended concept of "actual completion" of all productions of all other documents.

Once served, FICO will evaluate the responses to RFA Nos. 1 and 2 and, if it determines that the responses are deficient, will meet and confer with Plaintiffs as appropriate.

## II. FICO'S PRIVILEGE LOG

**Plaintiffs' Statement:**

FICO served its Corrected Fourth Amended Privilege Log on April 9, 2026. Additionally, FICO served its supplemental privilege log covering documents from the newly discovered

universe on April 30, 2026. Consistent with the Court's instructions, Plaintiffs are continuing their review of FICO's recently produced privilege logs in an effort to expeditiously resolve any categorical disputes.

No Attorneys on the Log Entry

On January 30, 2026, Plaintiffs raised with FICO the issue of communications with no attorneys listed on FICO's log—an issue about which the parties had previously reached impasse. Plaintiffs provided a set of updated, limited objections to entries affected by this issue on March 5, 2026.

As set forth in the April 6, 2026 JSR (ECF No. 644 at 14), the parties have resolved their disputes regarding a large number of the entries to which Plaintiffs had objected. The parties' most significant outstanding dispute concerns 699 entries in which FICO amended its privilege descriptions. In their March 30, 2026 letter, Plaintiffs requested additional information to understand how FICO intends to amend its descriptions and asked that FICO provide a comparison of its amended descriptions against the original descriptions so that the parties could quickly identify and address any remaining issues. FICO declined to do so—even though it would have required minimal effort—a decision that has injected further needless delay into resolving this dispute. As a case in point, Plaintiffs identified 56 entries for which FICO claimed it would amend its descriptions but which had simply vanished from FICO's operative log without any explanation. FICO has since clarified that it withdrew its privilege claims for 31 of these entries and 25 had been inadvertently omitted from FICO's log. While Plaintiffs welcome any chance to limit this dispute further, it is once again concerning that *Plaintiffs* had to identify this issue, where FICO could have easily done so by providing the information Plaintiffs requested in the first place. Perhaps even more concerning is the fact that FICO had omitted 25 documents from its latest log,

meaning FICO would have continued to withhold them with no notice to Plaintiffs had it not been for Plaintiffs' own diligence.

Plaintiffs could not raise their remaining challenges to the "no attorneys" entries with FICO until it received FICO's amendments to these 25 entries—particularly given FICO's prior criticisms of the "piecemeal" manner in which Plaintiffs have raised other privilege challenges. FICO provided its Corrected Fourth Amended Privilege Log on May 8, 2026. Since then, Plaintiffs have been diligently reviewing FICO's log so that they may raise any remaining disputes with FICO.

Attorneys Only Copied

On August 29, 2025, FICO stated that it would undertake a re-review of 4,765 entries on its then-operative log where an attorney was only CCed or BCCed. In FICO's December 2025 privilege log, the number of entries where an attorney was only CCed or BCCed skyrocketed to 20,064. Plaintiffs undertook a thorough review of these entries and on April 8, 2026 wrote to FICO with challenges covering 7,820 entries. FICO responded to Plaintiffs' challenges on April 24, 2026, agreeing to re-review and revise its privilege descriptions for 7,734 of the entries Plaintiffs objected to, *accounting for 98.9% of Plaintiffs' objections*. Plaintiffs will review FICO's amended descriptions for any entries it continues to assert privilege over once it receives them.

Spreadsheets

On February 20, 2026, Plaintiffs sent FICO a letter detailing their amended objections to 278 withheld spreadsheets on FICO's December 19, 2025 privilege log. FICO's March 23, 2026 response to Plaintiffs' letter resolved Plaintiffs' challenges to all but seven spreadsheets. As of April 8, 2026, FICO has withdrawn its privilege claims to six of those seven spreadsheets, the last of which will be subject to Plaintiffs' pending motion to compel regarding third-party

8

communications (ECF No. 501). All told, FICO agreed to produce 226 of the challenged spreadsheets and produce 19 more with redactions or amended redactions—***removing or downgrading its privilege claims on a whopping 88% of the spreadsheets it had withheld.*** Accordingly, this dispute is resolved.

"Recipient" Field Left Blank

In its Order on Plaintiffs' Motion to Compel FICO to Re-Do Certain Aspects of its Privilege Log and to Produce any De-Logged Documents (ECF No. 517), the Court ordered FICO to log all earlier-in-time emails in a chain. FICO has failed to adequately do so. For 14,958 emails on its log, FICO has left the "Recipient" field completely blank.[3] FICO has represented that the entries affected by this issue are earlier-in-time emails that were sent from an individual's mobile device, and as a result the "recipient" field was not visible on the face of the document. On February 27, 2026, Plaintiffs explained to FICO that the metadata for these earlier-in-time emails could have still been separately stored and asked FICO whether this metadata was retrievable.

