**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **IN RE: FICO ANTITRUST LITIGATION RELATED CASES.** | ) | **No. 20-cv-2114** |
| | ) | **Magistrate Judge M. David Weisman** |

**ORDER**

Before the Court is plaintiffs' motion to compel FICO to produce from its amended privilege log the so-called email blasts and the documents sent to third parties and plaintiffs' continued motion to deem FICO to have waived the attorney client privilege over emails sent to or from third-party, non-attorney consultants. For the reasons set forth below, the Court grants in part the motions [ECF 548, 501].

**Privilege and Non-Attorney Third Parties**

"[T]he attorney-client privilege applies: (1) where legal advice of any kind is sought; (2) from a professional legal adviser in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at [the client's] instance permanently protected; (7) from disclosure by himself or by the legal adviser; (8) except the protection be waived." *Breuder v. Bd. of Trs. of Cmty. Coll. Dist. No. 502*, No. 15 CV 9323, 2021 WL 4283464, at *2 (N.D. Ill. Sept. 21, 2021) (citing *U.S. v. White*, 970 F.2d 328, 334 (7th Cir 1992); *U.S. v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983); *Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7538, 2013 WL 2637936, at *2 (N.D. Ill. June 12, 2013)).[1] "'A party waives the attorney-client privilege when the otherwise privileged documents are disclosed to a third party.'" *In re Dealer Mgmt. Sys. Antitrust Litig.*, 335 F.R.D. 510, 514 (N.D. Ill. 2020) (quoting *Grochocinski v. Mayer Brown Rowe & Maw LLP*, 251 F.R.D. 316, 326 (N.D. III. 2008)). "However, there is an exception to the general rule that the presence of a third party will defeat a claim of privilege when that third party is present to assist the attorney in rendering legal services." *Jenkins v. Bartlett*, 487 F.3d 482, 490–91 (7th Cir. 2007) (citing 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 183 at 312 (2d ed. 1994)). More specifically, "the third party's presence must be 'necessary to clarify, facilitate, or improve an attorney's comprehension of the facts on which a legal opinion will be given or a client's comprehension of the attorney's opinion,'" so that the client could "'obtain informed legal advice.'" *Breuder,* 2021 WL 4283464, at *3 (N.D. Ill. Sept. 21, 2021) (quoting *Flo Pac, LLC v. NuTech, LLC*, No. WDQ-09-510, 2010 WL 5125447, at *8 (D. Md. Dec. 9, 2010) (quoting Edna Selan Epstein, *The Attorney-Client Privilege and the Work-Product Doctrine*, at 264 (5th ed. 2007)). "[D]ocuments prepared for business purposes or for the purpose of obtaining

[1] "Federal common law governs any privilege determination in this federal question suit . . . even though the complaint contains supplemental state law claims." *Andersen v. City of Chi.*, No. 16 C 1963, 2019 WL 423144, at *2 (N.D. Ill. Feb. 4, 2019).

advice on 'political, strategic, or policy issues' are not protected by the attorney-client privilege." *Glenwood Halsted LLC v. Vill. Of Glenwood*, No. 11 CV 6772, 2013 WL 140794, at *2 (quoting *Evans v. City of Chi.*, 231 F.R.D. 302, 312 (N.D. Ill. 2005)). "[T]he party asserting the privilege must prove that the privilege exists." *Heriot v. Byrne*, 257 F.R.D. 645, 656 (N.D. Ill. 2009).

The documents on FICO's privilege log include those it shared with: (1) PriceWaterhouseCoopers Advisory Services ("PwC"); (2) Deloitte & Touche; (3) FGS Global and its predecessors, Glover Park Group and Finsbury Glover Hering ("GPG"): (4) Porter Novelli and its subsidiary, Voce Communications; (5) AB Schnare Associates; (6) Backus Consulting; (7) Reset Public Affairs; (8) Federal Street Strategies; (9) Goldhaber Policy Services; (10) Cypress Advisory d/b/a Mindset; (11) Peck Madigan Jones and its subsidiary, Bay Bridge Strategies; (12) Quantilytic; (13) Rich Feuer Anderson; (14) Little & Company; (15) iQ 360; and (16) Sprauve-Harrison Communications. (*See* ECF 514-2.)