On March 30, 2026, after being ordered to respond by the Court (ECF No. 642), FICO stated that, while it collected metadata for some earlier-in-time emails, it had not done so for earlier-in-time emails that were not in the custodial files of an agreed-upon document custodian. Thus, FICO's inability to populate the recipient field using metadata appears to be a direct result of the collection and production process FICO itself chose. As such, FICO stated that "there is no available tool or process that would allow FICO to automatically populate the recipient fields for FICO's privilege log entries reflecting earlier-in-time emails affected by the mobile device issue." Accordingly, FICO declined to amend its privilege log.

---

[3] Of these, 10,506 entries on FICO's log do not include any attorney.

As a threshold matter, FICO's assertion that providing an adequate privilege log would require it to collect non-custodial documents misses the point. Rule 26(b)(5) provides that FICO must provide a privilege log that "will enable other parties to assess the claim." This Court specifically reaffirmed that obligation when it ordered FICO to log earlier-in-time emails. *See* ECF No. 517 at 3. Plaintiffs do not ask FICO to re-visit its document collection but rather ask that FICO do the work necessary to identify the recipients of earlier-in-time communications on the face of its log.[4]

Notwithstanding, and in a good-faith effort to limit this dispute for the Court, Plaintiffs provided a counter-proposal to FICO on April 8, 2026 that would require FICO to only provide recipient names for those emails where an agreed *document custodian* was the recipient—emails which, according to FICO's explanation, have already been collected by FICO. Plaintiffs' proposal would reduce the number of documents for which FICO would need to add a recipient from 14,958 to 3,957. FICO rejected Plaintiffs' proposal on May 1, 2026, but FICO's response ignored the fact that Plaintiffs' proposal would involve only document *custodians*, whose earlier-in-time emails FICO collected, and therefore would *not* require manual review on FICO's part. Plaintiffs responded to FICO that same day to clarify their proposal but have not received a substantive reply save for what FICO states below in this Joint Status Report.

In this Joint Status Report, FICO continues to assert that Plaintiffs' compromise proposal will subject it to an unduly burdensome manual review. Not so. First, it bears repeating that Plaintiffs' proposal relates only to earlier-in-time emails that, by its own admission, FICO has

---

[4] FICO has repeatedly insisted that Plaintiffs already have the information necessary to figure this out. Even if that is true, it is *FICO's* burden to establish privilege, and FICO cannot shift that burden onto Plaintiffs. But Plaintiffs also have reason to doubt that this is true. For example, the fact that some but not all emails affected by this issue included document custodians demonstrates that the recipients included on these email chains changed over time. Rule 26(b)(5) requires FICO to identify when that is the case.

*already collected* from the current document custodians. FICO can easily identify the collected versions of these earlier-in-time emails using the date, time, any sender fields that are already available on its log. From there, FICO can automatically populate the remaining metadata on its privilege log from those collected earlier-in-time emails. Second, contrary to FICO's assertion, this project should not require any further manual privilege review because these are earlier-in-time emails that FICO has *already reviewed for privilege* and over which FICO has already asserted privilege.

Moreover, even if this project requires some minimal amount of manual effort, that does not absolve FICO of its logging obligations under Rule 26(b)(5) and this Court's prior orders. This Court has already clearly stated that "FICO's use of metadata alone to populate the privilege log for email families is appropriate only if the metadata contains enough information to assess the claim of privilege for each member of the email or document family." ECF No. 517 at 2. It is therefore FICO's responsibility to make sure that its log has all necessary information, whether or not it is available using metadata. FICO should not be allowed to shift this burden to Plaintiffs because it failed to collect and process the document in such a way as to collect the necessary information in the first place.

At bottom, this Court ordered FICO to log earlier-in-time emails over six months ago, and FICO has still not sufficiently done so for nearly 15,000 entries. FICO cannot evade this Court's orders and its logging obligations under Rule 26(b)(5) through a mess of its own creation.

<u>Additional Challenges</u>

Plaintiffs sent a letter to FICO on March 30, 2026, raising challenges to 4,535 specific entries in FICO's privilege log. Plaintiffs' challenges fall into two categories: (1) challenges to 1,522 entries where FICO amended its privilege log descriptions in its operative log to remove

certain non-legal terms and (2) challenges to 3,013 entries where FICO's current descriptions primarily relate to business matters. FICO responded to Plaintiffs' challenges on April 8, 2026.

As Plaintiffs have repeatedly told FICO, in order to identify deficient entries, Plaintiffs looked at both the subject line of the withheld communication *and* the "Privilege Log Description" provided by FICO—the only information available to Plaintiffs about these withheld documents— in order to decide which entries to challenge. Moreover, Plaintiffs' objections are based on the fact that they have seen many examples of produced documents with similar subject matters—some of which have even included counsel—that plainly related to business matters such as pricing credit scores for end-users. Additionally, despite the red herring FICO raises below, Plaintiffs have never asserted that "[a]n email . . . [must] reference the attorney-client privilege in its subject line to be privileged."

While Plaintiffs are continuing their review of FICO's response, Plaintiffs have already resolved a number of their additional challenges with FICO and believe that they will be able to limit their disputes further.