FICO states that it has hired PwC and Deloitte to conduct audits of the credit reporting agencies' compliance with their contracts with FICO and to determine whether FICO had claims against the agencies. (ECF 514 ¶¶ 6-10.) In connection with that work, PwC and Deloitte employees were included on communications with FICO employees and FICO's counsel. (*Id.* ¶¶ 8, 10.) "These communications assisted FICO's counsel in the evaluation of potential or actual claims FICO might have for unpaid royalties." (*Id.* ¶¶ 6-9.) Given that explanation, the Court finds that communications that include PwC or Deloitte are privileged.

FICO also hired GPG as a government affairs and communications consultant to provide services related to the Federal Housing Finance Agency's ("FHFA") 2017 request for feedback ("Request") and regulatory rulemaking. (*Id.* ¶ 22.) GPG employees were included on communications with FICO's counsel in which GPG and FICO employees provided materials related to the FHFA's Request to FICO's counsel and FICO's counsel provided edits and comments on them. (*Id.* ¶ 23.) GPG employees were also included in communications with counsel, FICO employees, and third parties in which GPG gave information to counsel regarding strategies and facts underlying the FHFA's rulemaking process. (*Id.*) Facts and advice about strategy are not privileged. *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981); *Evans*, 231 F.R.D. 302 at 312–14. But communications in which GPG gave FICO's counsel materials about the Request and counsel edited and commented on them are privileged.

Porter Novelli and its subsidiary Voce Communications worked for FICO as a communications consultant in connection with the FHFA's request for feedback and its rulemaking processes. (ECF 514-2 ¶ 25.) Porter Novelli/Voce employees were included in communications in which FICO's counsel reviewed and commented on draft communications, strategy documents, and public statements related to the FHFA. Strategy communications are not privileged. *Glenwood Halsted*, 2013 WL 140794, at *2 (quoting *Evans*, 231 F.R.D. at 312–14). Further, because FICO does not say that Porter Novelli/Voce provided input necessary for counsel to provide legal advice to FICO, it has not established that these communications are privileged.

FICO hired AB Schnare to develop a white paper on the role of credit scores in the mortgage market, which FICO used as part of its response to the FHFA's Request. Schnare was

included on communications in which counsel provided comments on drafts of the white paper. FICO contends Schnare was included on such communications to give FICO's counsel information they needed to provide legal advice. (ECF 514-2 ¶ 29.) But FICO does not explain, nor is it readily apparent, how including AB Schnare in a communication containing edits to a research paper was necessary for counsel to give legal advice. Thus, FICO has not established that these communications are not privileged.

Backus Consulting is a firm FICO hired to "increase stakeholder understanding of how proposed legislation would affect the FHFA's [Request]." (*Id.* ¶ 31.) FICO says Backus was included on communications in which FICO employees and consultants gave information to counsel "regarding developments from the FHFA and other policymakers and related strategies." (*Id.* ¶ 32.) Backus was also included on a communication with a FICO employee relaying counsel's comments on a draft whitepaper and another in which a FICO employee gave Backus a draft whitepaper prepared by outside counsel. (*Id.*) As noted above, facts and discussions about strategy are not privileged. *Upjohn*, 449 U.S. 383, 395 (1981); *Glenwood Halsted*, 2013 WL 140794, at *2 (quoting *Evans*, 231 F.R.D. at 312–14). Further, FICO does not explain why a draft whitepaper or counsel's feedback on it had to be shared with Backus to enable counsel to provide legal advice. Absent that explanation, FICO has not established that these documents are privileged.

FICO hired Reset Public Affairs "to provide consulting services related to communications and third-party coalition building, including in relation to the FHFA's [Request] and rulemaking processes." (ECF 514-2 ¶ 34.) Specifically, Reset employees were included on communications with FICO's counsel, FICO employees, and other consultants discussing proposed communications with policymakers related to the FHFA Request and communications in which FICO employees relayed counsel's comments on whitepapers. (*Id.* ¶ 35.) FICO does not explain why adding Reset to the distribution list of a document discussing communications with policymakers or counsel's comments on a whitepaper was necessary for FICO's lawyers to provide legal advice. Thus, these documents are not privileged.