FICO's Request for a Schedule Regarding Privilege Log Challenges

Plaintiffs have continued to work diligently to move forward the parties' remaining disputes regarding FICO's privilege log. As set forth above, the parties have resolved their disputes regarding spreadsheets on FICO's privilege log. In accordance with the Court's instructions following the March 16, 2026 status conference (ECF No. 642), Plaintiffs have raised all categorical challenges to FICO's December 19, 2025 privilege log. While the parties are still in active discussions, Plaintiffs expect that they will be able to complete those discussions by May 30, 2026.

After receiving FICO's Supplemental Privilege Log on April 30, 2026, Plaintiffs immediately began an intensive review of the over 40,000 additional log entries. At present, the issues Plaintiffs have identified are largely ones about which the parties were already aware of (*e.g.* third-party communications, no recipients), and Plaintiffs expect that entries affected by those issues can be folded into the parties' ongoing discussions. Accordingly, those issues should not significantly extend the parties' discussions. However, Plaintiffs note that their review of FICO's 40,000-entry Supplemental Privilege Log is ongoing, and if Plaintiffs identify any new issues on the Supplemental Privilege Log that they expect to delay the parties' discussions, they will promptly inform the Court of those and request an appropriate extension for the parties to continue their discussions.

Given the foregoing, Plaintiffs expect that they will be able to file a motion encompassing any remaining issues regarding FICO's privilege log by June 30, 2026, or 30 days after the parties complete their discussions regarding any new issues Plaintiffs identify on FICO's Supplemental Privilege Log. As Plaintiffs previewed at the April 9, 2026 status conference, Plaintiffs will likely seek an extension over the typical 15-page limit for any such motion. *See* April 9, 2026 Hr'g Tr. at 70:15-23.

**FICO's Statement:**

FICO served its Corrected Fourth Amended Privilege Log on April 9, 2026. Because FICO has now provided separate log entries for privileged email attachments that were previously logged in the same entry as their privileged parent email, and for each privileged email within a given email chain document (pursuant to the Court orders at ECF Nos. 530 and 577), FICO's Corrected Fourth Amended Privilege Log included more than 140,000 entries.

FICO served its Supplemental Privilege Log on April 30, 2026, and served a corrected version of that log on May 4, 2026. That supplemental log follows the same format as FICO's other operative log, and includes more than 43,000 entries.

For perspective, FICO has now produced more than 528,000 documents and more than 3.6 million pages of discovery in this litigation. Some of Plaintiffs' RFPs extend back to 2006. Moreover, the categories of documents on which Plaintiffs have focused are ones in which attorneys would be expected to be heavily involved, including the negotiation of contracts.

Entries Plaintiffs Describe As Having "No Attorneys on the Log Entry":

Plaintiffs have raised objections to privilege log entries that they describe as having "no attorneys" because the log does not list an attorney as a sender or recipient of the communication at issue, even though every entry on the log indicates the "Attorney(s) Creating Privilege" in a separate column by that name. Given this column, it is incorrect for Plaintiffs to assert that there are "no attorneys on the log entry."

As Plaintiffs note, the parties have resolved many of the disputes in this category. FICO agreed to revise its privilege log descriptions for certain entries in this category, and has provided those revised descriptions to Plaintiffs. Plaintiffs asked FICO to provide a comparison of these revised privilege log descriptions to the prior versions of those descriptions, which FICO declined to do. Plaintiffs have those prior descriptions in hand—indeed, they identified them when making their challenge on this basis—such that they have an ability equal to FICO's to create that comparison. Plaintiffs did identify 25 entries (not documents) for which FICO stated it would amend its descriptions but did not include on the revised log; FICO promptly responded to Plaintiffs and has corrected that issue. FICO believes this purported "no attorneys" category of objections is finally now resolved and has asked Plaintiffs to confirm this.

14

<u>Entries Plaintiffs Describe As "Attorneys Only Copied":</u>

On April 8, 2026, Plaintiffs identified 7,820 entries—approximately 5% of FICO's Corrected Fourth Amended Privilege Log entries—that they challenged on the basis that an attorney was "only" in the "CC" line, as opposed to the "From" or "To" line, of an email communication. For the vast majority of these entries (more than 7,500 entries), FICO responded to simply clarify that where the description referred to a client "providing information" for the purpose of "providing legal advice" or "rendering legal advice," the description was intended to describe an email from a client requesting or providing information for the purpose of enabling *an attorney* to provide or render legal advice. FICO does not believe that further clarification is necessary, but stated its willingness to revise its descriptions to that effect (but not re-review the communications at issue), if doing so would resolve Plaintiffs' objection. Plaintiffs responded on May 6, 2026 that this would resolve their objections. FICO is making those revisions, as well as revisions based on its offer to re-review a much more limited set of entries (295 entries) in this category.

Plaintiffs also stated in their May 6, 2026 letter that they are maintaining their objections to a limited number of other entries in this category. FICO is reviewing that correspondence.

<u>Spreadsheets:</u>

Plaintiffs challenged entries for 278 spreadsheets, representing approximately 0.19% of the entries on FICO's Corrected Fourth Amended Privilege Log. FICO agreed to reduce or withdraw its claims as to many of those spreadsheets in order to resolve this objection. As Plaintiffs note, this issue is now resolved.