FICO hired Federal Street Strategies "to provide strategic and advisory support" on public policy issues including FHFA's rulemaking process. (*Id.* ¶ 37.) Federal Street was included on communications with counsel, FICO employees, and other consultants in which the authors gave counsel information about strategies and facts underlying FHFA rulemaking. (*Id.*) Federal employees were also included on communications from counsel containing comments about draft communications to policymakers about the CFPB. (*Id.*) "'[A]dvice on political, strategic or policy issues . . . would not be shielded from disclosure by the attorney-client privilege.'" *Evans*, 231 F.R.D. at 312 (quoting *In Re Lindsey*, 148 F.3d 1100, 1106 (D.C. Cir. 1998)). These documents are not privileged.

Goldhaber Policy Services was hired by FICO to provide "strategic advice" to FICO about, among other things "strategy related to the FHFA's [Request]." (ECF 514-2 ¶ 40.) Goldhaber was included in the circulation of a draft response to the Request written by FICO's counsel and on a document in which FICO's in-house lawyers provided comments on a draft whitepaper. FICO does not say what, if any, input Goldhaber provided on either document or why that input was related

to counsel's ability to provide legal advice to FICO. As a result, FICO has not established that these documents are privileged.

FICO also hired Cypress Advisory d/b/a Mindset as a strategic consultant on public policy matters including those pertaining to the FHFA. (*Id.* ¶ 43.) FICO says that Cypress employees gave information to FICO's counsel about strategies underlying FHFA rulemaking and were included on a communication with counsel and another FICO employee transmitting draft public policy statements that counsel had revised. (*Id.* ¶ 44.) Communications about strategy are not privileged. *Evans*, 231 F.R.D. at 312. Moreover, FICO does not explain how the inclusion of Cypress in these communications was necessary for its counsel to provide legal advice. Therefore, FICO has not established that these documents are privileged.

FICO hired Peck Madigan Jones and its subsidiary Bay Bridge Strategies to provide consulting and lobbying related to the FHFA's Request. (ECF 514-2 ¶ 46.) Peck employees were copied on a communication in which FICO employees asked counsel for review and comment on a draft public statement and another in which FICO employees relayed counsel's edits to a draft letter to Congress. (*Id.* ¶ 47.) They were also included in a communication by FICO's counsel stating that Peck was employed at counsel's direction. (*Id.*) However, FICO does not explain why Peck's inclusion in these communications was necessary for counsel to provide legal advice to FICO. Thus, FICO has not shown that documents involving Peck are privileged.

FICO hired Quantilytic to write an article about the items expected to be in the FHFA's Request. (*Id.* ¶ 49.) Quantilytic employees gave drafts of the article to FICO's counsel to obtain "legal review and comments." (*Id.* ¶ 50.) Quantilytic employees were also copied on communications in which FICO's counsel provided edits to the article. (*Id.*) Accordingly, these communications are privileged.

FICO hired Rich Feuer Anderson ("RFA") to provide lobbying services in Washington D.C. (*Id.* ¶ 52.) RFA employees were included on communications with FICO's counsel and other consultants in which RFA "provided information to counsel regarding strategies and facts underlying the FHFA's rulemaking processes and outreach to other policymakers." (*Id.* ¶ 53.) RFA employees were also included on communications in which counsel provided comments on draft communications intended for Senate staff regarding the CFPB. (*Id.*) Strategies and facts are not privileged. *Upjohn*, 449 U.S. at 395; *Evans*, at 312–14. Moreover, FICO does not assert that information provided to or received from RFA was necessary for counsel to give it legal advice. These communications are not privileged.

FICO hired Little & Company to provide consulting services related to "communications and third-party coalition building." (ECF 514, Ex 2 ¶ 55.) Little & Company employees were included on communications in which FICO's counsel provided edits to draft communications related to credit scoring standards in the mortgage market. (*Id.* ¶ 56.) FICO does not say that Little & Company gave counsel any information, let alone information necessary to provide legal advice to FICO. Therefore, FICO has not established that these communications are privileged.

FICO hired iQ 360 as a strategic business consultant. iQ 360 employees were included in communications with counsel in which FICO employees requested and FICO's counsel provided

edits and comments to draft press releases about FICO's products and the credit score industry. (*Id.* ¶ 59.) FICO does not, however, say that iQ 360 provided any information contained in these communications or explain how its inclusion in these communications was necessary for FICO's counsel to provide legal advice. Thus, the documents are not privileged.