"Recipient" Fields Left Blank:

FICO has adequately logged all privileged earlier-in-time emails in email chains. As FICO has explained, when an email is sent from a mobile device, an earlier-in-time email that is embedded below the email being sent may not display the recipients. As a result, the log entry for such an earlier-in-time email will indicate the sender of the email, but will not have names in the "To," "CC," or "BCC" columns on the log because the technological tool FICO's e-discovery vendor used to populate those fields for earlier-in-time emails—which it developed specifically for this review—relies on the text for the specific email that appears on the face of the document. This does not mean, however, that the information is missing, unknown, or not disclosed to Plaintiffs on FICO's privilege log. As FICO demonstrated during the parties' March 16, 2026, status hearing, FICO has provided a separate log entry for every single privileged email in email chains. FICO's log is also organized so that privileged emails in chains appear sequentially; in other words, it is apparent from the log that particular entries relate to emails from the same chain document. As a result, Plaintiffs have full visibility into the recipients of each email embedded in a chain. That additional information on the privilege log makes it apparent who the recipients were for each of the earlier-in-time emails impacted by this mobile device issue.

Plaintiffs inquired whether there was a way for FICO's e-discovery vendor to populate the recipient fields for these entries on an automated basis. FICO conferred with its vendor, and confirmed via email to Plaintiffs on March 30, 2026, that there is no available tool or process that would allow for the automated population of these fields on the log.

Further, FICO cannot rely on the metadata of the earlier-in-time emails for two primary reasons. First, to the extent that an earlier-in-time email was not received by one of FICO's designated custodians, FICO would not have reason to have collected that email in standalone

fashion. Plaintiffs seem to suggest that FICO should have collected emails from an untold number of **non-custodian employees** solely so that metadata from their emails could be harvested to manually populate these fields on FICO's privilege log. That is unreasonable. Second, even as to the earlier-in-time, standalone emails that exist in FICO's collections, FICO's vendor confirmed that there is no automated, accurate way to match those specific standalone emails to the earlier-in-time emails that appear on the face of FICO's produced or logged documents, and no automated way to use those earlier-in-time, standalone emails to populate recipient information for the specific log entries at issue.

As a purported compromise, Plaintiffs proposed, on April 8, 2026, that FICO look to the nearly 4,000 log entries affected by this mobile device issue that have a document custodian as the sender, and for each of those 4,000 communications, identify that communication in a standalone format in FICO's collection, produce that standalone version of the communication, and use that standalone version to manually fill in the recipient information on the log. That process would be unduly burdensome and disproportionate to the needs of the case. FICO understands from its e-discovery vendor that such a process would require 4,000 individual, manual searches to identify each standalone communication at issue. Once found, for any standalone documents requiring privilege redactions, someone would have to manually review each of those standalone communications and apply those redactions.[5] Then, someone would then have to manually insert the recipient information into FICO's privilege log.[6] And to be clear, the information that Plaintiffs request that FICO add to the log (the recipients) is clear from a simple review of the earlier-in-

---

[5] Plaintiffs claim that this "should not require any further manual privilege review." That is not the case. Applying privilege redaction is a manual process.

[6] Plaintiffs state simply that "From there, FICO can automatically populate the remaining metadata on its privilege log from those collected earlier-in-time emails." But that is also not the case. FICO does not have a way to automatically use metadata from those documents to populate the recipient fields in entries for earlier-in-time emails from *other* documents on its log.

time and later-in-time e-mails surrounding the entry in question (and for redacted documents, from the face of those documents themselves), information that Plaintiffs have at the ready given that FICO's log lists sequential e-mails in an e-mail chain sequentially on the log. What Plaintiffs are requesting here would unduly burden FICO and is disproportionate to the needs of the case.

Plaintiffs' "Additional Challenges"

FICO responded to Plaintiffs' March 30, 2026 letter, which identified 4,535 entries for further challenge, on April 8, 2026. Plaintiffs responded on May 6, 2026, identifying approximately 3,000 entries in this category for which they state they are maintaining an objection.

Many of the remaining challenges Plaintiffs raised in their March 30 letter are based, in whole or in part, on the assertion that the logged email's subject line—which is provided in the privilege log entry—suggests the document is "primarily business-related." This line of objection is without merit. An email does not have to reference the attorney-client privilege in its subject line to be privileged. Sometimes privileged emails refer to legal matters in the subject line and sometimes they do not; and an email communication can be privileged even if the subject line does not explicitly say so. What matters to the privilege determination is the contents of the communication, which cannot be disclosed to Plaintiffs. However, FICO has described the privileged communication and the basis for its privilege claim in a separate column ("Privilege Log Description") on the privilege log.