FICO also hired Sprauve-Harrison Communications. Sprauve-Harrison employees were included on communications with counsel in which FICO employees asked for and counsel provided edits to draft public statements. (*Id.* ¶ 62.) FICO does not say that Sprauve-Harrison provided any information used in these communications or explain how its inclusion in these communications was necessary for FICO's counsel to provide legal advice. Thus, FICO has not established that these communications are privileged.

**Privilege and Blast E-Mails**

"The attorney-client privilege prohibits the compelled disclosure of 'confidential communications between a client and an attorney for the purpose of obtaining legal advice.'" [2]*RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 216 (N.D. Ill. 2013) (quoting *Denius v. Dunlap*, 209 F.3d 944, 952 (7th Cir. 2000)). "The attorney-client privilege only shields communications that were intended to be confidential, so communications made to an attorney in the presence of a third party or made with the intent that they will be disclosed to a third party are not privileged." *Id.* "The party seeking to invoke the protection of a privilege, or discovery opponent, has the burden of establishing all of its elements," *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992); *see United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983) (describing the elements of the attorney client privilege as: (1) legal advice is sought, (2) from a professional legal adviser, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.") (citing 8 Wigmore, Evidence § 2292).

"To determine the scope of the privilege with a corporate client, the Seventh Circuit applies the 'subject matter' test." *Muro v. Target Corp.*, No. 04 C 6267, 2006 WL 3422181, at *2 (N.D. Ill. Nov. 28, 2006). Under this test, "an employee of a corporation is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the 'employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment.'" *Id.* (quoting *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491-492 (7th Cir. 1970), *aff'd*, 400 U.S. 348 (1971). *See Sylgab Steel & Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454, 456-57 (N.D. Ill. 1974) ("It is well settled that the dissemination of a communication between a corporation's lawyer and an employee of that corporation to those employees directly concerned with such matters does not waive the attorney-client privilege."), *aff'd*, 534 F.2d 330 (7th Cir. 1976). But the privilege is waived by a corporation, if "the communications are disclosed to employees who did not need access to the communication." *Baxter Travenol Labs., Inc. v. Abbott*

[2] "Federal common law governs any privilege determination in this federal question suit . . . even though the complaint contains supplemental state law claims." *Andersen v. City of Chi.*, No. 16 C 1963, 2019 WL 423144, at *2 (N.D. Ill. Feb. 4, 2019).

*Labs.*, No. 84 C 5103, 1987 WL 12919, at *5 (N.D. Ill. June 19, 1987). Thus, a party claiming the privilege, in this case FICO, must show that each person who received an allegedly privileged communication needed to have access to it.

FICO has submitted its amended privilege log and a legend that identifies the job titles of the people who sent and received allegedly privileged documents. (*See* ECF 625.) Emails that were sent solely by and to lawyers, paralegals, and other legal personnel are presumptively privileged. FICO has seven days from the date of this order to identify and extract those emails from its existing log into a separate log.

As to the remaining documents, the log and legend do not establish that each person who received a purportedly privileged communication needed to have access to it. Exhibit B identifies who works for FICO and who serves as outside counsel. Further, the legend provides job titles from which we might discern that the communications are likely privileged. For example, the first page and a half of the legend is populated with many legal positions at FICO. However, after that, the legend strays into generic business titles, none of which would compel a conclusion that the communications involving these individuals would necessarily (or even likely) be legal in nature. Beyond the titular information, the log does little to explain how "the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment." *Muro*, 2006 WL 3422181, at *2. Absent that information, FICO has not established that the remaining documents on its amended log are privileged.

We are mindful that this level of detail in a privilege log is not always necessary. Yet, Federal Rule of Civil Procedure 26(b)(5) requires that the privilege log "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, *will enable other parties to assess the claim*." (Emphasis added.) Considering the number of recipients involved, controlling law, and the burden placed on the party asserting the privilege, FICO's log fails to provide plaintiffs or the Court sufficient information "to assess the claim." The Court has given FICO multiple opportunities to compile a legally sufficient privilege log, and we will not give FICO another. Because FICO has not demonstrated that the remaining documents on the amended privilege log are privileged, the Court orders FICO to produce them within three weeks of the date of this order.

**SO ORDERED.** **ENTERED: June 4, 2026**

*M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**