Plaintiffs also point to several phrases used in those Privilege Log Descriptions as a basis to conclude that the communication is "primarily business-related," at times raising this objection in tandem with an objection based on the subject line as described above. Those objections based on certain Privilege Log Descriptions are meritless as well. For example, Plaintiffs argue that the phrase "contractual pricing terms" (in a Privilege Log Description such as "Email between

18

attorney(s) and clients providing legal advice regarding the application or interpretation of contractual pricing terms.") "suggests that this document is primarily business-related, not related to the provision of legal advice." But the plain language of the description makes clear that the communication concerns legal advice related to the application or interpretation of contractual provisions. Plaintiffs raise similar objections to other phrases, including "regarding special pricing letter contract drafting and/or review" (*e.g.*, "Email between attorney(s) and clients providing legal advice regarding special pricing letter contract drafting and/or review.") as well as "regarding draft press release and/or public statement" (e.g., "Email between attorney(s) and clients providing legal advice regarding draft press release and/or public statement."). But both of these descriptions make clear that the communication concerns legal advice, such as through attorney review, of draft versions of contracts or communications.

<u>Deadlines for Plaintiffs to File Motions Raising Categorical Challenges to FICO's Current and Supplemental Privilege Logs:</u>

Previously, this Court instructed Plaintiffs to "make every good faith effort to identify any other categorical issues to FICO's privilege log" by the April 9, 2026, status hearing. *See* ECF No. 642. Plaintiffs have therefore now identified all alleged categorical issues with FICO's Corrected Fourth Amended Privilege Log. This Court also instructed the parties to complete all required meet and confers to address categorical challenges to that log and to the smaller Supplemental Privilege Log by May 30, 2026, but to state in this Joint Status Report if that date is not "workable." *See* ECF No. 645.

FICO maintains that the May 30, 2026 date is workable and appropriate, and understands that Plaintiffs agree. FICO also understands that the parties are in agreement that June 30, 2026 is a workable and appropriate deadline for Plaintiffs to then file a single, consolidated motion, if any, that raises any remaining privilege log challenges with the Court.

### III. NON-PARTY DISCOVERY

**Experian Data Production:**

**Plaintiffs' Statement:**

Per the Court's prior Order, Experian completed its production of domestic transactional data on March 20, 2026. *See* ECF No. 638. Plaintiffs provided additional data-related questions to Experian on April 22, 2026, and followed up on May 6, 2026; Plaintiffs are still awaiting a response. Currently, no disputes are ripe for resolution by the Court.

**Equifax Data Production:**

**Plaintiffs' Statement:**

Plaintiffs provided additional data-related questions to Equifax on April 22, 2026, and followed up on May 6, 2026; Plaintiffs are still awaiting a response. Currently, no disputes are ripe for resolution by the Court.

**Non-Party Subpoenas:**

**Plaintiffs' Statement:**

Per the Court's Minute Order following the April 9, 2026 status hearing (ECF No. 645), Plaintiffs have served non-party subpoenas directed to a number of consultants employed by FICO in connection with its anticompetitive conduct. Given these consultants appear on communications over which FICO has asserted attorney-client privilege (an assertion Plaintiffs continue to dispute), Plaintiffs have instructed that the consultants shall not provide written responses until the Court resolves Plaintiffs' pending motion to compel regarding third-party communications on FICO's privilege log. ECF No. 501. Plaintiffs will provide additional instructions to those non-parties once Plaintiffs' motion is resolved.

Plaintiffs also intend to serve a number of subpoenas on certain credit score resellers.

**FICO's Statement:**

FICO disputes Plaintiffs' characterization of FICO's retention of certain consultants "in connection with its anticompetitive conduct," and objects to the non-party subpoenas Plaintiffs have served on various consultants to the extent they request the production of documents protected by the attorney-client privilege or attorney work product doctrine, along with documents Plaintiffs have already requested (or could have requested) from FICO. FICO understands that the consultants have been notified that they are not required to respond to the subpoenas until the parties' disputes over privilege issues involving such consultants have been resolved.

### IV. CASE SCHEDULE

At the October 6, 2025 status hearing, the Court agreed to suspend the case schedule while the parties assessed the time needed for FICO to work on the document productions it has now substantially completed. The parties have provided their competing proposals for a schedule in this case in **Appendix A** to this Joint Status Report but note that they met and conferred on May 6, 2026, to try to reach an agreement on the schedule. The parties intend to continue their discussions prior to the May 12, 2026 status hearing. The parties' current respective positions regarding the schedule are as follows:

**Plaintiffs' Statement:**

Tellingly, between the parties' April 6, 2026 Joint Status Report (ECF No. 644 at 33) and this Joint Status Report, FICO has moved back the proposed deadlines for its own substantial completion of its document productions, the close of fact discovery, and the expert discovery deadlines by a month. This proves the Court's point that "meaningful dates are better than dates that don't mean anything, or are not well-informed." Mar. 16, 2026 Hr'g Tr. at 108:20-23. That is, had the Court set a schedule in April, as FICO requested, it already would have been unworkable.

Additionally, the fact that FICO needed to push out its substantial completion date by a month underscores Plaintiffs' continued concern that additional document production issues may cause the parties to subsequently request an amendment to the schedule or be forced into conducting depositions and expert discovery without FICO's complete document productions. Neither approach would be efficient or fair to both parties.

Plaintiffs also note that the parties have ongoing privilege log disputes that affect thousands of entries on FICO's privilege log which Plaintiffs believe FICO has inappropriately withheld. As the Court is aware, Plaintiffs' challenges have already resulted in *significant* reductions in FICO's privilege claims. Plaintiffs are concerned that they will be prejudiced if they are required to conduct depositions or expert discovery without the benefit of documents that FICO has inappropriately withheld.

Notwithstanding, Plaintiffs recognize that the parties have made significant progress in resolving their outstanding discovery disputes and agree that setting a schedule which at least provides structure for the remainder of discovery is appropriate at this time. Plaintiffs' most significant departure from FICO's proposal is that the deadlines for completion of fact discovery, expert reports, and class certification briefing should be based on ***actual completion***[7] of FICO's document productions, rather than substantial completion. As Plaintiffs have previously pointed out, since the prior "substantial completion" deadline of November 14, 2024, FICO has produced an additional 321,500 documents and 2,583,236 pages, accounting for 64% of the documents and 74% of the pages in FICO's total document production. Thus, Plaintiffs are justifiably skeptical

---

[7] "Actual completion" shall mean FICO's completion of (1) production of any de-logged documents resulting from the parties' ongoing negotiations over FICO's operative privilege log or any motion to compel regarding the same, and (2) any other productions of more than 100 documents from sources the parties subsequently identify.

about the notion of "substantial" completion. For this reason, Plaintiffs believe that using actual completion as the starting point is appropriate to avoid prejudice to Plaintiffs if the parties experience significant delay in FICO completing its document productions, particularly the documents on FICO's privilege log that Plaintiffs argue are improperly withheld.

Following the close of fact discovery, Plaintiffs have attempted to match FICO's proposed deadlines, accounting for the fact that actual completion of FICO's document productions may push out those deadlines further.

**FICO's Statement:**

The parties are finally in agreement that it is time for the Court to enter a new case schedule. But Plaintiffs' propose, at best, only a partial schedule. Plaintiffs request that the Court set the close of fact discovery at "October 30, 2026, or five months after actual completion of FICO's productions, whichever is later." Plaintiffs view that "actual completion" as requiring completion of the production of "any de-logged documents resulting from the parties' ongoing negotiations over FICO's operative privilege log or any motion to compel regarding the same," as well as "any other productions of more than 100 documents from sources the parties subsequently identify." Plaintiffs' proposal will not serve to move this litigation forward.

Case management deadlines "are critical in federal civil litigation" to secure order, rein in costs, and prevent chaos. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 939 (N.D. Ill. 2021) (citing cases). Courts routinely set such deadlines before the parties complete all document productions. Indeed, that is what has previously occurred in this case. *See* ECF No. 180 (Judge Chang's Order setting case schedule, including a date for the close of fact discovery, on October 17, 2023).[8] Plaintiffs' proposal, in contrast, would hold fact discovery open

---

[8] Plaintiffs suggest that FICO's "substantial completion" of document productions is not meaningful because FICO produced a number of documents after the prior substantial completion deadline. That

indefinitely, until after (1) a final Court ruling on Plaintiffs' not-yet-filed motion to compel the production of even more documents from FICO's privilege logs, and after (2) the entirely theoretical production of even more documents from vague "sources" Plaintiffs might "identify" at some later date, unlimited in time. A case schedule that relies on such an open-ended "deadline" is no schedule at all.

FICO must also respond to Plaintiffs' complaints about FICO moving backing certain dates in its proposed schedule by approximately one month, as compared to the proposal it made in last month's Joint Status Report. FICO made these changes because (1) that is the approximate amount of time that has elapsed since FICO made its prior case schedule proposal, which Plaintiffs rejected, and (2) FICO was endeavoring in good faith to reach agreement with Plaintiffs on a schedule by addressing their objections that FICO's prior schedule was too accelerated. FICO's prior proposal was workable. FICO's new proposal, which calls for the close of fact discovery to take place on October 30, 2026, is even more so.

FICO requests that the Court enter the case schedule FICO proposes below, or at a minimum, enter a case schedule with a date certain for the close of fact discovery.

---

argument is a distraction, because as noted above, Courts routinely set full case schedules prior to the completion (substantial or "actual") of document productions. Moreover, Plaintiffs' misplaced complaints about the pace at which FICO has produced its documents ignore that many of those documents were the subject of motion practice or party negotiations that were not resolved until *after* the substantial completion deadline had passed. For example, more than 117,000 of the documents FICO produced after that original substantial completion date were documents that FICO previously produced in the VantageScore Solutions litigation, a re-production that FICO made pursuant to negotiations that the parties concluded in 2025.

## V.   PENDING MOTIONS

**Joint Statement:**

There is one motion currently pending before the Court:

- Plaintiffs' Motion to Compel FICO to Produce Certain Documents from Its Privilege Log, and Related Motions (ECF Nos. 501, 514, 522, 548, 565, 581, 624, 625).

**Plaintiffs' Statement:**

On March 10, 2026, the Court granted in part and denied in part (ECF No. 640) Plaintiffs' Motion to Compel FICO to Produce Certain Documents from Its Privilege Log, and Related Motions. ECF Nos. 501, 514, 522, 548, 565, 581, 624, 625. Following the March 16, 2026 status hearing, the Court vacated its prior Order so that it may enter a new one addressing the Vinovich declaration appended to FICO's opposition to Plaintiffs' motion (ECF No. 514-2). *See* ECF No. 642. As discussed in Plaintiffs' reply brief and at the March status hearing, FICO may not rely on a subsequent declaration filed during motion practice in lieu of establishing on the face of its log that communications were properly withheld. *See* Mar. 16, 2026 Hr'g Tr. at 100:10-101:12; ECF No. 522 at 9-10.

**FICO's Statement:**

FICO appropriately submitted a declaration in support of its opposition to Plaintiffs' pending motion. The detail included in that declaration was not required to be included in FICO's privilege log. FICO understands that the Court will issue a new Order addressing both the third parties issue as well as the issue related to emails received by ten or more recipients.

Depending on the outcome of that forthcoming Order, FICO may file an objection to the Order pursuant to Fed. R. Civ. P. 72(a).

### VI. UPCOMING HEARINGS

There are presently two hearings scheduled, as follows:

- Status hearing set for May 12, 2026 at 1:00 p.m. ECF No. 642.

- Status hearing set for June 23, 2026 at 1:00 p.m. ECF No. 645.

**Plaintiffs' Statement:**

Plaintiffs respectfully request that the Court set a subsequent status hearing during the week of July 20, 2026.

**FICO's Statement:**

To the extent the Court wishes to hold a status hearing in July, FICO is available to do so the week of July 20, 2026.

\* \* \* \* \* \*

The parties are, of course, available to discuss any additional issues into which the Court may wish to inquire.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Karin E. Garvey*
Karin E. Garvey
Brian M. Hogan
Joseph P. Guglielmo
Michelle E. Conston (*pro hac vice*)
Daniel F. Loud (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: 212-223-6444
kgarvey@scott-scott.com
brian.hogan@scott-scott.com
jguglielmo@scott-scott.com
mconston@scott-scott.com
dloud@scott-scott.com

Carmen Medici (*pro hac vice*)
Gary Foster (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-798-5319
cmedici@scott-scott.com
gfoster@scott-scott.com

Patrick McGahan (*pro hac vice*)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
156 S. Main St.
Colchester, CT 06415
Telephone: 860-531-2606
pmcgahan@scott-scott.com

*Interim Lead Class Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

Christopher M. Burke
Yifan (Kate) Lv
**BURKE LLP**
402 West Broadway, Suite 1890

Steven F. Molo
Lauren F. Dayton
Eric Posner
**MOLOLAMKEN LLP**
300 N. LaSalle Street, Suite 5350
Chicago, IL 60654
Telephone: 312-450-6700
smolo@mololamken.com
ldayton@mololamken.com
eposner@mololamken.com

Christian I. Bale
**MOLOLAMKEN LLP**
600 New Hampshire Avenue, N.W.,
Suite 500
Washington, DC 20037
Telephone: 202-556-2000
cbale@mololamken.com

Anden Chow
Cody Wiles
**MOLOLAMKEN LLP**
430 Park Avenue
New York, NY 10022
Telephone: 212-607-5951
achow@mololamken.com
cwiles@mololamken.com

*Liaison Counsel for Direct Purchaser Plaintiffs and the Proposed Direct Purchaser Class*

George A. Zelcs
Randall P. Ewing, Jr.
Chad E. Bell
Labeat Rrahmani
**KOREIN TILLERY, LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Telephone: 312-641-9750
gzelcs@koreintillery.com
rewing@koreintillery.com
cbell@koreintillery.com
lrrahmani@koreintillery.com

San Diego, CA 92101
Telephone: 619-369-8244
cburke@burke.law
klv@burke.law

Daniel E. Gustafson (*pro hac vice*)
Daniel C. Hedlund (*pro hac vice*)
Daniel J. Nordin (*pro hac vice*)
Anthony J. Stauber (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
120 S. Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: 612-333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dnordin@gustafsongluek.com
tstauber@gustafsongluek.com

Dennis Stewart (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
600 West Broadway, Suite 3300
San Diego, CA 92101
Telephone: 612-333-8844
dstewart@gustafsongluek.com

Gary F. Lynch
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: 412-322-9243
gary@lcllp.com

Garrett D. Blanchfield (*pro hac vice*)
Brant D. Penney (*pro hac vice*)
Roberta A. Yard (*pro hac vice*)
**REINHARDT WENDORF &
BLANCHFIELD**
80 So. 8th Street, Suite 900
Minneapolis, MN 55402
Telephone: 651-287-2100
g.blanchfield@rwblawfirm.com
b.penney@rwblawfirm.com
r.yard@rwblawfirm.com

William G. Caldes (*pro hac vice*)
Jeffrey L. Spector (*pro hac vice*)

Michael L. Roberts
Karen Sharp Halbert
Christopher B. Sanchez
**ROBERTS LAW FIRM, P.A.**
6834 Cantrell Road, Suite #1131
Little Rock, AR 72207
Telephone: 501-821-5575
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
chrissanchez@robertslawfirm.us

Jennifer W. Sprengel
**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, IL 60606
Telephone: 312-782-4880
jsprengel@caffertyclobes.com

*Counsel for Direct Purchaser Plaintiffs
and the Proposed Direct Purchaser Class*

Rachel E. Kopp (*pro hac vice*)
**SPECTOR ROSEMAN &
KODROFF, P.C.**
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Telephone: 215-496-0300
BCaldes@srkattorneys.com
JSpector@srkattorneys.com
RKopp@srkattorneys.com

*Interim Co-Lead Counsel for Indirect
Purchaser Plaintiffs and the Proposed
Indirect Purchaser Class*

Charles R. Watkins
**GUIN & EVANS, LLC**
805 Lake Street, #226
Oak Park, IL 60603
Telephone: 312-878-8397
charlesw@gseattorneys.com

*Liaison Counsel for Indirect Purchaser
Plaintiffs and the Proposed Indirect
Purchaser Class*

*/s/ Matthew D. Provance*
Britt M. Miller
J. Gregory Deis
Matthew D. Provance
Megan E. Stride
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606-4637
Telephone: 312-782-0600
Facsimile: 312-701-7711
bmiller@mayerbrown.com
gdeis@mayerbrown.com
mprovance@mayerbrown.com
mstride@mayerbrown.com

*Counsel for Defendant Fair Isaac Corporation*

| Event | Current Deadline | FICO Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| Substantial Completion of Parties' Supplemental Productions | | May 29, 2026 | May 29, 2026 **(Agreed)** |
| Parties to Complete All Required Meet and Confers to Address All Categorical Challenges to FICO's Privilege Logs | | May 30, 2026 *[Operative per ECF No. 645]* | May 30, 2026 **(Agreed)** |
| Last Day to Serve Additional Written Discovery Requests on a Non-Party | October 17, 2025 | June 5, 2026[10] | July 10, 2026[11] |
| Plaintiffs' Amended Responses to Requests for Admission Nos. 1-2 and Responses to the Requests for Admission served in June 2025 | | June 5, 2026 | 45 days after actual completion of FICO's document productions |

---

[9] Save for adjustments to account for weekends and holidays, Plaintiffs have largely kept the same spreads in the previous schedule ordered by this Court. *See* ECF No. 309. The one specific exception is that Plaintiffs have added two weeks to the deadline for rebuttal expert reports.

[10] Parties shall also have until June 23, 2026, to serve any additional written discovery requests on a non-party who is served with a Rule 45 subpoena by the opposing party by June 5, 2026.

[11] Parties shall also have until July 31, 2026, to serve any additional written discovery requests on a non-party who is served with a Rule 45 subpoena by the opposing party by July 10, 2026.

| Event | Current Deadline | FICO Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| Filing of a Single, Consolidated Plaintiffs' Motion, If any, Challenging FICO's Privilege Logs (Operative Original and Supplemental) | | June 30, 2026 | 30 days after Court-ordered deadline for completion of meet and confers to address categorical challenges to FICO's privilege log. |
| Completion of All Fact Discovery | January 20, 2026 | October 30, 2026 | November 27, 2026, or six months after actual completion of FICO's productions, whichever is later. |
| Expert Reports (consolidated merits and class certification reports) | Opening Reports: February 27, 2026<br><br>Response Reports: April 10, 2026<br><br>Rebuttal Reports: May 8, 2026 | Opening Reports: December 4, 2026<br><br>Response Reports: February 19, 2027<br><br>Rebuttal Reports: April 7, 2027 | Opening Reports: January 29, 2027, or nine weeks after completion of fact discovery, whichever is later.[12]<br><br>Response Reports: April 9, 2027, or 10 weeks after Opening Reports, whichever is later.<br><br>Rebuttal Reports: June 4, 2027, or eight weeks after Response Reports, whichever is later. |
| Expert Depositions | June 26, 2026 | May 25, 2027 | July 16, 2027, or six weeks after Rebuttal Reports, whichever is later. |

---

[12] For the avoidance of doubt, Plaintiffs provide these and all subsequent sets of alternate dates only to accommodate any delays in the actual completion of document productions. Plaintiffs do not presently anticipate any other delays that would cause the following deadlines to be extended.

| Event | Current Deadline | FICO Proposal | Plaintiffs' Proposal |
|---|---|---|---|
| Class Certification Motions | Motions: August 7, 2026 <br><br> Opposition Briefs: September 18, 2026 <br><br> Reply Briefs: October 23, 2026 | Motions: July 7, 2027 <br><br> Opposition Briefs: August 23, 2027 <br><br> Reply Briefs: September 27, 2027 | Motions: August 27, 2027, or six weeks after Expert Depositions, whichever is later. <br> Opposition Briefs: October 8, 2027, or six weeks after Class Certification Motions, whichever is later. <br> Reply Briefs: November 19, 2027, or six weeks after Opposition Briefs, whichever is later. |